**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

*FILED*

*NOV 21   3 08 PM '03*

---

CLIFTON S. FREEDMAN,
                Plaintiff,      :

            v.                 :

AMERICA ONLINE, INC., ET AL.,

               Defendants.  :

        :       CASE NO.: 3:03-CV-1048 (PCD)

             September 10, 2003

---

## DECLARATION OF CARRIE DAVIS

I, CARRIE DAVIS, pursuant to 28 U.S.C. § 1746, do hereby declare the following:

1.     I am a Senior Paralegal employed by Defendant America Online, Inc. ("AOL"). If called as a witness, I could and would testify competently as to the matters set forth herein, which are true of my own personal knowledge.

2.     For several years, I have been designated as one of the AOL employees who routinely provide affidavits or declarations where it is necessary in a court proceeding to establish the existence and contents of the contractual agreement entered into between AOL and a particular AOL subscriber. I have provided such affidavits and declarations on more than twenty-five occasions.

3.     I have first-hand knowledge of AOL's business records, which include Plaintiff's account information as well as AOL's Member Agreement, the contract that governs the relationship between AOL and its subscribers, and sets forth the terms under which AOL provides its services to its subscribers. A true and complete copy of the

Member Agreement in effect from July 1998 through August 2, 2003, is attached hereto at Tab A.

4.    According to AOL's business records, Plaintiff Clifton S. Freedman became an AOL subscriber on May 23, 2000. Since 1995, subscribers who signed up for the AOL service online, including Plaintiff, have been required systematically — as a prerequisite to becoming a subscriber — to proceed through a computerized registration process that enables the prospective subscriber to review the AOL Member Agreement on his computer screen and that requires him to affirmatively agree to the Member Agreement before becoming a subscriber and gaining access to the AOL service. The elements of this computerized registration process include the following steps:

A.    A prospective AOL subscriber must initiate the registration process by loading the AOL software onto his computer or activating software already present on his computer. After the individual provides basic information such as his name, address, phone number, and desired billing method, he is automatically presented with a screen entitled "Conditions of AOL Membership." This screen states that use of the AOL service is conditioned on acceptance of the AOL Member Agreement.

B.    As part of the registration process, a prospective subscriber is presented with the "Conditions of AOL Membership Screen." At the bottom of the screen are two boxes and a button labeled "Next." The first is labeled "I agree," and the screen indicates that when that box is checked and the "Next" button is clicked, the subscriber agrees to the terms of the Member Agreement and may proceed through the rest of the registration process. The second is labeled "Read now," and when that box is checked and the "Next" button is clicked, the subscriber is given an opportunity to read the Member Agreement,

after which the subscriber is again presented an opportunity to select the "I agree" box and proceed with registration. A prospective subscriber who declines to select the "I agree" box must abandon the registration process.

      C.    A user cannot become an AOL subscriber and access AOL's online service unless and until he affirmatively chooses to accept the Member Agreement in this manner.

    5.    In order to have become a subscriber in May 2000, Plaintiff necessarily would have had to proceed through the computerized registration process described above, and in the course of doing so he necessarily would have had to have selected "I Agree" to reflect his agreement to the Member Agreement.

    6.    Section 1 of the Member Agreement attached at Tab A states that "[t]o access the AOL service you must accept the terms of this Agreement." Registration for, and continued use of, the AOL service is at all times conditioned on acceptance of the Member Agreement.

    7.    Section 8 of the Member Agreement attached at Tab A contains the following forum-selection clause: "You expressly agree that exclusive jurisdiction for any claim or dispute with AOL or relating in any way to your membership or your use of AOL resides in the courts of Virginia . . . ."

    8.    AOL is headquartered in Dulles, Virginia. All of AOL's membership records are maintained on computers located in Virginia. The agreement between AOL and its subscribers is consummated in Virginia because AOL's billing activities are done in Virginia. Virtually all of the technical and managerial staff responsible for the Member Agreement are located in Virginia. All AOL documents relevant to the Member

Agreement are located in Virginia. To the best of my knowledge, there are no AOL employees or AOL records relating to the controversy between Plaintiff and AOL that are located in Connecticut.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 10th day of September, 2003.

_Carrie Davis_

Carrie Davis

The America Online Member Agreement is a legal document that details your rights and obligations as an AOL member. You cannot become an AOL Member until you have accepted the terms of the Member Agreement. The Member Agreement provides very important information about your AOL membership, so you should take the time to read and understand it. If you have questions about the Member Agreement, or about your rights and responsibilities as an AOL member, please contact us by e-mail by clicking here. You should also take the time to review the AOL Privacy Policy and the AOL Community Guidelines which reflect AOL's current policies. The Internet and online world is changing rapidly and as technology and AOL's business continue to evolve, these policies may have to be updated or revised. Since these Privacy Policies and Community Guidelines may change, you should check Keyword: TOS for the most current versions.

For the same reasons, it may be necessary for AOL to update or revise certain provisions of the Member Agreement. By joining AOL and accepting the Member Agreement you agree that AOL may change the terms of this Member Agreement. **If AOL makes material changes or revisions to the Member Agreement, we will provide notice to you thirty days in advance. If you don't agree to the changes proposed by AOL, or to any of the terms in this Member Agreement, your only remedy is to cancel your AOL membership.**

## 1.  THE BASICS OF YOUR AOL MEMBERSHIP

This Agreement is your entire agreement with AOL and governs your use of the AOL Internet online service. There may be additional terms and conditions if you use affiliate services like our international areas, other AOL services or products such as AOL Instant Messenger(TM) service or third-party software and/or services. To access the AOL service you must accept the terms of this Agreement and comply with the AOL Community Guidelines. To be an AOL member, you must be at least 18 years old. If you are not yet eighteen years old, you may still use AOL, but only if the account was created and registered by your parent or guardian. Because we give out free trial offers, we reserve the right to limit you to just one free trial.

When you accept this Agreement and complete the AOL registration process, you become the "master account" holder, and AOL provides you with a limited, non-exclusive license for no more than the term of your membership to use the screen name you select for your "master account." AOL also allows you to have up to four additional "sub-accounts" or screen names of your choice. Your screen name is your online identity. You may not use a screen name that is used by someone else, and your screen name cannot be vulgar, or be used in any way that violates the other parts of the Member Agreement or the Community Guidelines.

As the master account holder, you are responsible for all activity on your account and on any of the sub-accounts, and violations or warning accrued by the sub-account can lead to termination of the master account. If warnings or violations are received by sub-accounts, the master account will also receive notification. You may also receive important notices about your membership from time to time that may not be provided to the sub-accounts, so it is important for you to regularly check your master account mailbox. Because you are responsible for all use of your account, you should supervise the use of your account by others. This is especially important when children are using the service; children are safer online and get more out of the experience with adult supervision. It is important that you not reveal your password to other users and AOL will never ask you for your password. You agree not to reveal your password to other users and you agree to indemnify and hold AOL harmless for any improper or illegal use of your account. This includes illegal or improper use by someone to whom you have given permission to use your account. Your account is at risk if you let someone use it inappropriately. If your membership is terminated for violating this Agreement or the Community Guidelines, AOL's express permission will be necessary before you are allowed to use AOL again.

## 2.  CHARGES, BILLING AND THE FREE TRIAL

AOL reserves the right to change our fees or billing methods at any time and AOL will provide notice of any such change at least thirty days in advance in the same manner described above for changes to the Member Agreement. AOL also has the right to collect applicable taxes and impose premium surcharges for some areas of the service and these surcharges may apply even during your free trial. The answers to many common billing questions can be found by selecting going to Keyword: Help, then selecting Accounts & Billing, going to Keyword: Billing, or by contacting an AOL customer service representative at 1-800-827-6364. If you don't like the changes in fees or billing methods, you may cancel your membership at any time, but AOL will not refund any remaining portion of the monthly fee when you cancel your membership. **If you have joined AOL as a trial member, you should understand that your free trial time must be used within one month of your initial sign-on and to avoid being charged a membership fee, you must cancel your account before the end of that first month.**

**As the master account holder, you are responsible for all charges incurred, including applicable taxes and purchases made by you or anyone you allow to use your account or sub-accounts, including your children, other members of your family or friends. This means that, unless your account or credit card information is obtained unlawfully or fraudulently by someone other than those authorized to use your account or sub-account, you will be responsible for all usage and purchases under your account or sub-accounts.**

There may be extra charges to access certain premium content on AOL. AOL will provide notice of any extra charge before you enter the premium area. You are responsible for any charges for premium content incurred using your account (including sub-accounts) and these charges apply even during the free trial. AOL's Parental Controls allow you to prevent sub-accounts from accessing premium or surcharged content. For more information go to Keyword: Parental Controls. Some Web sites charge separate fees, which are not included in the cost of your AOL membership. AOL provides access to a large number of third-party vendors, who provide content, goods and or services on the AOL service or the Internet. Any separate charges or obligations you incur in your dealings with these third-parties are your responsibility and are not part of the fee charged for your AOL membership.

Most members pay by credit card. For most billing plans we will be charging your designated card every month, but some charges may accumulate on your account before they are charged to your card. If you don't have a credit card, you can authorize AOL to make electronic fund transfers from your checking account. There is an additional surcharge for this payment option and you should go to Keyword: Billing and read about AOL's Billing Methods for more information. By selecting this billing option and providing AOL with your debit/checking account information, you authorize AOL to debit your checking account for charges incurred using AOL. Every time you use AOL, you re-affirm that AOL is authorized to charge your credit card or withdraw funds via electronic transfer from your checking account, depending on which payment method you have selected. You also agree to authorize AOL to charge purchases you make online to the credit card you supplied to AOL when you joined or to debit your checking account if you selected that option during the registration process.

We expect you to pay your account balance on time. We will give you 30 days from the date on your account statement to pay your bill. AOL will assess an additional 1.5% (or the highest amount allowed by law, whichever is lower) per month late charge if your payment is more than 30 days past due. That amount is also due immediately. You are responsible and liable for any fees, including attorney and collection fees, that AOL may incur in its efforts to collect any remaining balances from you. You also agree that you will be billed for and will pay any outstanding balances if you cancel your membership or are terminated.

You should let us know about any billing problems or discrepancies within 90 days after they first appear on your account statement. If you do not bring them to AOL's attention within 90 days, you agree that you waive your right to dispute such problems or discrepancies.

AOL has an extensive network of access phone numbers throughout the country, but it is still possible that the nearest AOL access number might be a long distance or toll call from your location. Any telephone charges incurred connecting to AOL are your responsibility. Since these charges are your responsibility, you should contact your local telephone company if you have a question about whether an AOL access number is a long distance or toll call from your location. AOL also provides several 800 or 888 access phone numbers (for the current surcharge rate go to Keyword: Access). If you choose to use these surcharged numbers to access AOL, you agree to pay the currently applicable surcharge to AOL. If you have other questions about access phone numbers, you should consult Keyword: Access. It is important to note that you can incur long distance or toll charges or surcharges for 800 or 888 access even during your free trial.

### 3.  ONLINE CONDUCT AND CONTENT

#### Content
By content, we mean the text, software, communications, images, sounds other information provided online. Most content on the AOL service is provided by AOL, our members, our affiliates, or independent content providers under license. In general, AOL does not pre-screen content available on the AOL service. AOL does not assume any responsibility or liability for content that is provided by others. AOL does reserve the right to remove content that, in AOL's judgment, does not meet its standards or does not comply with AOL's current Community Guidelines, but AOL is not responsible for any failure or delay in removing such material. Keep in mind that AOL is not responsible for content available on the Internet, although we reserve the right to block access to any Internet area containing illegal or other harmful content or otherwise being used for purposes that are unlawful or injurious to AOL or its members.

One of the most exciting aspects of this medium is that individual members have the ability to create their own content and voice their own opinions. AOL encourages Members to participate and express their views – after all, that is what makes your experience interactive. But it is important to remember that there are rules and standards that you must abide by as an AOL Member. These rules and standards are described in the AOL Community Guidelines. As an AOL Member, you agree to follow the AOL Community Guidelines and you acknowledge that AOL has the right to enforce them in its sole discretion. This means that if you, or anyone using your account, violate the AOL Community Guidelines, AOL may take action against your account. This can range from the issuance of a warning about a violation to the termination of your account. You understand AOL is not required to provide notice prior to terminating your account for violating these rules and standards, but it may choose to do so. Additionally, as an AOL member, you may have access to other AOL branded services, such as AOL Instant Messenger(TM) service, that are available to both AOL members and to other Internet users. When using these AOL branded services, your conduct remains subject to this Member Agreement; however, non-AOL members who use these services are not be subject to this Member Agreement and as a result you understand that these other users may not be governed by the same rules or standards. Because of the changing nature of the Internet and Online Services, the Community Guidelines may change at any time. You can always find the most current version of the AOL Community Guidelines at Keyword: TOS.

#### Unsolicited Bulk E-mail
Your AOL membership allows you to send and receive e-mail to and from other AOL members and users of the Internet. This does not mean that you may use AOL to send unsolicited bulk e-mail or junk e-mail. Information about unsolicited bulk e-mail can be found at Keyword: Junk Mail. Your AOL membership and your authorization to use the AOL e-mail service do not allow you to send unsolicited bulk e-mail or to cause unsolicited bulk e-mail to be sent by someone else. **You may not use the Member Directory or any other area of AOL to harvest or collect information, including screen names, about AOL members, and the use of such information for the purpose of sending unsolicited bulk e-mail is strictly prohibited.** Any violation of these provisions can subject your AOL account to immediate termination and further legal action. If you have received junk e-mail and want to report it, simply use the Forward button on the e-mail screen and send the e-mail to screen name TOS Spam. AOL also reserves the right to take any and all legal and technical remedies to prevent unsolicited bulk e-mail from entering, utilizing or remaining within the AOL Network.

#### Proprietary Rights
Much of the content available on our service is owned by others, and is protected by copyrights, trademarks, and other intellectual property rights. It is very easy to copy things in cyberspace, but just because it is easy doesn't mean it is acceptable or legal. Any content that you upload or download while using the service must be authorized; this means you must have the legal right to upload or download the content. You must not copy, transmit, modify, distribute, show in public or in private or create any derivative works from any of the content you find on AOL, unless you have the legal right to. Making unauthorized copies of any content found on AOL can lead to the termination of your AOL account and may even subject you to further legal action beyond the termination of your membership. Similarly, other content owners may take criminal or civil action against you. In that event, you agree to hold harmless AOL and its subsidiaries, affiliates, related companies, employees, officers, directors and agents.

Bear in mind that some areas of AOL are "public," like message boards, forums, or the Member Directory. By submitting or posting content there, you are representing that you are the owner of such material, or have authorization to distribute it. Once you post content on AOL, you expressly grant AOL and its members the complete right to use, reproduce, modify, distribute, etc. the content in any form, anywhere.

### 4.  AOL SOFTWARE LICENSES

AOL provides you with a limited license to use our software, which you agree to use in accordance with these rules. You may not sub-license, or charge others to use or access, our software without first obtaining written permission from us. We will occasionally provide automatic upgrades to improve your online experience, and we employ virus-screening technology to assist in the protection of our network and our members. We reserve the right to log off accounts that are inactive for an extended period of time and we prohibit the use of tools that defeat AOL's automatic log-off feature.

AOL grants to you a non-exclusive, limited license to use AOL software to connect to AOL from authorized locations in accordance with this agreement. This license is subject to the restriction that, except where expressly permitted by law, you may not translate, reverse-engineer or reverse-compile or decompile, disassemble or make derivative works from AOL software. You may not modify AOL software or use it in any way not expressly authorized by this Agreement. You understand that AOL's introduction of various technologies may not be consistent across all platforms and that the performance and some features offered by AOL may vary depending on your computer and other equipment.

### 5.  WARRANTY

MEMBER EXPRESSLY AGREES THAT THE USE OF AOL, AOL SOFTWARE, AND THE INTERNET IS AT MEMBER'S SOLE RISK.  AOL, AOL

SOFTWARE, AOL PRODUCTS, THIRD-PARTY VIRUS CHECKING TECHNOLOGY AND THE INTERNET ARE PROVIDED "AS IS" AND "AS AVAILABLE" FOR YOUR USE, WITHOUT WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, UNLESS SUCH WARRANTIES ARE LEGALLY INCAPABLE OF EXCLUSION. AOL PROVIDES THE AOL SERVICE ON A COMMERCIALLY REASONABLE BASIS AND DOES NOT GUARANTEE THAT MEMBERS WILL BE ABLE TO ACCESS OR USE THE SERVICE AT TIMES OR LOCATIONS OF THEIR CHOOSING, OR THAT AOL WILL HAVE ADEQUATE CAPACITY FOR THE SERVICE AS A WHOLE OR IN ANY SPECIFIC GEOGRAPHIC AREA. AOL'S ENTIRE LIABILITY AND YOUR EXCLUSIVE REMEDY WITH RESPECT TO THE USE OF ANY SOFTWARE PROVIDED OR USED BY AOL SHALL BE THE REPLACEMENT OF ANY AOL SOFTWARE FOUND TO BE DEFECTIVE. YOUR SOLE AND EXCLUSIVE REMEDY FOR ANY OTHER DISPUTE WITH AOL IS THE CANCELLATION OF YOUR ACCOUNT AS DETAILED BELOW IN SECTION 7. IN NO CASE SHALL AOL BE LIABLE FOR CONSEQUENTIAL DAMAGES ARISING FROM YOUR USE OF AOL, THE INTERNET OR FOR ANY OTHER CLAIM RELATED IN ANY WAY TO YOUR MEMBERSHIP WITH AOL. BECAUSE SOME STATES OR JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR THE LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, IN SUCH STATES OR JURISDICTIONS, AOL'S LIABILITY SHALL BE LIMITED TO THE EXTENT PERMITTED BY LAW. AOL DOES NOT ENDORSE, WARRANT OR GUARANTEE ANY PRODUCT OR SERVICE OFFERED THROUGH AOL AND WILL NOT BE A PARTY TO OR IN ANY WAY BE RESPONSIBLE FOR MONITORING ANY TRANSACTION BETWEEN YOU AND THIRD-PARTY PROVIDERS OF PRODUCTS OR SERVICES.

**6.  INDEMNIFICATION**

Upon a request by AOL, you agree to defend, indemnify and hold harmless AOL and its affiliated subsidiaries, employees, contractors, officers, directors, telecommunications providers and content providers from all liabilities, claims and expenses, including attorneys fees, that arise from a breach of this Member Agreement for which you are responsible or from the use of AOL or the Internet, or in connection with your transmission of any Content on AOL. AOL reserves the right, at its own expense, to assume the exclusive defense and control of any matter otherwise subject to indemnification by a Member. In that event, the member shall have no further obligation to provide indemnification for AOL in that matter.

**7.  TERMINATION AND CANCELLATION**

Either you or AOL may terminate or cancel your membership at any time. You understand and agree that the cancellation of your account is your sole right and remedy with respect to any dispute with AOL. This includes, but is not limited to, any dispute related to, or arising out of: (1) any term of this Agreement or AOL's enforcement or application of this Agreement; (2) any policy or practice of AOL, including AOL's Community Guidelines and the AOL Privacy Policy, or AOL's enforcement or application of these policies; (3) the content available through AOL or the Internet or any change in content provided through AOL; (4) your ability to access and/or use AOL; or (5) the amount or type of fees, surcharges, applicable taxes, billing methods, or any change to the fees, applicable taxes, surcharges or billing methods.

You can cancel your membership by delivering notice to AOL's Customer Service Department at 1-800-265-8008, by sending your cancellation request via US Mail to: AOL, PO Box 1600, Ogden UT 84401, or by fax at 1-801-622-7969. Cancellation will take effect within 72 hours of receipt of your request, and AOL will send you written confirmation. If you cancel near the end of your billing period and are inadvertently charged for the next month's fee contact AOL at the toll free number above to have the charges reversed. AOL reserves the right to collect fees, surcharges or costs incurred before you cancel your AOL membership. In addition, you are responsible for any charges incurred to third-party vendors or content providers prior to your cancellation.

In the event that your account is terminated or canceled, no refund, including any membership fees, will be granted; no online time or other credits (e.g., points in an online game) will be credited to you or can be converted to cash or other form of reimbursement. Active AOL Members may not allow former Members or other agents whose memberships have been terminated to use their accounts. Any delinquent or unpaid accounts or accounts with unresolved issues with the Community Action department or other AOL departments must be concluded before you may re-register with AOL, Inc.

**8.  LAW AND LEGAL NOTICES**

The Member Agreement represents your entire agreement with AOL. You agree that this Member Agreement is not intended to confer and does not confer any rights or remedies upon any person other than the parties to this Agreement. You also understand and agree that the AOL Community Guidelines and the AOL Privacy Policy, including AOL's enforcement of those policies, are not intended to confer, and do not confer, any rights or remedies upon any person. If any part of this Agreement is held invalid or unenforceable, that portion shall be construed in a manner consistent with applicable law to reflect, as nearly as possible, the original intentions of the parties, and the remaining portions shall remain in full force and effect. The laws of the Commonwealth of Virginia, excluding its conflicts-of-law rules, govern this Agreement and your membership. As noted above, member conduct may be subject to other local, state, national, and international laws. You expressly agree that exclusive jurisdiction for any claim or dispute with AOL or relating in any way to your membership or your use of AOL resides in the courts of Virginia and you further agree and expressly consent to the exercise of personal jurisdiction in the courts of Virginia in connection with any such dispute including any claim involving AOL or its affiliates, subsidiaries, employees, contractors, officers, directors, telecommunication providers and content providers.

You agree to abide by U.S. and other applicable export control laws and not to transfer, by electronic transmission or otherwise, any content or software subject to restrictions under such laws to a national destination prohibited under such laws, without first obtaining, and then complying with, any requisite government authorization. You further agree not to upload to AOL any data or software that cannot be exported without prior written government authorization, including, but not limited to, certain types of encryption software. This assurance and commitment shall survive termination of this agreement. Control laws currently prohibit the export of any browser with 128-bit encryption, including Internet Explorer, available through AOL. Control laws also prohibit nationals of Cuba, Iran, Iraq, Libya, North Korea, Sudan and Syria from gaining access to certain content on AOL.

Information for California Residents:
Under California Civil Code Section 1789.3, California Members are entitled to the following specific consumer rights information:

**Pricing Information.** Current rates for using AOL may be obtained by calling 1-800-827-6364. AOL, Inc. reserves the right to change fees, surcharges, monthly membership fees or to institute new fees at any time upon thirty (30) days prior notice, as provided for in the Member Agreement at Section 2.

**Complaints.** The Complaint Assistance Unit of the Division of Consumer Services of the California Department of Consumer Affairs may be contacted in writing at 1020 N. Street, #501, Sacramento, CA 95814, or by telephone at 1-916-445-1254.

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing was served by

United States first-class mail, postage prepaid, this 11th day of September, 2003 upon:

Daniel J. Klau
Pepe & Hazard
Goodwin Square
225 Asylum Street
Hartford, CT  06103-4302

Thomas M. Murtha
Mark A. Perkins
Maher & Murtha
528 Clinton Ave.
P.O. Box 901
Bridgeport, CT  06601.

Rowena A. Moffett, Esq.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

FILED

Nov 21  3 59 PH '03

---

CLIFTON S. FREEDMAN,
     Plaintiff,  :

   v.      :  CASE NO.: 3:03-CV-1048 (PCD)

AMERICA ONLINE, INC., ET AL., :

     Defendants. :  September 11, 2003

---

**APPENDIX OF UNPUBLISHED CASES**
**CITED IN THE MEMORANDUM IN SUPPORT OF**
**AMERICA ONLINE, INC.'S MOTION TO DISMISS**

## **Table of Contents**

*Dilorenzo v. America Online, Inc.*, No. 605867/06 (N.Y. Sup. Ct. Jan. 22, 1999) ..........................1

*Finlay v. America Online, Inc.*, No. 02-2417 (E.D. Pa. Oct. 4, 2002).................................................2

*Groff v. America Online, Inc.*, No. PC 97-0331, 1998 WL 307001
(R.I. Super. Ct. May 27, 1998) ......................................................................................................3

*Muni v. America Online, Inc.*, No. 99-300 (D.N.J. Aug. 6, 1999)....................................................4

*Spera v. America Online, Inc.*, No. 06716/97 (N.Y. Sup. Ct. Jan. 27, 1998)....................................5

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  IAS PART 3
————————————————————————X
STEPHEN J. DILORENZO and DEAN LUBNICK, on
behalf of themselves and all others similarly situated,

                           Plaintiffs,

          -against-                                    Index No. 605867/96

AMERICA ONLINE, INC.,                               Sequence No. 003

                           Defendant.

————————————————————————X

BARRY A. COZIER, J.:

          In this class action, defendant America Online, Inc. ("AOL") moves to dismiss

second amended complaint in its entirety, pursuant to CPLR 3211(a)(1) and CPLR 327.

                    FACTUAL ALLEGATIONS

          Plaintiffs Stephen DiLorenzo and Dean Lubnick were subscribers of on-line

services provided by AOL.  The service agreement between the parties provided the plaintiffs

with the first five hours of access to AOL for $9.95 and $2.95 per hour for each additional ho

thereafter.  In December 1996, AOL changed its billing practices so that all subscribers who l

previously been billed under the $9.95 plan would be switched to an unlimited use plan at a f

rate of $19.95 per month.  Following an investigation by a number of State Attorneys Genera

AOL's new billing practices, AOL agreed to, *inter alia*, inform all users of the changes, prov

an on-line mechanism to revert back to the $9.95 plan at no cost through March 31, 1997, an

establish a toll-free telephone number to explain the billing changes.

          Plaintiffs subsequently commenced this action, which was consolidated in Ma

1997 with thirteen other New York actions by Justice Lewis R. Friedman.  The consolidated

action was stayed pending resolution of an earlier filed national class action in Illinois. *Schr*

_American Online, Inc._, No. 96 CH 13732. In February 1998, an opinion and order was entered approving the settlement of Schwab, and all plaintiffs in the consolidated action, except DiLorenzo and Lubnick, discontinued their claims against AOL.

In the second amended complaint dated June 30, 1998, plaintiffs allege that A in switching all of its subscribers from the $9.95 plan to the $19.95 plan, failed to (1) adequa notify its users of the option to transfer back to the $9.95 plan; (2) disclose negative informa concerning its pricing, resulting in fraud; and (3) inform its users of its actual capacity to pro internet services. Plaintiffs further maintain that "free minutes," granted to AOL customers induce them to subscribe to AOL or to credit accounts, were rendered worthless due to the n billing practice. As a result of the unlimited flat rate, plaintiffs allege, AOL's quality of serv deteriorated, injuring its customers.

AOL opposes the present motion by urging dismissal by virtue of the forum selection clause contained in the AOL customer contract. Specifically, AOL cites to ¶ 10 of "Terms of Service" ("TOS"), which all AOL customers must accept by clicking on the "I ag icon on the computer screen in order to subscribe:

> The TOS and your membership shall be governed by the laws of the Commonwealth of Virginia, excluding its conflicts of law rules." Member expressly agrees that exclusive jurisdiction for any claim or dispute resides in the courts of the Commonwealth of Virginia. Member further agrees and expressly consents to the exercise of personal jurisdiction in the Commonwealth of Virginia in connection with any dispute or claim involving AOL Inc.

Doc. Aff., Exh. B. AOL maintains the Virginia forum is appropriate because, _inter alia_, AC headquartered in Virginia, the service is based out of Virginia, all relevant documents and personnel responsible for the terms are located in Virginia, and the unlimited flat fee plan v

valid and enforceable unless shown by the resisting party to be unreasonable." *Brooke Gr. Ltd. v. JCH Syndicate JRR*, 87 N.Y.2d 530, 534 (1996). *See, also, Shah v. Shah*, 215 A.D.2d 287, 288 (1st Dept. 1995) (forum selection clauses are "prima facie valid and are not to be set aside except in instances of fraud or overreaching or where the enforcement of the clause w. be so unreasonable and unjust as to make a trial in the selected forum 'so gravely difficult a inconvenient that the challenging party would, for all practical purposes, be deprived of his her day in court.'") (quoting *British West Indies Guar. Trust Co., Ltd. v. Banque Internatio Luxembourg*, 172 A.D.2d 234 (1st Dept. 1991), additional citations omitted). Forum select clauses are favored because they provide predictability and certainty in the resolution of dis *Brooke Group Ltd., supra*, 87 N.Y.2d, at 534. Thus, a party challenging a forum selection carries the heavy burden of establishing that the chosen forum is an improper. *Banco Ambrosiano, S.p.A. v. Artoc Bank & Trust Ltd.*, 62 N.Y.2d 65, 74 (1984).

The Court concludes that plaintiffs have failed to meet this heavy burden. Allegations by the plaintiffs that fraud committed by AOL permeated the contract, voiding forum selection clause, ignore the reality that plaintiffs have failed to allege that the inclusi the forum selection clause was itself the product of fraud. Although plaintiffs allege AOL to disclose the true facts regarding the flat rate, such an allegation has no bearing on plainti earlier agreement to be bound by the forum selection clause. As the Supreme Court of the United States has held, a dispute arising out of a transaction based upon an allegation of fr does not render the forum selection clause unenforceable. Rather, a "forum-selection claus contract is not enforceable if the inclusion of that clause in the contract was the product of or coercion." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974). *See, also, Rol*

*Johnson v Kentucky Agric. Energy Corp.*, 108 A.D.2d 336, 341 (1st Dept. 1985) ("it is not alleged that the forum selection clause itself was induced by fraud; therefore, the enforcement that clause is not affected"); *Composite Holdings, L.L.C. v. Westinghouse Electric Corp.*, 99 F.Supp. 367, 369 (SDNY 1998) ("forum selection clause will stand against a claim of fraud unless the party resisting enforcement alleges and proves that . . . the fraud was directed to the forum selection clause itself").

Plaintiffs' argument that AOL waived the forum selection clause, by virtue of involvement in the Illinois litigation, is also without merit. Waiver is "an intentional relinquishment of a known right and should not be lightly presumed." *Gilbert Frank Corp. v Federal Ins. Co.*, 70 N.Y.2d 966, 968 (1988). Accordingly, "[t]his intent must be clearly established and cannot be inferred from doubtful or equivocal acts or language and the burden of proof is on the person claiming the waiver of the right." *East 56th Plaza, Inc. v. Abrams*, 91 A.D.2d 1129, 1130 (3d Dept. 1983). The record establishes that prior to settling the *Schroh* action, AOL indicated its intent to invoke the forum selection clause by the filing of a motion to dismiss based upon the Virginia selection clause. *See*, Jaber Aff., Exh. A, Memo in Support (court must dismiss the complaint due to the existence of a forum selection clause which provides exclusive jurisdiction in Virginia). Thus, rather than waiving the forum selection clause, AOL sought its enforcement prior to the settlement. The fact that the prior action ultimately resulted in a settlement does not amount to "an intentional relinquishment" of the forum selection clause, especially in light of the fact that settlements are "judicially favored." *Matter of Kanter*, 209 A.D.2d 365, 365 (1st Dept. 1994).

As for plaintiff's claim that New York's strong interest in regulating conduct

within its borders and enforcing its consumer protection statutes warrants hearing the action in

New York, it ignores the fact that foreign courts may determine whether New York's consumer

laws were violated. *See, Dralman v. American Express Travel Related Services Co.*, 892 F.Supp.

1096, 1101 (N.D.Ill. 1995) (defendant did not violate § 349); *Rhodes v. Consumers' Buyline,*

*Inc.*, 868 F.Supp 368, 377 (D.Mass. 1993) (plaintiff stated valid claim for violation under § 349).

Accordingly, it is

ORDERED that the motion to dismiss is granted and the complaint is dismissed

with costs and disbursements to defendant as taxed by the Clerk of the Court; and it is further

ORDERED that the Clerk is directed to enter judgment accordingly.

This constitutes the decision and order of the Court

Dated: January 22, 1999

ENTER:

J.S.C.

#2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH B. FINLAY, JR.,            :     CIVIL ACTION
JILL R. FINLAY, and their minor   :
daughter                          :
                                  :
              v.                  :
                                  :
AMERICA ONLINE, INC.              :     NO. 02-2417

FILED OCT 04 2002

ENTERED
OCT 7 2002
CLERK OF CC

## MEMORANDUM

Dalzell, J.                                     October 4, 2002

          Joseph Finlay, Jill Finlay, and their minor daughter
have filed this action against America Online.  In their amended
complaint, they allege that Joseph and Jill Finlay subscribed to
America Online for their thirteen year old daughter and
identified her as a "young teen" to restrict her access to online
material.  Some unknown person allegedly hacked into their
daughter's e-mail account.  The hacker sent vulgar e-mail using
her e-mail address and altered her user profile to add false and
obscene personal attributes.

          The Finlays maintain that America Online was negligent
for failing to protect against the misappropriation of their
daughter's e-mail address and password.  They also assert a claim
of defamation stemming from comments America Online's legal
counsel allegedly made after this suit was filed, calling the
lawsuit "frivolous".  America Online moves to dismiss under Fed.
R. Civ. P. 12(b)(6) and 12(b)(3) for failure to state a claim and
improper venue.

Because a forum selection clause directs this controversy to Virginia, we will grant the motion to dismiss in part

## Forum Selection Clause

The America Online Membership Agreement, governing the Finlays' subscription to America Online, provides in relevant part:

> 8. LAW AND LEGAL NOTICES
> ....You expressly_agree that exclusive ......
> jurisdiction for any claim or dispute with
> AOL or relating in any way to your membership
> or your use of AOL resides in the courts of
> Virginia....

App. to Mot. to Dismiss, Ex. A.1, at 4.

Under the plain terms of the forum selection clause, venue is exclusively "in the courts of Virginia." Any action that "relates in any way" to membership or use of America Online is embraced by this comprehensive forum selection provision.

The Finlays here complain that America Online failed to exercise ordinary care as their daughter's Internet service provider. The other count, claiming defamation, arises out of comments the lawyers made about this case after it was filed; it, too, is therefore bottomed on the relationship between the minor Finlay as customer and America Online as Internet service provider. The forum selection clause, by its terms, thus dictates that this action be brought "in the courts of Virginia."

As will be seen, however, the presence of this broad clause does not necessarily end our inquiry.

2

## Discussion

We examine defendant's motion to change venue under 28 U.S.C. § 1404 ("Change of Venue"), rather than 28 U.S.C. § 1406 ("Cure or waiver of defects"), since venue is proper in this district under 28 U.S.C. § 1391. Jumara v. State Farm Ins. Co., 55 F.3d 873, 878-79 (3d Cir. 1995). A forum selection clause, while significant, is not dispositive of venue. Id. at 880.

A court must balance the conveniences to determine appropriate venue. § 1404(a); Jumara, 55 F.3d at 879. In balancing the relevant factors -- such as plaintiff's preference of venue, defendant's preference of venue, location of evidence, and convenience of witnesses and parties -- we must give deference to the plaintiff's choice of venue measured by where plaintiff has filed. Id.

When the parties have agreed to a forum selection clause, although the "framework" is the same, the calculus changes. Id. at 880. "[A] forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum.... [W]hile courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue." Id. Forum selection clauses serve salutary purposes, such as averting time-consuming litigation about venue, and saving parties to the contract from the prospect of suit in multiple fora. Carnival Cruise Lines , Inc. v. Shute, 499 U.S. 585, 594 (1991).

3

A forum selection clause is "'prima facie valid.'" _Id._ at 589. "Where the forum selection clause is valid, which requires that there have been no 'fraud, influence, or overweening bargaining power,' the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum." _Jumara_, 55 F.3d 880.

The Finlays may overcome the forum selection clause in only two ways. First, they may show that the forum selection clause is invalid as the product of undue influence or fraud. Second, they may try to show that, despite the parties' voluntary agreement to Virginia as the forum state, venue in that Commonwealth is inconvenient. _Id._ To show that the balance of conveniences favors this district, when the parties have expressly chosen Virginia, the plaintiffs bear a "heavy burden." _Carnival Cruise Lines_, 499 U.S. at 595.

The Finlays do not attempt to argue that venue in Virginia is inconvenient. Nor could they as a matter of law. The Finlay family lives in Pennsylvania. In _Carnival Cruise Lines_, 499 U.S. at 587, 594-95, the Supreme Court determined that plaintiffs living in Washington State could not by that fact alone establish that venue in Florida was inconvenient sufficiently to set aside a valid forum selection clause.

The Finlays instead try to show that the forum selection clause is invalid. They do not allege that America Online procured the clause by fraud or undue influence, or that they did not have notice of it. _Id._ at 595. Instead they assert

4

it should be invalidated because the America Online Membership
Agreement is a "contract of adhesion". A contract of adhesion,
as the Finlays describe it, is one where the parties are "not of
equal bargaining power and the buyer must adhere to the terms of
the form contract that are not negotiable", Pl.'s Resp. to Mot.
to Dismiss, at 26, which will certainly do as a definition.[1]
Carnival Cruise Lines forecloses the argument that a forum
selection clause in a contract of adhesion is ineffective. In
Carnival Cruise Lines, the Supreme Court upheld a forum selection
clause in just such a form contract.[2]

───────────────

[1] Black's defines adhesion contract as:

> Standardized contract form offered to
> consumers of goods and services on
> essentially "take it or leave it" basis
> without affording consumer realistic
> opportunity to bargain and under such
> conditions that consumer cannot obtain
> desired product or services except by
> acquiescing in form contract....

Black's Law Dictionary 40 (6th ed. 1990).

[2] The document in Carnival Cruise Lines was
indisputably a contract of adhesion:

> [R]espondents' passage contract was purely
> routine and doubtless nearly identical to
> every commercial passage contract issued by
> petitioner and most other cruise lines. In
> this context, it would be entirely
> unreasonable for us to assume that
> respondents - or any other cruise passenger -
> would negotiate with petitioner the terms of
> a forum-selection clause in an ordinary
> commercial cruise ticket. Common sense
> dictates that a ticket of this kind will be a
> form contract the terms of which are not
> subject to negotiation, and that an
> individual purchasing the ticket will not
> (continued...)

The Finlays add that the forum selection clause is defective because it is unconscionable. Since the only respect in which it is allegedly unconscionable is that the Finlays did not have the bargaining power to negotiate it, this contention is merely a recasting of the contract of adhesion argument that Carnival Cruise Lines dispatched. But by way of further comment, a contract term is unconscionable only if it would result in oppression or unfair surprise. 13 Pa. Consol. Stat. Ann. § 2302 ("Uniform Commercial Code Comment"). There is nothing oppressive about the Finlays litigating this action near the south bank of the Potomac.[3]

Since a valid forum selection clause dictates that venue must be in Virginia, and the Finlays cannot meet their "heavy burden" of showing the balance of conveniences nevertheless favors venue here, we will grant the motion to dismiss in part. The case will be transferred to the Eastern District of Virginia,[4] rather than dismissed, as that less Draconian course "makes better sense." Salovaara v. Jackson

_____

[2](...continued)
    have bargaining parity with the cruise line.
Id. at 593 (citation omitted).

[3] Court in the Eastern District of Virginia is held in Alexandria, 28 U.S.C. § 127(a).

[4] According to the U.S. Business Directory available on lexis.com, America Online is in Sterling, Loudoun County, Virginia, which makes it about thirty-five miles from the Eastern District's Alexandria station. See http://www.mapquest.com/directions.

6

<u>Nat'l Life Ins. Co.</u>, 246 F.3d 289, 299 (3d Cir. 2001).  An Order
follows.

7

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH E. FINLAY, JR. at al.,      :      CIVIL ACTION
JILL R. FINLAY, and their minor    :
daughter                           :
                                   :
          v.                       :
                                   :
AMERICA ONLINE, INC.               :      NO. 02-2417

ORDER

AND NOW, this 4th day of October, 2002, upon consideration of defendant's motion to dismiss, plaintiffs' response thereto, defendant's reply thereto, and plaintiff's surreply thereto, and in accordance with the accompanying Memorandum it is hereby ORDERED that:

1.   The motion to dismiss (Doc. No. 5) is GRANTED to the extent it challenges venue under 28 U.S.C. § 1404; and

2.   This action shall be TRANSFERRED to the United States District Court for the Eastern District of Virginia.

BY THE COURT:

Stewart Dalzell, J.

Not Reported in A.2d
(Cite as: 1998 WL 307001 (R.I.Super.))
<KeyCite Citations>

Page 62

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Rhode Island.

Lawrence GROFF, individually and on behalf of
all other similarly situated
v.
AMERICA ONLINE, INC.

No. PC 97-0331.

May 27, 1998.

DECISION

CLIFTON, J.

*1 The matter is before the Court on defendant
America Online, Inc.'s Motion to Dismiss plaintiff's
Complaint [FN1] on the grounds of improper venue
pursuant to Rules of Civil Procedure, (R.C.P) Rule
12(b)(3).

> FN1. Plaintiff has filed this purported class action
> on behalf of himself and "on behalf of all others
> similarly situated." This Court has not ruled on
> whether or not this matter may proceed as a class
> action, and if it may, who may constitute the class.

FACTS:

According to plaintiff's Complaint, defendant is a
"[V]irginia Company" that operates an "on-line"
computer service which allows plaintiff "to access
and receive information via his personal computer,
including access to the Internet, so-called."

Initially, individuals receiving that service were
provided, for a set fee, a limited maximum number
of hours and were charged additionally for time "on
line" beyond the limited maximum. Thereafter,
defendant initiated a "flat fee" which allowed for
unlimited hours "on line."

The gravamen of plaintiff's complaint is, at the
time he accepted defendant's offer for unlimited
service, defendant knew they were unable to provide
the service and said actions were in violation of the

Rhode Island Unfair Trade Practice and Consumer
Protection Act, R.I.G.L. (1956) 6-13.1-1, et seq.

Before this action was filed, January 21, 1997, a
similar action had been certified as a class consisting
of "all AOL subscribers who were subscribers to
AOL on December 1, 1996 or who became
subscribers on said date or thereafter" in the Circuit
Court, Cook County (Il.) entitled Schwab, et al. vs.
America Online, Inc., No. 96 CH 13732. Although
plaintiff could have been a member of the class, he
"opted out" of the Schwab class, July 25, 1997,
prior to the effective date for class inclusion,
October 2, 1997.

Additionally, similar actions entitled Pollock vs.
America Online, C.A. No. 97-109A, Snyder vs.
America Online, C.A. No. 97-110A and New
Century Communications vs. America Online, C.A.
97-444A were pending before the United States
District Court, Eastern District of Virginia
(Alexandria Division), as well as litigation in other
jurisdictions.

Defendant, after initially filing its Motion to
Dismiss pursuant to Rules of Civil Procedure
(R.C.P.) 12(b)(1), (b)(2), (b)(3) and (b)(6),
narrowed its argument to the motion pursuant to
R.C.P. 12(b)(3), improper venue, and argued that
either the forum selection clause in defendant's
contract with its members, including plaintiff, or the
policy of forum non conveniens requires that this
action must be litigated in Virginia.

In support of its Motion, defendant submitted the
affidavit dated October 9, 1997 of Randell J. Boe,
Assistant General Counsel for defendant, together
with an exhibit (Exhibit 1) entitled "Quick
Reference Guide--America OnLine 3.0 For
Windows 95" consisting of ninety-four (94) pages
showing "(...each screen in order that the member
sees and interacts with it immediately upon loading
the software.)" (paragraph no. 3).

The affidavit outlines the process each subscriber
must follow. The affidavit asserts in paragraph 7
after reading the Terms of Service (TOS) "... the
user is unable to proceed onto the AOL system or
become an AOL member without affirmatively
choosing to accept the TOS. The user has the option
of clicking 'I Agree' or 'I Disagree' after reading

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

the TOS." (Exhibit 1 at page 79).

*2 The affidavit states in paragraph 8 "[T]he TOS contains a forum selection clause which expressly provides that Virginia law and Virginia courts are the appropriate law and forum for the litigation between members and AOL" (Exhibit 1 at page 59).

Plaintiff, in his affidavit dated October 6, 1997, stated in part that "he never saw, read, negotiated for or knowingly agreed to be bound by the choice of law or forum selection clause...." (Paragraph 7).

DISCUSSION:

As a threshold matter, the Court must decide if given the nature of defendant's motion, it may consider the affidavits without converting the motion to one of summary judgment. Our Supreme Court has held that a trial court, when deciding a preliminary jurisdictional motion which does not reach the merits of the issue at hand, may consider matters outside the pleadings, such as an affidavit, without treating the matters as a summary judgment motion under Rule 56 of the Rules of Civil Procedure. Almeida vs. Radovsky, 506 A.2d 1373, 1376 (R.I.1986).

As with the defendant in Almeida, defendant here is not seeking a decision on the merits of plaintiff's claim. Rather it is arguing that this Court should refrain from exercising its jurisdiction over this matter based upon the terms of the contract. Plaintiff, while disagreeing with most of the arguments raised by defendant, does not challenge the propriety of defendant submitting its affidavit or its use in resolving the issue. Instead, plaintiff submits his own for the court's consideration.

By statute, R.I.G.L. 6-13.1-5.2, the General Assembly has authorized a private right of action for alleged deceptive trade practices involving "...personal, family or household purposes...." Subsection (a) provides that the action may be brought "...in the Superior Court of the county in which the seller or lessor resides, is found, has his or her principal place of business, or is doing business, or in the Superior Court of the county as is otherwise provided by law..."

Defendant does not deny that, at a minimum, it is "...doing business" within Providence County. As

such, absent other policy interest, venue in this matter is proper and defendant's motion should be denied.

Defendant argues that either the "forum selection clause" contained in its terms of service membership agreement or the doctrine of forum non-conveniens requires this action be dismissed in Rhode Island. Plaintiff argues alternatively: (1) that the actions he complains of occurred before the contract became operative and therefore, the Court is not bound to accept the contract, (2) that transfer of a matter based upon improper venue between District Courts of the United States is expressly authorized in Title 28, Section 1404(a) of the United States Code, and is not authorized by statute in Rhode Island, (3) lastly that the policy of forum non conveniens has not been addressed by the Rhode Island Supreme Court and this Court should not dismiss the matter on this ground.

I. "PRECONTRACT"

*3 Addressing first plaintiff's argument that his action relates to "precontract" activity, thus the terms of the contract should not apply. Plaintiff relies principally on the Supreme Judicial Court decision Jacobson vs. Mailboxes, Etc. USA, Inc., 419 Mass. 572, 646 N.E.2d 741 (Mass.1995) vacating and remanding for further consideration a trial court's denial of a summary judgment motion by a defendant, where the trial court concluded that Massachusetts would not enforce a forum selection clause. In Jacobson, the Appellate Court attempted to predict how the courts of the forum state (California) under the terms of the agreement would interpret the clause as it applied to a preliminary showing by plaintiff of misrepresentation or fraud before the contract became operative.

It is clear from an objective reading of Jacobson that the Court was attempting to predict the law of California and that its holding should be limited to the facts there present, which although persuasive, is not binding upon this Court.

Further, to accept plaintiff's arguments would require this Court to go beyond that which is necessary to decide a jurisdictional question and reach the merits of the respective claims which is inappropriate given the limited nature of the motion before the Court.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

## II. IMPROPER VENUE

Historically, courts have looked with disfavor upon forum selection clauses on the basis that such clauses were contrary to public policy or had the effect of ousting proper jurisdiction from a court. However, in M/S Bremen vs. Zapata Off-Shore Company, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the United States Supreme Court held in reversing and remanding the matter for further consideration, that such forum selection clauses were "prima facie valid..." which should be upheld unless it is shown to be "unreasonable" by the resisting party under the circumstances. 407 U.S. at 10, S.Ct. at 1913. That court went further to explain that where a contract is "...unaffected by fraud, undue influence or overweening bargain power..." the contract should be given its full effect.

Under the test enunciated in M/S Bremen, the party resisting the motion bears a heavy burden of proof in his attempt to demonstrate unreasonableness. 407 U.S. at 17, 92 S.Ct. 15, 1917.

After M/S Bremen was decided, numerous Circuit Courts applied factors in determining if a forum selection clause was unreasonable. Locally, then District Judge (now Circuit Judge) Selya upheld a forum selection clause between defendant (a California corporation) and plaintiff (a Rhode Island resident) seeking recovery, in part, under the same legal theory and statutory basis as here, R.I.G.L. 6-13.1-5.2, transferring plaintiff's action to California in D'Antuano vs. CCH Computax System, Inc., 570 F.Supp. 708 (D.R.I.1983).

Judge Selya analyzed nine factors which other Federal Courts have examined in applying the reasonableness of enforcing a forum selection clause, those being:
*4 1. identity of the law that governs the construction of the contract;
2. place of execution of contract;
3. place where transactions are to be performed;
4. availability of remedies in the designated forum;
5. public policy of the initial forum state;
6. location of the parties, the convenience of the prospective witnesses, and the accessibility of evidence;
7. relative bargaining power of the parties and the circumstances surrounding their dealings;

8. presence or absence of fraud, undue influence or other extenuating (or exacerbating) circumstances; and
9. the conduct of the parties.

Judge Selya wrote further "[W]hile each of these factors has some degree of relevance and some claim to weight, there are no hard-and-fast rules, no precise formula. The totality of the circumstances, measured in the interests of justice will and should ultimately control." 570 F.Supp. at 712.

Applying the above factors to this matter, under the terms of the agreement (Exhibit 1, page 59), "[T]he laws of the Commonwealth of Virginia, excluding its conflicts-of-law rules, govern the TOS and your membership." It is not clear, in this electronic age, where the last place the contract was executed. Was it when plaintiff clicked the "I agree" button (Exhibit 1, page 33) in Rhode Island or where that message was received, at defendant's mainframe in Virginia? The place where the transaction has been or are to be performed appears to take place where defendant's mainframe is located. Given the burden imposed upon plaintiff, this Court is not satisfied that the contract was executed in Rhode Island, or to be performed in Rhode Island.

As to the availability of a remedy, if this matter were brought in Virginia, the Virginia Legislature has enacted the "Virginia Consumer Protection Act of 1977, (1977, c. 635) which authorizes a private right of action and permits recovery of "...actual damages, or $500.00, whichever is greater," unless it is found that the violation was willful which would permit treble damages or "...$1,000.00, whichever is greater." § 59.1-204 Virginia Consumer Protection Act of 1977 (1977 c. 635). Unlike one concern raised in Jacobson as to whether plaintiff's action could be barred based upon the statute of limitations having run, it does not appear that plaintiff would be prevented from commencing and pursuing his action against defendant for that reason. § 59.1-204.2. Virginia Consumer Protection Act of 1977 (as amended 1988 c. 241, 1995 cc. 703, 726).

While no one can seriously argue that the public policy of Rhode Island to provide a remedy for its citizens is not an important one, it is at least of equal, if not greater importance, that parties to a

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works