## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CLIFTON S. FREEDMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 3:03CV1048 (PCD) |
| v. | ) | |
| | ) | |
| AMERICA ONLINE, INC., THE TOWN OF | ) | |
| FAIRFIELD, DETECTIVE WILLIAM YOUNG | ) | |
| AND DETECTIVE DAVID BENSEY | ) | |
| (Individually and in their official capacities as | ) | |
| police officers for the Town of Fairfield), | ) | |
| | ) | |
| Defendants. | ) | January 23, 2004 |

### REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF'S
### MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS OR,
### IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

Ignorance of the law is no excuse – except, it appears, for the Fairfield Police Department (hereinafter the "defendants").[1] The defendants contend that they did not violate § 2703(c) of the Electronic Communications Privacy Act of 1986 ("ECPA") because they did not "require" America Online ("AOL") to disclose the plaintiff's subscriber information. *See* Memorandum of Law in Support of Defendants' Objection to Plaintiff's Motion for Partial Summary Judgment ("Def. Mem.") at 5. Instead, they ask this Court to believe that, when they sent AOL a standard Connecticut search warrant form that was completed in all respects except for a judge's signature, they were merely hoping that AOL would voluntarily disclose the identity of the plaintiff and related subscriber information.

---

[1] When the plaintiff served his motion for summary judgment, the Court had not yet ruled on America Online's motion to dismiss based on a forum selection clause. Thus, the plaintiff's moving papers distinguished between AOL and the other defendants. For this memorandum, however, the term "defendants" shall refer to the Town of Fairfield and Detectives Young and Bensey.

Even if the Court were to accept this story, the plaintiff, Clifton Freedman, would still be entitled to summary judgment because AOL did not have the right under the ECPA voluntarily to disclose that information to the defendants. Thus, by asking AOL to disclose information voluntarily, the defendants solicited a violation of the ECPA. That solicitation is itself an actionable violation of the ECPA. *See McVeigh v. Cohen*, 983 F. Supp. 215 (D.D.C. 1998).

The Court, however, should reject the defendants' argument because it is based on a misinformed interpretation of the ECPA. As explained below, the defendants' subjective intent in sending the search warrant application is legally irrelevant. To obtain information about the plaintiff from AOL, the ECPA required the defendants to employ legal process, such as a valid search warrant, court order, or subpoena. Their undisputed failure to do so is a violation of § 2703(c).

## ARGUMENT

## I.   THE DEFENDANTS VIOLATED THE ECPA WHEN THEY SENT AN INVALID SEARCH WARRANT TO AOL.

The defendants' principal objection to the motion for summary judgment is based upon a tortured construction of the text of § 2703(c)(1), which provides that "a governmental entity may require a provider of electronic communication service . . . to disclose a record or other information pertaining to a subscriber . . . ." (Emphasis supplied). They contend that there is a factual dispute whether the search warrant they sent to AOL satisfies the "may require" element of the section. Def. Mem. at 5-10. In particularly, they contend that defendant Young "utilized the Application for a Search and Seizure Warrant because it allowed him a clear and concise format to set forth the facts of the investigation in an affidavit format. *Id.* at

2

7.[2] Thus, the defendants assert that they did not have the subjective intent to "require" AOL to provide information in response to the warrant. This argument is without merit.

The terms of § 2703(c) could not be clearer. If a *government* entity – such as the Fairfield Police Department – wants to obtain subscriber information from an electronic communication service provider, it must either have the consent of the customer – which the defendants concede they did not have – or it must serve the provider with a valid search warrant or court order – which they also concede they did not have. Section 2703(c) is equally clear that, although a service provider can freely disclose subscriber information to *private* entities, *see* § 2702(c)(5), it cannot disclose such information to a *government* entity in the absence of the customer's consent or a valid search warrant or other legal process. 18 U.S. C. § 2703(c)(2).

In short, the ECPA forbids a government entity to ask a company, such as AOL, to disclose subscriber information voluntarily, for doing so would be soliciting AOL to violate the ECPA. A government entity must use one of the means of acquiring information specified in § 2703(c), such as a search warrant. If it uses an invalid search warrant, or if it asks a provider to disclose the information voluntarily, it has violated the ECPA. Thus, whether the defendants had the subjective intent to compel AOL to disclose Mr. Freedman's subscriber information is legally irrelevant. Accordingly, they cannot defeat summary judgment by asserting that their subjective intent is a disputed issue of fact.

---

[2] This assertion compels the plaintiff's counsel to pose a rhetorical question. If defendant Young only used the warrant application because it offered a convenient format to communicate information to AOL, why did he need defendant Bensey to witness his signature?

3

*McVeigh v. Cohen*, 983 F. Supp. 215 (D.D.C. 1998) is directly on point.  In that case, the Navy asked AOL to disclose the identity of an individual (McVeigh) who had sent an anonymous email that led the Navy to believe the sender was homosexual.  In making the request to AOL, the Navy did not use a warrant or any other type of legal process specified in § 2703(c).  The Court concluded that the Navy's failure to use a warrant violated the ECPA.  *Id.* at 219.  The Court further stated:

> In [the plaintiff's] claim that the government, at the least, solicited a violation of the ECPA by AOL, the Court finds that there is likely success on the merits with regard to this issue.  *The government knew, or should have known, that by turning over the information without a warrant, AOL was breaking the law.  Yet the Navy, in this case, directly solicited the information anyway.*

*Id.* at 220 (emphasis supplied).

Thus, *McVeigh* stands for the proposition that the ECPA precludes a government entity from asking a company like AOL to disclose information about a subscriber voluntarily.  However, that is exactly what the defendants did in this case.  Unless this Court rejects the *McVeigh* decision as precedent – notably, the defendants' memorandum does not even mention *McVeigh*, much less attempt to distinguish or discredit it – their liability under the ECPA could not be any clearer.

## II.    THE DEFENDANTS HAVE NOT SUBMITTED ANY EVIDENCE THAT BRINGS THIS CASE WITHIN THE "EMERGENCY EXCEPTION" TO SECTION 2702(c)(4) OF THE ECPA.

The Court should also reject the defendants' attempt to shoehorn this case into an exception under the ECPA that permits an electronic communications service provider to disclose the identity of a subscriber to the government if the provider reasonably believes that an "emergency involving immediate danger of death or serious physical injury to any person

4

justifies disclosure of the information." 18 U.S.C. § 2702(c)(4) [hereinafter the "emergency exception"]. This argument fails for three reasons.

1.    Based upon an analysis of the text and structure of the ECPA, the Court should conclude that the emergency exception does *not* apply to situations in which a *government* entity supplies the communications service provider with evidence that a subscriber has threatened someone, but fails to use one of the means specified in § 2703(c), such as a valid search warrant. Rather, the exception only applies in cases where: 1) the service provider, *on its own*, learns information about a subscriber that gives rise to a reasonable belief that the subscriber has put another person in immediate danger of death or serious bodily harm,[3] or 2) *if a third party other than a government entity* (such as another subscriber) gives the service provider such information. In either situation, it is understandable that Congress would have wanted the service provider to be able to make a disclosure to the government.

As described in Part I above, § 2703(c) draws a clear and critical distinction between the rights of government entities and the rights of private entities with respect to the disclosure of subscriber information by an electronic communications service provider. Absent the consent of the subscriber, a government entity *must* use one of the specified forms of legal process.

The defendants' proffered interpretation of the emergency exception would create a large loop hole in § 2703(c). Instead of using a warrant, court order or subpoena, as § 2703(c) expressly requires, a government entity could simply send the electronic communication

---

[3] For example, the ECPA permits companies such as AOL, under circumstances incident to the rendition of its business services, to view the contents of emails transmitted via its network.

5

service provider the email and hope that the provider invokes the emergency exception and voluntarily discloses to the government entity the identity of the person who sent the email.

Notably, the legislative history of the USA PATRIOT Act's amendment to the emergency exception supports limiting its scope to situations in which the communications service provider learns of the threatening information on its own or from a third party other than a government entity:

> Under the current law, if an [internet service provider's ("ISP")] customer receives an e-mail death threat from another customer of the same ISP, and the victim provides a copy of the communication to the ISP, the ISP is limited in what actions it may take. On one hand, the ISP may disclose the contents of the forwarded communication to law enforcement, or to any other third party as it sees fit. On the other hand, current law does not expressly authorize the ISP to voluntarily provide law enforcement with the identity, home address, and other subscriber information of the user making the threat. . . . In those cases, where the risk of death or injury is imminent, the law should not require providers to sit idly by.

147 Cong. Rec. S10,371 (2001) (internal citations omitted). As amended, the ECPA now permits ISP's to disclose to the government not only the content of the email, but also non-content information about a subscriber, such as his name and address.

In short, the text of the ECPA and the legislative history of the emergency exception provide no support for the defendants' argument that the exception applies in cases where a government entity supplies the communications service provider with the threatening email. As noted above, this argument, if accepted, would create a large loop hole that would make it far too easy for government entities to avoid the strict requirements of § 2703(c). If a police officer, upon being presented with an email, honestly and reasonably believes that the recipient of the email is in immediate danger of death or serious bodily harm – which is obviously *not* what the defendants believed

6

in this case – the officer can draw up a search warrant and allow a judge or magistrate to fulfill his constitutional obligation to review the warrant and determine whether there is probable cause to conduct a search. This is a minor burden for government entities, but one that will ensure that the privacy of subscribers to internet service providers such as AOL is not invaded unnecessarily.

2.      Conspicuously missing from defendants' affidavits is even the hint of a suggestion that *they* personally believed that the recipients of Mr. Freedman's email were in immediate danger of death or serious physical injury. Certainly, they did not communicate such a belief to AOL. Thus, it is not the least bit surprising that AOL took more than six days to respond to the search warrant. Def. Mem. at 11. Plainly, neither the defendants nor AOL believed that anyone was in immediate danger of death of serious bodily injury.

3.      Defendants cannot oppose the summary judgment motion by speculating, in their briefs and affidavits, about what AOL may or may not have believed about the email. Local Rule 56(a)(3) requires the defendants to support their statement of disputed facts with an affidavit or other document that would be admissible at trial. Defendants, however, offer no admissible evidence of AOL's state of mind with respect to the emergency exception. Because defendants failed to comply with Local Rule 56(a)(3), their speculative statements about AOL's subjective beliefs cannot defeat Mr. Freedman's motion for summary judgment.

## III.   THE PLAINTIFF DID NOT CONSENT TO AOL'S DISCLOSURE OF HIS SUBSCRIBER INFORMATION.

There is also no merit to the defendants' argument that there is factual dispute whether Mr. Freedman gave his consent to AOL to release his subscriber information to the defendants. Of course, he did no such thing. *See* Affidavit of Clifton Freedman, attached as Exhibit A.

7

More importantly, the defendants' argument is founded on an erroneous interpretation of a reference on the fax cover sheet from AOL, which accompanied AOL's disclosure of the plaintiff's subscriber information to the defendants. The reference is to "18 U.S.C. § 2703(c)(1)(C)." Def. Mem. at 12. The defendants understand that citation to refer to a provision in § 2703 that permits a governmental entity to require the disclosure of an individual's subscriber information if it has the consent of the subscriber. *Id.*

The flaw in defendants' argument is that § 2703 has been amended many times, and the amendments have often resulted in the renumbering of its many subparts. Congress most recently amended the § 2703 in 2001, as part of the USA PATRIOT Act. Prior to that amendment, § 2703(c)(1)(C) read as follows:

> A provider of electronic communication service or remote computing service shall disclose to a governmental entity the name, address, local and long distance telephone toll billing records, telephone number or other subscriber number or identity, and length of service of a subscriber to or a customer of such service and the types of services the subscriber or customer utilized, when the governmental entity uses an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena or any means available under subparagraph (B).

The information described above is the very type of information that AOL faxed to the defendants. Plainly, the reference in the AOL fax cover sheet to § 2703(c)(1)(C) is to the above text, not the text *after* the PATRIOT Act amendments renumbered the section. In other words, AOL has not updated a generic fax cover sheet.

Finally, as noted earlier, defendants cannot oppose a motion for summary judgment by speculating about what the evidence might show on this issue. Once again, Local Rule 56(a)(3) requires a party opposing a motion for summary judgment to support the motion with evidence *that would be admissible at trial*. Inarguably, to the

8

extent that the defendants offer the reference on the fax cover sheet for the truth of the

matter asserted – that the plaintiff consented to AOL's disclosure – the reference is

hearsay. Absent an affidavit or deposition testimony from AOL as to the meaning of

the reference, the fax cover sheet is not enough to create a genuine issue of material

fact.

## IV.    BY SIGNING THE SEARCH WARRANT APPLICATION, DETECTIVE BENSEY BECAME LIABLE FOR VIOLATING THE ECPA.

Lastly, the defendants argue that defendant Bensey should not be held liable

because he allegedly signed the warrant application in his capacity as a witness to

defendant Young's signature. Def. Mem. at 10. This argument directly contradicts the

defendants' previous statement – in paragraph 6 of the "Statement of Undisputed Facts"

section of the parties' Rule 26(f) report – that they "jointly executed" the search warrant.

Having admitted that fact in the Rule 26(f) report, which their counsel signed on their

behalf, the defendants cannot create an issue of fact by contradicting themselves.

Furthermore, nothing in the warrant application even suggests that defendant

Bensey signed as a mere witness. His signature line is identical to that of defendant

Young's. Thus, by signing the warrant application, defendant Bensey became liable for

violating the ECPA, whether or not he actively participated in the investigation leading

up to the drafting of the warrant.

9

## CONCLUSION

For the reasons stated herein and in his opening memorandum of law, Mr. Freedman's

motion for partial summary judgment and/or judgment on the pleadings should be granted.

THE PLAINTIFF
CLIFTON S. FREEDMAN

By: _____
Daniel J. Klau (ct17957)
H. James Pickerstein (ct05094)
Calvin K. Woo (ct24951)
Pepe & Hazard LLP
Goodwin Square
225 Asylum Street
Hartford, CT 06103-4302
Phone: (860) 522-5175
Fax: (860) 522-2796
dklau@pepehazard.com
hpickerstein@pepehazard.com
cwoo@pepehazard.com

Robert Y. Altchiler (ct24247)
The Law Offices of Robert Y. Altchiler
191 Post Road West
Westport, CT 06880

10

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been sent by first class mail, postage

prepaid, this 23 day of January, 2004 to the following:

David R. Schaefer, Esq.
Rowena A. Moffett, Esq.
Brenner, Saltzman & Wallman, LLP
271 Whitney Avenue
New Haven, CT 06507

Samir Jain
C. Colin Rushing
2445 M Street, N.W.
Washington, DC 20037

Thomas Murtha, Esq.
Mark Perkins, Esq.
Maher & Murtha, LLC
528 Clinton Avenue
P.O. Box 901
Bridgeport, CT 06601

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

CLIFTON S. FREEDMAN,         )
                                      )
       Plaintiff,            )
                                      )   C.A. No. 3:03CV1048 (PCD)
v.                                   )
                                      )
AMERICA ONLINE, INC., THE TOWN OF  )
FAIRFIELD,  DETECTIVE WILLIAM YOUNG )
AND DETECTIVE DAVID BENSEY      )
(Individually and in their official capacities as  )
police officers for the Town of Fairfield),    )
                                      )
       Defendants.       )

## AFFIDAVIT OF CLIFTON S. FREEDMAN

I, CLIFTON S. FREEDMAN, do hereby depose and state as follows:

      1.     I am over the age of eighteen years and understand and believe in the obligations of an oath.  I have personal knowledge of every statement made herein, and am fully competent to testify to the material stated.

      2.     This affidavit is prepared in support of the Motion for Partial Judgment on the Pleadings or, in the Alternative, for Partial Summary Judgment that is being submitted on my behalf.

      3.     I never gave my consent to America Online, Inc., or to any of its employees, to disclose my identity and/or any other subscriber information to the Town of Fairfield Police Department, or to any of its employees.

I declare under penalty of perjury that the forgoing is true and correct.

Executed on this ___21___ day of ___January___, 2004.

_____
Clifton S. Freedman