FILED

SEP 17  4 15 PM '04

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT CONN

CLIFTON S. FREEDMAN,       :
      Plaintiff,          :
                         :
V.                      :      **CIVIL ACTION**
                         :      **NO. 3:03 CV1048(PCD)**
AMERICA ONLINE, INC., ET AL   :
      Defendants.        :      **JUNE 15, 2004**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MOTION FOR PARTIAL SUMMARY JUDGMENT

**FACTS:**

Detective William Young (Hereinafter referred to as "Young.") is a Police Officer with the Fairfield Police Department. (Compl. ¶6.) With regard to the allegations contained in the Complaint, at all times Young was acting within his official capacity as a Detective with the Fairfield Police Department. Detective David Bensey (Hereinafter referred to as "Bensey.") is a police officer with the Fairfield Police Department. (Compl. ¶7.)

On March 31, 2003 the plaintiff sent an e-mail to Sandra Mulligan (Hereinafter referred to as "Mulligan.") and Dee Dee Brandt (Hereinafter referred to as "Brandt.") (Compl. ¶12.) The e-mail was sent under the America OnLine (Hereinafter referred to as

"AOL" screen name GoMaryGoAway@aol.com and stated "The End is Near.") (Compl. ¶ 12.) The e-mail did not identify the plaintiff as the originator of the e-mail. On March 31, 2003, Mulligan contacted the Fairfield Police Department and filed a complaint based upon the receipt of the subject e-mail. Young was assigned to investigate the complaints filed by Mulligan and Brandt. (Lyddy Aff. ¶24.)

On April 1, 2003, Young met with Mulligan and Brandt. Each woman signed an Internet/Computer Harassment Statement Form, indicating they had received a harassing and/or obscene electronic mail message on their computers. (Young Dep. at p.41) On April 1, 2003, Young contacted AOL's Law Enforcement Help-line regarding his investigation of Mulligan and Brandt's complaint. (Young Dep. at pp.42-43.) On April 1, 2003, Young completed Form JD-CR-61, an Affidavit and Application for Search and Seizure Warrant (Hereinafter referred to as the "Application."). The Application detailed the facts of his investigation as set-forth by Mulligan and Brandt. (Young Aff. ¶ 25.) On April 1, 2003, Bensey signed the Search and Seizure Application as a co-affiant. (Bensey Dep. at p.24.) Young did not submit the Application to the Connecticut State Attorney's office nor did he submit the Application to a judge. (Young Dep. at pp. 11-12.) On April 1, 2003, Young faxed a copy of the Application to AOL's Legal Department. (Young Dep. at. pp. 45-46.)

2

On April 7, 2003 Young received a seven-page fax from Jen Sheridan, a Fraud Investigator, with the Compliance and Investigations Department of AOL's Legal Department. (Young Dep. at p. 58.)  Upon reviewing the information received from America Online, Young advised Mulligan and Brandt that the e-mail had been sent by Clifton Freedman. (Young Dep. at pp. 64-67.)  Mulligan and Brandt requested Young advise Freedman not to send e-mails in a surreptitious manner.  On April 10, 2003, Young met with Freedman at his residence. (Young Dep. at p. 69-71.)  Freedman admitted to sending the e-mail, but stated he sent it as a harmless joke to his political colleagues. (Young Dep. at p. 70.)

On or about June 12, 2003, the plaintiff filed the instant action against Young, Bensey, the Town of Fairfield and AOL.  The defendant now moves this court for partial summary judgment.

**LAW:**

The party moving for summary judgment has the burden of establishing that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). See also <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 256 (1986).  In considering a Rule 56 motion, the court's responsibility is not to resolve disputed issues of fact but rather to assess whether there are, or are not, any factual issues

3

to be tried, while resolving all ambiguities and drawing all reasonable inferences against

the moving party. <u>See Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9, 11 (2d Cir. 1986) (citing

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "Only when reasonable

minds could not differ as to the import of the evidence is summary judgment proper."

<u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). If the

nonmoving party submits evidence which is "merely colorable", or is not "significantly

probative," summary judgment may be granted. <u>Anderson</u>, 477 U.S. at 249-50.

"[T]he mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no genuine issue of material fact.  As to materiality, the substantive law will

identify which facts are material.  Only disputes over facts that might affect the outcome

of the suit under the governing law will properly preclude the entry of summary

judgment.

**ARGUMENT:**

        **A. THE PLAINTIFF DID NOT HAVE A REASONABLE EXPECTATION**
           **OF PRIVACY IN HIS SUBSCRIBER INFORMATION, THEREFORE**
           **THE DEFENDANTS DID NOT VIOLATE HIS FOURTH**
           **AMENDMENT RIGHTS.**

The municipal defendants are entitled to summary judgment as to Count Four of the Complaint as the plaintiff did not have an objectively reasonable expectation of privacy in his subscriber information and therefore his Fourth Amendment rights were not violated. The Supreme Court has held that a warrant less search and seizure would violate the Fourth Amendment only if the aggrieved party manifested a subjective expectation of privacy in the information that society accepts as objectively reasonable. See <u>California v. Greenwood</u>, 486 U.S. 35, 39 (1987).     The Second Circuit has opined that: "The test to determine whether a person can claim Fourth Amendment protection in a given place depends upon whether the person has a legitimate subjective expectation of privacy in the area that society is prepared to accept as objectively reasonable." <u>U.S. v. Barrios-Moriera</u>, 872 F.2d 12, 14 (2nd Cir. 1989). In <u>U.S. v. Hambrick</u>, 55 F. Supp. 2d 504 (W.D. Va. 1999), the court concluded the defendant's Fourth Amendment rights had not been violated by the disclosure of his subscriber information to the police, because he did not have a reasonable expectation of privacy in the information. The <u>Hambrick</u> court opined: "To have a reasonable expectation of privacy under the Supreme Court's risk-analysis approach to the Fourth Amendment, two conditions must be met: (1) the data must not be knowingly exposed to others, and (2) the Internet service provider's ability to

5

access the data must not constitute a disclosure." <u>Id</u>. at 507.  The <u>Hambrick</u> court

concluded that:

> ...[W]hen Mr. Hambrick entered into an agreement to obtain Internet
> access from MindSpring, he knowingly revealed his name, address, credit
> card number, and telephone number to MindSpring and its employees.
> Mr. Hambrick also selected the screen name 'Blowuinva.' When the
> defendant selected his screen name it became tied to his true identity in all
> MindSpring records.  MindSpring employees had ready access to these
> records in the normal course of MindSpring's business, for example, in the
> keeping of its records for billing purposes, and nothing prevented
> MindSpring from revealing this information to nongovernmental actors.
> Also, there is nothing in the record to suggest that there was a restrictive
> agreement between the defendant and MindSpring that would limit the
> right of MindSpring to reveal the defendant's personal information to
> nongovernmental entities.  Where such dissemination of information to
> nongovernmental entities is not prohibited, there can be no reasonable
> expectation of privacy in that information.  <u>Id</u>. at 508-509.

As in <u>Hambrick</u>, the plaintiff has no objectively reasonable expectation of privacy

in his subscriber information.  The plaintiff became an AOL Subscriber on May 23, 2000.

(Davis Aff., ¶ 4.)  As a user of AOL's services the plaintiff was required to accept and

agree to the Member Agreement to utilize the service. (Davis Aff. ¶¶ 4-6.)  Furthermore,

the plaintiff was required to disclose basic information such as his name, address, phone

number and desired method of billing to AOL. (Davis Aff. ¶4.)  Additionally, the

plaintiff was required to select one or more screen names for his use, which became tied

to his true identity in AOL's records.  As in <u>Hambrick</u>, AOL employees had ready access to these records in the normal course of business.

Moreover, the statutory scheme of the ECPA does not support the conclusion that the society holds this information as private.  18 U.S.C. 2702(c) provides in relevant part that:

> A provider . . . may divulge a record or other information pertaining to a subscriber to or customer of such service . . .(4) to a governmental entity, if the provider reasonably believes that an emergency involving immediate danger of death or serious physical injury to any person justifies disclosure of the information; (5) to the National Center for Missing and Exploited Children, in connection with a report submitted thereto under section 227 of the Victims of Child Abuse Act of 1990 (42 U.S.C. 13032); **or (6) to any person other than a governmental entity.** (Emphasis added.)

The unambiguous language of this section of the statute makes it clear that a subscriber's information can be released to non-government entities, and to government entities under certain circumstances.   Thus evidencing the conclusion that there is no objective expectation of privacy in non-content subscriber information.

In the instant case, America Online's Member Agreement incorporates a Privacy Policy that placed the plaintiff on notice that subscriber information would be disclosed under certain circumstances. (See Davis Aff., see also AOL's responses to Defendants'

First Request For Production of Documents To America Online,) AOL's Privacy Policy

provides in relevant part:

> "AOL will not give out your telephone number or screen names (e-mail
> addresses), except where needed to deliver a product or service you
> ordered. . . .We have two exceptions to these policies: We will release
> specific information about your account only to comply with valid legal
> process such as a search warrant, subpoena or court order, or **in special
> cases such as a physical threat to you or others."** (Emphasis Added.)
> (See America Online's responses to Defendants' First Request For
> Production of Documents To America Online, pp. 1-2, 1998 Privacy
> Policy; pp.2-3, 2002 Privacy Policy.)

While the plaintiff may claim he had a subjective expectation of privacy in his

subscriber information, based upon the provisions of the ECPA and common law, as

discussed above, it is clear that his expectation of privacy in this information is one that

society does not recognize.  As the plaintiff had no objectively reasonable expectation of

privacy, the defendants cannot be found to have violated his Fourth Amendment rights

and therefore the defendants are entitled to summary judgment as a matter of law.

Alternatively, the plaintiff's claim that his Fourth Amendment rights were

violated is barred by the doctrine of qualified immunity.  As police officer acting within

the scope of their employment, the defendants are entitled to the protection of qualified

governmental immunity.  The Supreme Court in <u>Saucier v. Katz</u>, 533 U.S. 194 (2001),

stated that:

8

> [i]n a suit against an officer for an alleged violation of a constitutional
> right, the requisites of a qualified immunity defense must be considered in
> proper sequence. Where the defendant seeks qualified immunity, a ruling
> on that issue should be made early in the proceedings so that the costs and
> expenses of trial are avoided where the defense is dispositive." Id at 200;
> see also Schiff v. Kerrigan, 625 F. Supp. 704, 708 (D.Conn 1986)
> ("question of qualified immunity can readily be decided on summary
> judgment").

"On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1981).

In Smith v. City of New Haven, 166 F.Supp.2d 636 (2001), this Court granted the defendant's motion for summary judgment based upon qualified immunity. The Smith Court stated: "The defense of qualified immunity shields government agents from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 641, quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "If the controlling law is not clearly established, an official cannot be liable, because a reasonable person would not be expected to know how to structure his conduct to avoid liability." (Internal quotation marks and citations omitted.) Koch v. Town of Brattleboro, Vermont, 287 F. 3d 162, 166 (2nd Cir. 2002). The Smith court stated that:

9

In determining whether a particular right was clearly established at the time defendants acted, the Second Circuit has considered three factors: (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the [Second Circuit] support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant or official would have understood that his or her acts were unlawful. Id. at 641, citing Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991).

In Mozzochi v. Borden, 959 F.2d 1174 (2nd Cir. 1992) the Court opined with regard to whether a right was clearly established, that: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 1177.

In the instant case, the defendants' conduct did not violate a clearly established statutory or constitutional right and therefore qualified immunity would bar the plaintiff's claim.  The Hambrick court held there can be no reasonable expectation of privacy in subscriber information under the Supreme Court's risk-analysis approach to the Fourth Amendment.  Furthermore, as previously discussed, the ECPA specifically authorizes the disclosure of non-content subscriber information under certain circumstances.  Based upon relevant case law and the applicable statutes, the defendants cannot be held to have violated a clearly established constitutional right.  For these reasons the defendants are entitled to governmental immunity as to the plaintiff's claim that they violated his Fourth Amendment rights.

10

**B.    THE DEFENDANTS' CONDUCT IN SOLICITING AND OBTAINING THE PLAINTIFF'S IDENTITY DID NOT VIOLATE HIS FIRST AMENDMENT RIGHTS.**

The plaintiff's message to Brandt and Mulligan constituted a threat and therefore falls outside of the protections of the First Amendment.   The Fifth Count of the Complaint alleges Young and Bensey violated the plaintiff's First Amendment right to engage in anonymous and pseudonymous speech, by soliciting and obtaining the plaintiff's identity from America Online.    While the First Amendment protects anonymous speech, not all speech falls within its protection. The Second Circuit has held threatening communications are beyond First Amendment protection. Mozzochi v. Borden, 959 F.2d 1174, 1178 (2nd Cir. 1992). In U.S. v. Chatelain, 360 F.3d 114 (2d Cir. 2004) the Second Circuit opined that: "[t]hreats, whether explicit or implicit, are not protected speech." Id. at 125. In Doe v. Pulaski County Special School District, 306 F.3d 616 (8th Cir. 2002) the court opined:

> As a general matter, the First Amendment prohibits governmental actors from directing what persons may see, read, speak or hear.  Free speech protections do not extend, however, to certain categories or modes of expression, such as obscenity, defamation, and fighting words. The government is permitted to regulate speech that falls within these categories because the speech is of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. (Internal quotation marks and citations omitted.) Id at 622.

11

Citing <u>Watts v. United States</u>, 394 U.S. 705 (1969), the <u>Doe</u> Court went on to opine that:

> the States Supreme Court recognized that threats of violence also fall within the realm of speech that the government can proscribe without offending the First Amendment.  Although there may be some political or social value associated with threatening words in some circumstances, the government has an overriding interest in protecting individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur. (Internal quotation marks and citations omitted.) <u>Id</u> at 622.

In <u>U.S. v. Malik</u>, 16 F.3d 45 (2nd Cir. 1994), the Second Circuit while discussing

whether a writing violated 18 U.S.C. 876[1], the Court opined:

> Whether a given writing constitutes a threat is an issue of fact for the trial jury.  An absence of explicitly threatening language does not preclude the finding of a threat under section 876 . . . The test is an objective one- namely, whether an ordinary, reasonable recipient who is familiar with the context of the letter would interpret it as a threat of injury.  In making this determination, proof of the effect of the alleged threat upon the addressee is highly relevant. (Internal quotation marks and citations omitted.) <u>Id</u> at 49.

Furthermore, the Second Circuit has held that: "the individual's right to speech must

always be balanced against the state's interest in safety, and its right to regulate conduct

---

[1] 18 U.S.C. 876, Mailing threatening communications, provides in part: (c) Whoever knowingly so deposits or causes to be delivered as aforesaid, any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined under this title or imprisoned not more than five years, or both.

12

that it legitimately considers potentially dangerous." <u>Church of The Ku Klux Klan v.</u> <u>Kerik</u>, 356 F. 3d 197, 209 (2nd Cir. 2004).

In the instant case, the essence of the plaintiff's claim is that the defendants violated his First Amendment rights by investigating who sent the e-mail to Brandt and Mulligan. Brandt and Mulligan, separately, received an anonymous e-mail that read: "The End is Near." Both ladies filed complaints with the Fairfield Police Department, indicating they did not know who originated the message, expressing concern for their personal safety and requesting the police investigate the matter. The defendants have a compelling interest in protecting residents in the community they serve from what may arguably have been a death threat.

Young sent a request to America Online, that they provide him with non-content subscriber information for the person using the screen name <u>GoMaryGoAway@aol.com</u>. His intent in requesting the information was to identify the person that sent the e-mail, so that he could investigate whether a crime had been committed. Shortly after receiving the plaintiff's information from America Online, Young met with the plaintiff and advised him not to send such surreptitious messages. The plaintiff was neither arrested for his actions, nor was he told he could not send messages to the complainants.

13

While the Complaint alleges the plaintiff was using a political strategy that had been utilized in a prior campaign in Fairfield, these allegations do not negate the fact that the defendants, as police officers, had an obligation to investigate the complaints filed by Mulligan and Brandt. The plaintiff may argue the e-mail was protected political speech, however the defendants had to consider the e-mail a possible threat to Brandt and Mulligan as they expressed fear for their personal safety. As a potential threat, the e-mail would not have been protected speech, therefore the defendants investigation into the source of the threat did not violate the plaintiff's First Amendment rights.

Alternatively, the defendants would be immune from liability for their alleged violation of the plaintiff's First Amendment rights, under the doctrine of qualified governmental immunity. Police officers are entitled to qualified immunity when their conduct does not violate a clearly established constitutional right of which a reasonable person would have known. While it is well established that the First Amendment protects anonymous and pseudonym speech, it is also clear that threats are not protected speech under the First Amendment (See discussion above.). Furthermore, "there is no constitutional right to be free of investigation." (Internal quotation marks and citations omitted.) Sloan v. Department of Housing & Urban Development, 231 F.3d 10, 18 (D.C.2000). The defendants had a compelling interest in determining if the subject e-

14

mail was a threat to the personal safety of Brandt and Mulligan. The defendants are unable to find case law holding the police are prohibited from investigating a perceived threat, because the sender of the message choose to send it anonymously. If this Court finds the defendants violated the plaintiff's First Amendment rights by requesting the subscriber information for the individual that sent the anonymous e-mail to Brandt and Mulligan, this Court should also find the defendants are entitled to qualified immunity, because there is no bright-line established by statute or case law proscribing their investigation under the circumstances.

**C.    THE DEFENDANTS DID NOT VIOLATE THE PLAINTIFF RIGHTS UNDER ARTICLE FIRST, SECTION 4 OF THE CONNECTICUT STATE CONSTITUTION.**

Connecticut courts have held that not all speech is protected under Art. 1, § 4 of the Connecticut Constitution. Art. 1, § 4 of the Connecticut Constitution provides: "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty." In Cantwell v. Connecticut, 310 U.S. 296 (1939) the State Supreme Court opined that. "When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to the public safety, peace, or order, appears, the power of the State to prevent or punish is obvious." Id. at 308. In Mozzochi v. Borden, the Court held that prosecution, pursuant to

15

C.G.S. § 53a-183, of an individual who communicated a threat did not violate the First Amendment. The <u>Mozzochi</u> Court opined that: "A criminal prosecution solely in response to a threatening communication does not violate the First Amendment." Id. at 1178. C.G.S. §53a-183 provides in part that:

> (a) A person is guilty of harassment in the second degree when . . . (2) with intent to harass, annoy or alarm another person, he communicates with a person by telegraph or mail, by electronically transmitting a facsimile through connection with a telephone network, by computer network . . . or by any other form of written communication in a manner likely to cause annoyance or alarm . . . .

In the instant case, the defendants cannot be held to have violated the plaintiff's rights under Art. 1, § 4 of the Connecticut Constitution, as the plaintiff speech was not protected there under. The subject e-mail read, "The End is Near." Both Brandt and Mulligan signed affidavits indicating they felt harassed by the e-mail and stated concern for their physical safety. As discussed above the police have a compelling interest in protecting citizens from not only harassing communications, but from threats of physical harm. Connecticut's Legislature has recognized this fundamental public concern by passing C.G.S. §53a-183. While the plaintiff has pled that the message and his screen name were obvious allusions to a campaign used in the 2001 First Selectman race, the defendants cannot be charged with this knowledge, nor could it be expected that they

16

would not investigate a complaint made by two of the Town's residents based upon receipt of this e-mail. For the reasons set forth above, the defendants did not violate the plaintiff's state constitutional right to free speech and therefore they respectfully request this Court grant the instant motion for summary judgment as to Count Six of the Complaint.

Alternatively, the defendants request this Court enter summary judgment on the basis that the plaintiff's claim, as set forth in Count Six of the Complaint, is barred by the doctrine of qualified governmental immunity. Connecticut Courts recognize the common law doctrine of qualified immunity for the negligent acts of municipal employees conducting discretionary acts within the scope of their employment.

> [A] [municipal employee] is immune from liability for the performance of governmental acts as distinguished from ministerial acts. . . . Governmental acts are performed wholly for the direct benefit of the public and are supervisory in nature. . . . Ministerial acts are performed in a prescribed manner without the exercise of judgment or discretion. (Brackets omitted; citation omitted; internal quotation marks omitted.) Elliott v. Waterbury, 245 Conn. 385, 411 (1998).

Connecticut's Supreme Court held that: "[i]t is firmly established that the operation of a police department is a governmental function . . . and that acts or omissions in connection therewith ordinarily do not give rise to liability on the part of the municipality." Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 179-80 (1988).

17

Furthermore, Connecticut's courts have held that the decision to make an arrest or conduct and investigation of a crime are discretionary acts.  In <u>Peters v. Town of Greenwich</u>, 2001 Ct. Sup. 89 (Jan. 2, 2001, D'Andrea, J.) the court opined that:

> The Superior Court has consistently held that acts or omissions of police officers in the exercise of their duties are discretionary in nature. See <u>Gonzalez v. City of Bridgeport</u>, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 253464 (June 3, 1993, Fuller, J.) (holding that '[t]he investigation of crimes and decisions to make arrests for them is clearly a discretionary rather than a ministerial function.'); see also, <u>Shaham v. Wheeler</u>, Superior Court, judicial district of Danbury, Docket No. 321879 (March 12, 1998, Nadeau, J.); <u>Iulo v. City of Milford</u>, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 031055 (December21, 1990, Fuller, J.) (3 Conn. L. Rptr. 65)" Id. 93-94.

Connecticut's courts recognize three exceptions to governmental immunity for discretionary acts.  An individual cause of action may lie when: 1. A statute may specifically provide for a cause of action against an official or a municipality for failure to enforce a certain law; 2. The Complaint alleges an action involving malice, wantonness, or intent to injure rather than negligence, and; 3. It would be apparent to the public officer that his failure to act would be likely to subject an identifiable person to imminent harm. See <u>Shore v. Stonington</u>, 187 Conn. 147, 154-155 (1982).

In the instant case, the plaintiff has not pled nor can he prove that the defendants failed to enforce a certain statute.  While the plaintiff has pled that the defendants

18

violated the ECPA by soliciting his subscriber information from AOL, the Act does not establish a statutory or constitutional right to send an anonymous e-mail the subject of which could be interpreted to be a threat of physical harm. Moreover, while the Act sets forth the procedure by which an officer should obtain subscriber information from an ISP, it does not expressly or impliedly preclude an officer from investigating an anonymous e-mail that represents a possible threat of physical harm.

The second exception to common law governmental immunity is inapplicable in the instant case. The plaintiff has not pled nor can he offer evidence that the defendants acted with malice or wantonness in their investigation. There is not a scintilla of evidence indicating the defendants knew that the plaintiff was the individual that sent the e-mail when they began the investigation. In fact the plaintiff testified that Brandt and Mulligan did not know that he had sent the e-mail when they filed the complaint with the police. (Freedman Dep. at p.89, L19-25.) Moreover, Young did not know who the plaintiff was when he undertook his investigation into Brandt and Mulligan's complaints. (Young Dep. at p. 64.)

The plaintiff does not fall within the identifiable person subject to imminent harm exception. At the time Young sent the Search and Seizure Warrant Application to AOL he did not know the plaintiff had sent the subject e-mail. (Young Dep.at p. 64.) The

Connecticut Supreme Court has held that members of the general public are not identifiable persons. See <u>Shore v. Stonington</u>, 187 Conn. 147 (1982). In the instant case, when Young faxed the search and seizure warrant to AOL, the plaintiff was no more identifiable to the defendants then any other member of the general public. As the plaintiff was not an identifiable person the third exception to common law qualified governmental immunity would not apply. As the common law exceptions to governmental immunity do not apply and the defendants actions were discretionary in nature, this Court should grant the instant motion for summary judgment as to the Sixth Count of the Complaint based upon the doctrine of qualified immunity.

> **D.** **THE DEFENDANTS DID NOT VIOLATE THE PLAINTIFF RIGHTS UNDER ARTICLE FIRST, SECTION 7 OF THE CONNECTICUT STATE CONSTITUTION.**

The plaintiff did not have an objectively reasonable expectation of privacy in his subscriber information, therefore the defendants did not violate his rights under Article 1, § 7 of the Connecticut Constitution. Article 1, § 7 provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation.

20

Connecticut's Supreme Court has held with regard to alleged violation of Article 1, § 7 that in order for a party to demonstrate a reasonable expectation of privacy in a place or object, the party must demonstrate: "(1) he must have manifested a subjective expectation of privacy with respect to the [place or object]; and (2) that expectation must be one that society would consider reasonable." <u>State v. Bernier</u>, 246 Conn. 63, 70 (1998). In the instant case the plaintiff has expressed a subjective expectation of privacy in his subscriber information. (Compl. ¶ 46.) With regard to the second prong of the test, the <u>Bernier</u> Court opined that:

> The analysis focuses on whether Connecticut citizenry is prepared, because of its code of values and its notions of custom and civility, to give deference to a manifested expectation of privacy. . . The determination of what Connecticut citizens would consider reasonable in the present day is made on a case-by-case basis . . . and involves a fact-specific inquiry into all the relevant circumstances.

As discussed above, based upon statutory and common law it is clear that the plaintiff's subjective expectation of privacy in his subscriber information is one that society does not recognize. As the plaintiff had no objectively reasonable expectation of privacy in this information, the defendants cannot be found to have violated Article One, Section 7 of Connecticut's State Constitution. Therefore, the defendants are entitled to summary judgment as a matter of law.

21

**E.    THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO THE PLAINTIFF'S CLAIM THAT THEY INVADED HIS PRIVACY.**

The defendants are entitled to judgment as a matter of law as to Count Eight of the Complaint, which alleges Young and Bensey invaded the plaintiff's privacy by disclosing private information to the public through the Town of Fairfield Press and the general public.   Connecticut Courts recognize four types of invasion of privacy.   In Honan v. Dimyan, 52 Conn. App. 123, cert. denied, 249 Conn. 909 (1999), the Appellate Court stated:

> Our Supreme Court has described the four types of invasion of privacy:
> (1) appropriation, for the defendant's benefit or advantage, or the plaintiff's name or likeness; (2) intrusion upon the plaintiff's physical solitude or seclusion; (3) publicity, of a highly objectionable kind, given to private information about the plaintiff even though it is true and no action would lie in for defamation; and (4) publicity which places the plaintiff in a false light in the public eye. (Internal quotation marks and citations omitted.) Id. at 132.

The plaintiff claims that the defendants' unlawful acquisition of his subscriber information, including his alternative screen names and subsequent publication of this information in the police report, was an unreasonable and highly offensive invasion of his privacy.  The plaintiff testified that the Fairfield Police Department disclosed his private

information by including his name and screen names in the police report. (Freedman Dep. at 126-127.)

Based upon the allegations of the Complaint and the plaintiff testimony, one can conclude that the plaintiff is claiming a common law invasion of privacy based upon the publicizing of private information. In <u>Perkins v. Freedom of Information Commission</u>, 228 Conn. 158 (1993), the State Supreme Court opined that: "Section 652D of the Restatement (Second) of Torts defines a tort action for the invasion of personal privacy as being triggered by public disclosure of any matter that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." (Internal quotation marks omitted.) <u>Id</u> at 172.

In the instant case the plaintiff's screen names that were included in the police report were a matter of legitimate public concern. AOL provided Young with each of the plaintiff's screen names associated with his account, and the defendant included this information in his police report.[2] While this Court has ruled that the defendants did not adhere with the requirements of the ECPA in obtaining the plaintiff's subscriber information, it is clear from the commentary to the ECPA that the information provided

---

[2]The police report identified the following screen names as being associated with the plaintiff's AOL account: Clifmv(*), badbutgood55, amanandlife, knockingsoftly, alancapital, callinggently and GoMaryGoAway.