by AOL, and subsequently included in the police report, was in accord with the Act. The commentary to 18 U.S.C. 2703 provides in relevant part that:

> the USA PATRIOT ACT expanded the type of records that must be disclosed to the Government by the electronic communication service or remote computer service. The Act now specifies permissible Government access to the following information about a subscriber to or customer of such services: name; address; local and long distance telephone connection numbers, instrument numbers or other subscriber numbers or identities . . .The expanded list of available information, particularly credit cards and bank account numbers is designed to provide the Government with more options for quickly and accurately identifying computer users . .

This commentary reflects the public policy reasons for disclosing the alternative screen names of a subscriber. Specifically, government entities are authorized to obtain this information to assist them in quickly and accurately identifying computer users. Young included this information in his police report as part of his investigation into Brandt and Mulligan's complaint. As the ECPA recognizes the disclosure of subscriber information, including screen names, as important to a police or government investigation, this Court should conclude that the inclusion of the plaintiff's alternative screen names was of legitimate public concern and grant the defendants' motion for summary judgment as to Eighth Count of the Complaint.

## F. THE TOWN OF FAIRFIELD IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW, AS THERE IS NO GENUINE ISSUE OF MATERIAL FACT IN DISPUTE THAT THE FAIRFIELD POLICE DEPARTMENT TRAINED ITS OFFICERS ON THE PROPER METHODS OF EXECUTING A SEARCH AND SEIZURE WARRANT.

The defendant, Town, is entitled to summary judgment as to the allegations contained in the Ninth Count of the Complaint, as there is no genuine issue of material fact in dispute as to the fact that the Fairfield Police Department trained its officers on the proper procedure for executing a search and seizure warrant. Count Nine of the Complaint alleges in part that the Town failed to adequately train, supervise and or monitor Young and Bensey regarding the investigation of alleged criminal activity and the search and seizure of the private information of citizens. (Compl. ¶ 70(b).)

The Second Circuit recognizes a cause of action against a municipality for its failure to adequately train its employees. In <u>Jeffes v. Barnes</u>, 208 F.3d 49 (2nd Cir. 2000), the Second Circuit opined: "municipal liability may be premised on the municipality's failure to train its employees where that failure to train reflects deliberate indifference to . . . constitutional rights." (Internal quotation marks and citation omitted.) <u>Id</u>. at p. 61. The <u>Jeffes'</u> Court went on to opine that:

> To prove such deliberate indifference, the plaintiff must show that the
> need for more or better supervision to protect against constitutional

25

violations was obvious. . . deliberate indifference may be shown by evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that its employees were violating citizens' constitutional rights. (Internal quotation marks and citations omitted.) Id. at p. 62.

In the instant case the plaintiff cannot produce a scintilla of evidence that prior to the events alleged in the Complaint the Town or the Police Department failed to train Young and or Bensey regarding the proper procedures for investigating an alleged criminal activity and executing a search and seizure warrant. Moreover, there is no genuine issue of material fact in dispute that the Town and/or Police Department did not have prior notice that any of its police officers, let alone Young or Bensey, had violated anyone's civil right in the manner alleged in the Complaint. As an initial matter, both Young and Bensey attended and graduated from the Connecticut Police Academy. (Young Dep. at p. 88, Bensey Dep. at p. 8.) The Fairfield Police Department requires its officers to attend training courses to renew their certifications every three years in accordance with the State's requirements. (Lyddy Aff. ¶¶ 13-14.) (Bensey Dep. at p. 11.) As part of their re-certification training, both Young and Bensey have received training on investigative procedures and the procedures for preparing and executing a search and seizure warrant. Exhibit A and B attached to Lyddy's affidavit set forth the training Young and Bensey participated between 1981 and 2004. (Lyddy Aff. ¶¶17,21.)

26

Young and Bensey have been employed with the Fairfield Police Department for approximately twenty-four years, each. During their employment with the Fairfield Police Department they have never failed to complete their certification training. (Lyddy Aff. ¶16, 20.) Furthermore, Young testified that based upon his training and experience, he understood the procedure for obtaining a valid search and seizure warrant. (Young Dep. at pp. 8-13.) There is no genuine issue of material fact in dispute as to the fact that the Town and the Fairfield Police Department required its officers to participate in ongoing training to maintain their certification and that this training included the proper procedures for executing a search and seizure warrant.

Moreover, the within Complaint, alleging Young and Bensey obtained the plaintiff's subscriber information from AOL with an improperly executed search warrant, was the first and only complaint the Fairfield Police Department had received of its nature. (Lyddy Aff. ¶22.) The instant lawsuit is the first complaint that has been filed against Young. (Young Dep. at p.89) Prior to this lawsuit the Fairfield Police Department had never received a complaint that Bensey had attempted to serve a search and seizure warrant on an ISP that had not been signed by a judge. (Lyddy Aff. ¶19.) Based upon these indisputable facts there is no genuine issue of material fact that neither the Town nor the Police Department had prior notice of its citizen's rights being violated in the

manner described in the Complaint. For the reasons set forth above the defendant is entitled to summary judgment as to the Ninth Count of the Complaint.

### G. THE TOWN OF FAIRFIELD IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW, AS THERE IS NO GENUINE ISSUE OF MATERIAL FACT IN DISPUTE THAT AT ALL TIMES MENTIONED IN THE COMPLAINT THE FAIRFIELD POLICE DEPARTMENT DID NOT HAVE A POLICY THAT DIRECTED ITS OFFICERS TO SUBMIT SEARCH AND SEIZURE WARRANTS THAT WERE NOT SIGNED BY A JUDGE TO INTERNET SERVICE PROVIDERS.

The Second Circuit has held that a municipality cannot be held liable under a theory of *respondeat superior* in a case based upon 42 U.S.C. § 1983, unless the plaintiff can show that his injury was a result of a policy or custom of the municipality. In Nicholson v. Scoppetta, 344 F. 3d 154 (2nd Cir. 2003), the Appellate Court opined:

> There is no *respondeat superior* liability in a suit, such as this one, brought pursuant to 42 U.S.C. 1983. Before a municipal entity may be found liable, the plaintiffs must show that the municipality is actually responsible for their injuries, as through a policy of custom of the city. A policy or custom need not have received formal approval through the body's policy official decision-making channels. (Internal quotation marks and citations omitted.) Id. at 165.

However, the Second Circuit has also held that:

> Where the contention is not that the actions complained of were taken pursuant to a local policy that was formally adopted or ratified but rather that they were taken or caused by an official whose actions represent official policy, the court must determine whether that official had final policymaking authority in the particular area involved. . . . Only those

28

municipal officials who have final policymaking authority may by their actions subject the government to §1983 liability. (Internal quotation marks and citations omitted.) Jeffes v. Barnes, 208 F.3d 49, 57 (2nd Cir. 2000)

In the instant case, neither the Town nor the Fairfield Police Department had a policy or custom, at the time of this incident, adopted by a person with final policymaking authority for the Town or Police Department, which directed an officer investigating a suspected internet crime to submit a search and seizure warrant, seeking non-content subscriber information, to an ISP that had not been signed by a judge. Young testified that prior to April 1, 2003, it was his practice to submit the search and seizure warrant application to a local judge for signature before submitting it to an ISP. (Young Dep. p. 20-21.) Young further testified that he presented the search and seizure warrant application to his supervisor, Sergeant Gene Palazzolo (Hereinafter referred to as "Palazzolo.") for review, and that he understood Palazzolo to believe he no longer had to submit the application to a judge for signature when non-content information was being sought, but that the application could be sent directly to the ISP. (Young Dep. 12, 16.) Palazzolo testified that, at all times mentioned in the Complaint, it was his understanding that the procedure for obtaining non-content subscriber information from AOL, was to send a search and seizure warrant application that had not been signed by a local judge to

29

the Loudoun County Sheriff's office and they would transcribe the application onto a local warrant to be signed by a local judge. (Palazzolo Dep. at pp. 27-29.) While there may have been a miscommunication between Palazzolo and Young, it is clear that prior to this event the Fairfield Police Department did not have a policy instructing its officers to submit unsigned search and seizure warrants to ISPs.

At all times mentioned in the Complaint, the Fairfield Police Department did not have a policy of submitting unsigned search and seizure warrant applications to ISPs when seeking to obtain non-content, subscriber information. (Lyddy Aff. ¶ 23.) Dyer Dep. at pp. 21-22.) As there is no genuine issue of material fact in dispute as to the fact that the defendant did not have a policy or custom of submitting search and seizure warrants to ISP that had not been signed by a judge, the defendant is entitled to summary judgment as a matter of law.

*Arguendo*, the plaintiff should argue that the Town is liable for damages under the common law theory of respondeat superior, Connecticut Court's have held that municipalities enjoy governmental immunity from suit for tortious injuries unless statutory law removes that protection. See Williams v. New Haven, 243 Conn. 763 (1998). In Hankard v. Town of Avon, 1999 Ct. Sup. 7911 (Hale, June 22, 1999), the court opined:

> [The Town] may not be held vicariously liable for the alleged torts of its employees, the individual defendants, under the common law doctrine of respondeat superior. At common law, municipal officers were liable for their own torts, but the municipality, their municipal `master,' was not vicariously liable for those torts. While it is clear that a municipality enjoys the protection of governmental immunity for common law vicarious liability, the Supreme Court has recognized that governmental immunity may be abrogated by statute. (Internal quotation marks and citations omitted.) Id. at 7930.

In the instant case the Eleventh Count of the Complaint fails to plead a statute abrogating the defendants' governmental immunity and therefore the plaintiff is not entitled to recover under this theory. *Arguendo,* the plaintiff claims that the Town would be liable for the acts of Young and Bensey under C.G.S. § 52-557n, this cause of action would also fail as the Town is entitled to statutory governmental immunity pursuant to C.G.S. § 52-557n(a)(2)(B). C.G.S. § 52-557n provides in relevant part:

> (a)(1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or willful misconduct; or **(B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.** (Emphasis added.)

31

As discussed above, Connecticut's Supreme Court has held that: "[i]t is firmly established that the operation of a police department is a governmental function . . . and that acts or omissions in connection therewith ordinarily do not give rise to liability on the part of the municipality." Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 179-80 (1988). Furthermore, Connecticut's courts have held that the decision to make an arrest or conduct and investigation of a crime are discretionary acts. (See discussion above.) As the actions of Young and Bensey were discretionary in nature, the Town is protected from liability under the statutory immunity provided by C.G.S. §52-557n(a)(2)(B). Additionally, the common law exceptions for governmental immunity would be inapplicable, as they have not been incorporated into the statute by Connecticut's Legislature. In Sammartino v. Turn, 2003 Ct. Sup. 2879 (Feb. 28, 2003, Scholl, J.), the court opined that:

> A municipality itself was generally immune from liability for its tortious acts at common law . . . Governmental immunity may, however, be abrogated by statute. The state legislature possesses the authority to abrogate any governmental immunity that the common law gives to municipalities. The general rule developed in the case law is that a municipality is immune from liability unless the legislature has enacted a statute abrogating that immunity. Statutes that abrogate or modify governmental immunity are to be strictly construed . . . This rule of construction stems from the basic principle that when a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of

construction . . . The court is to go no faster and no further than the legislature has gone . . . A legislative intention not expressed in some appropriate manner has no legal existence. The legislature . . . has set forth general principles of municipal liability and immunity in General Statutes § 52-557n. (Internal quotation marks and citations omitted.) Id at 2880-2881.

For the reasons set forth above this Court should grant the defendant's Motion for Summary Judgment as to Count Eleven of the Complaint.

        Respectfully submitted,
        DEFENDANTS:
        TOWN OF FAIRFIELD,
        DETECTIVE WILLIAM YOUNG,
        DETECTIVE DAVID BENSEY

        By: _____
        Mark A. Perkins (ct22419)
        Maher and Murtha, LLC
        528 Clinton Avenue
        P.O. Box 901
        Bridgeport, CT  06601
        Telephone: (203) 367-2700
        Facsimile:  (203) 335-0589