UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLIFTON S. FREEDMAN, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 3:03CV1048 (PCD) |
| v. | ) |
| | ) |
| THE TOWN OF FAIRFIELD, | ) |
| DETECTIVE WILLIAM YOUNG AND | ) |
| DETECTIVE DAVID BENSEY | ) |
| (Individually and in their official capacities | ) AUGUST 25, 2005 |
| as police officers for the Town of Fairfield,) | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' SECTION C TRIAL
## PREPARATION ORDER COMPLIANCE

### I.     ATTORNEYS FOR THE DEFENDANT

>    Thomas M. Murtha, Esq. (ct05522)
>    Maher & Murtha, LLC
>    528 Clinton Avenue
>    Bridgeport, CT. 06605.
>    Telephone number: (203) 367-2700

>    Walter A. Shalvoy, Jr., Esq. (ct25132)
>    Maher & Murtha, LLC
>    528 Clinton Avenue
>    Bridgeport, CT. 06605
>    Telephone number: (203) 367-2700.

### II.    CLAIM FOR JURY

This matter has been claimed for the jury.  A realistic estimate of trial time required to present the Defendants' case would be 2 to 3 days.

### III.   TRIAL BY MAGISTRATE JUDGE

The Defendants agree to have the case tried by United States Magistrate Judge Joan G. Margolis, and thereupon enter final judgment.

### IV.    PROCEEDINGS REQUIRED PRIOR TO TRIAL

Proceedings required prior to trial involve the certification of a question of law to the Connecticut Supreme Court on whether the Plaintiff had a reasonable expectation of privacy. Specifically, the Court certified the following question to the Connecticut Supreme Court:

1

"Would society consider reasonable an individual's expectation of privacy in internet subscriber information and, thus, subject to the protection against unreasonable searches and seizures under article first, § 7 of the constitution of Connecticut?"

## V.    SETTLEMENT

With the assistance of a settlement, settlement is a distinct possibility.

## VI.    CLAIMS OF UNDISPUTED FACT PROPOSED FOR STIPULATION

6.1.    Defendant Town of Fairfield ("Fairfield") is a municipality as defined in Title 7 of the Connecticut General Statutes in the County of Fairfield, State of Connecticut.

6.2.    Defendant Detective William Young is an individual whose principal place of employment is the Fairfield Police Department, located at 100 Reef Road, Fairfield, CT 06824. At all times relevant to the complaint, Young was a Fairfield police officer, holding the position of Detective, and was acting in his official capacity in the performance of his duties within the scope of his employment as a police officer of the Town of Fairfield.

6.3.    Defendant Detective David Bensey is an individual whose principal place of employment is the Fairfield Police Department, located at 100 Reef Road, Fairfield, CT 06824. At all times relevant to the Plaintiff's Complaint, Bensey was a police officer for the Town of Fairfield, holding the position of Detective, and was acting in his official capacity in the performance of his duties within the scope of his employment as a police officer of the Town of Fairfield.

6.4.    America Online ("AOL") is an Internet Service Provider that provides "electronic communication services" to its subscribers as defined under 18 U.S.C. § 2701 et. seq.

6.5.    At all times relevant to the Plaintiff's Complaint, Mary Carroll-Mirylees was a Fairfield Police Commissioner.

6.6.    In September 2001, Mary Carroll-Mirylees ran against incumbent John Metsopoulos in the 2001 Republican primary for the position of First Selectman in Fairfield.

She lost the primary election.

6.7.    Ms. Carroll-Mirylees' campaign included the phrase "Run Mary Run."

6.8.    The "Run Mary Run" campaign phrase was set forth on bumper stickers that were circulated during the summer of 2001.

6.9.    During the 2001 general election, the "Go John Go Away" campaign included the widespread circulation of bumper stickers and other political paraphernalia bearing the political slogans "Go John Go Away, Your Days Are Numbered" and "Anybody But John." On at least one occasion, an airplane flew over Fairfield trailing a banner that said "Go John Go Away." In addition, a Fairfield firefighter created a website called "anybodybutjohn.com." The "Go John Go Away" campaign was also publicized in local newspapers including the *Fairfield Citizen* and the *Bridgeport Post.*

6.10.    Ms. Carroll-Mirylees was fully aware of the "Go John Go Away" campaign.

6.11.    Ms. Brandt was fully aware of the "Go John Go Away" campaign.

6.12.    Ms. Mulligan was fully aware of the "Go John Go Away" campaign.

6.13.    Ms. Carroll-Mirylees decided to run for First Selectman again in 2003 for the Republican Party.

6.14.    Mr. Freedman was an active member of the Fairfield Republican Party and a member of the Fairfield Republican Town Committee from spring of 1993 to July of 2003. Mr. Freedman was also a supporter of incumbent John Metsopoulous.

6.15.    On or about March 31, 2003, Mr. Freedman sent a threatening e-mail message from his America Online account to Sandra Mulligan and DeeDee Brandt under the screen name GoMaryGoAway@aol.com threatening them by typing "The End is Near."

6.16.    This e-mail message received by the above parties was perceived as threatening and as a form of harassment.

6.17.    Mr. Freedman did not have any basis for his expectation that his identity would be kept private; he had no reasonable expectation of privacy in the information.

6.18.    Ms. Carroll-Mirylees learned of the e-mail from either Ms. Brandt or Ms. Mulligan, who called her shortly after receiving it.

6.19.    Ms. Carroll-Mirylees has been a member of the Fairfield Police Commission in various capacities since December 2001.

6.20.    On or about April 1, 2003, Ms. Mulligan and Ms. Brandt filed a case/incident report and Internet/Computer Harassment Statement Forms with the Fairfield Police Department regarding the e-mail.

6.21.    Ms. Mulligan admitted the similarities of the phrases "Go John Go Away" and "GoMaryGoAway" to Detective Young.

6.22.    The Defendants and their superiors in the Fairfield Police Department were required to investigate the nature of the message, and appropriately treated the message from the anonymous sender as a threat.

6.23.    The Defendants and their superiors in the Fairfield Police Department suspected that the message may have been sent by any number of individuals.

6.24.    On April 1, 2003, Defendant William Young was assigned to the case by Sergeant Palazzolo, and he interviewed Ms. Mulligan and Ms. Brandt about Mr. Freedman's e-mail.  Detective Young met with both women at their homes, where they signed internet harassment forms.

6.25.    Detective Young acted properly in taking the e-mail message seriously, and had reason to believe that Ms. Mulligan and Ms. Brandt were, in fact, threatened by the message.

6.26.    On April 1, 2003, Detective Young filled out a search warrant application to send to AOL.

6.27.    The warrant application specifically requested "subscriber information in the form of records, detailed billing information, screen names, applications for service, and date service provided pertaining to screen name "GoMaryGoAway".

6.28.    Mr. Freedman's sending of the e-mail message, "The End is Near", very well could have been construed to constitute "Harassment in Second Degree in violation of Connecticut General Statute § 53a-183, as alleged in the warrant application.

6.29.    The entire contents of AOL's facsimile response is Plaintiff's Proposed Exhibit 23, which is listed *infra.*

6.30.    Detective Young asked his colleague, Detective David Bensey, to sign the warrant application as a co-affiant and Detective Bensey signed it.

6.31.    Detective Bensey did not have personal knowledge of any of the facts set forth in the affidavit that he signed under oath. Instead, he relied upon Detective Young's representations.

6.32.    Detective Young then faxed the warrant application to AOL without ever submitting it to a judge for approval.

6.33.    Detective Young's conduct in faxing the warrant application to AOL without first submitting it to a judge represented a departure from his past practice.

6.34.    Prior to April 1, 2003, Detective Young had always used judicially approved search warrants to obtain information from Internet Service Providers.

6.35.    The faxing of the unsigned search warrant to AOL on April 1, 2003 was the first time that Detective Young had ever used a search warrant to obtain information from any entity without first submitting the warrant to a judge.

6.36.    Prior to April 1, 2003, Detective Young had never heard of anyone in the Fairfield Police Department using an unsigned search warrant to obtain information from any entity.

6.37.    Prior to April 1, 2003, the department policy for obtaining information from an Internet Service Provider required use of a judicially approved warrant.

6.38.    Detective Young presented the warrant application to his supervisor, Sergeant Palazzolo, prior to sending it to AOL.

6.39.    Upon receipt of the requested information from America Online, Detective Young entered the pertinent information into the police report.

6.40.    The Defendants' conduct in sending the search warrant application to AOL was undertaken in good faith pursuant to the report of an anonymous threat received electronically by Ms. Mulligan and Ms. Brandt.

## VII.    CLAIMS OF DISPUTED FACTS

7.1    The e-mail message sent by Mr. Freedman under the screen name GoMaryGoAway@aol.com with the message "The End is Near" was perceived as threatening and as a form of harassment by Ms. Mulligan and Ms. Brandt. Plaintiff's counsel has represented that the anonymous message was intended as "political satire". This will be the subject of countering evidence, which will be the testimony of Ms. Mulligan and Ms. Brandt either on direct or cross examination.

7.2.    That when Mr. Freedman sent the e-mail message, he did not have any reasonable expectation of privacy in his identity under his Fourth Amendment rights. Countering evidence will include the decision of Honorable Judge Peter C. Dorsey in granting Partial Summary Judgment, dated August 9, 2005, pages 5 through 9.

7.3.    Ms. Carroll-Miryless has served on the Fairfield Police Commission in various capacities since December 2001. The countering evidence will be the testimony of Ms. Carroll-Miryless either on direct or cross examination.

7.4    The Defendants and their superiors in the Fairfield Police Department were required to investigate the nature of the e-mail message, as Ms. Mulligan and Ms. Brandt were threatened by the anonymous message. This will be countered by the testimony of Detective Young, along with the testimony of Ms. Mulligan and Ms. Brandt, either on direct or cross examination.

7.5.    The Defendants and their superiors of the Fairfield Police Department thought that the message may have been sent by any number of individuals, including but

not limited to members of the Fairfield Fire Department. This will be countered by testimony of Detective Young.

  7.6  Detective Young viewed the anonymous e-mail message as disturbing to the two women who filed the complaint, and conducted an appropriate investigation. This will be countered by testimony of Detective Young.

  7.7.  On April 7, 2003, upon receipt of information faxed to him by AOL, Detective Young did not publicly disclose the information, but merely included the information in the police report. This will be countered by testimony of Detective Young.

  7.8.  The Defendants' conduct in sending the search warrant to AOL was pursuant to a good faith criminal investigation based on the nature of the threat, and at no time based upon a desire to perform a favor for Ms. Carroll-Miryless, nor to embarrass any member of the Fairfield Fire Department. This will be countered by the testimony of Detective Young.

## VII. AGREED AND DISAGREED FINDINGS OF FACT

  8.1.  In September 2001, Mary Carroll-Mirylees ran against incumbent John Metsopoulos in the 2001 Republican primary for the position of First Selectman in Fairfield. She lost the primary election.

Evidence:  Testimony of Clifton S. Freedman
      Testimony of Jamie Millington

  8.2.  Ms. Carroll-Mirylees' campaign included the phrase "Run Mary Run".

Evidence:  Testimony of Clifton S. Freedman
      Copies of web pages from "www.runmaryrun.com" website.
      Copy of brochure of Mary Carroll-Mirylees for First Selectman
      Testimony of Jamie Millington

  8.3.  The "Run Mary Run" campaign phrase was set forth on bumper stickers that were circulated during the summer of 2001.

Evidence:  Testimony of Clifton S. Freedman
      Testimony of Jamie Millington

8.4.    After losing the primary, Ms. Carroll-Mirylees and her political supporters supported local Democratic party efforts to elect Ken Flatto (a Democrat) instead of Mr. Metsopoulos, during the general election for First Selectman in November 2001.

Evidence:    Testimony of Clifton S. Freedman
             Testimony of Jamie Millington

8.5.    Ms. Carroll-Mirylees' campaign supporters included her campaign managers, DeeDee Brandt and Sandy Mulligan.

Evidence:    Testimony of Mary Carroll-Mirylees
             Testimony of DeeDee Brandt
             Testimony of Sandy Mulligan
             Testimony of Clifton S. Freedman
             Testimony of Jamie Millington

8.6.    During the 2001 general election, the "Go John Go Away" campaign included the widespread circulation of bumper stickers and other political paraphernalia bearing the political slogans "Go John Go Away, Your Days Are Numbered" and "Anybody But John." On at least one occasion, an airplane flew over Fairfield trailing a banner that said "Go John Go Away." In addition, a Fairfield firefighter created a website called "anybodybutjohn.com." The "Go John Go Away" campaign was also publicized in local newspapers including the *Fairfield Citizen* and the *Bridgeport Post.*

Evidence:    Testimony of Clifton S. Freedman
             Testimony of Jamie Millington
             Testimony of Sergeant Eugene Palazzolo
             Testimony of Lieutenant Christopher Liddy
             Testimony of Captain Paul Dyer
             Testimony of Chief of Police Joseph Sambrook
             Copies of WebPages from "anybodybutjohn.com" website

8.7.    Ms. Carroll-Mirylees was fully aware of the "Go John Go Away" campaign.

Evidence:    Testimony of Mary Carroll-Mirylees
             Testimony of DeeDee Brandt
             Testimony of Sandy Mulligan

9

8.8.     Ms. Brandt was fully aware of the "Go John Go Away" campaign.

Evidence:          Testimony of DeeDee Brandt
                   Testimony of Mary Carroll-Mirylees
                   Testimony of Sandy Mulligan

8.9.     Ms. Mulligan was fully aware of the "Go John Go Away" campaign.

Evidence:          Testimony of Detective William Young
                   Testimony of Sandy Mulligan
                   Testimony of DeeDee Brandt
                   Testimony of Mary Carroll-Mirylees

8.10.    Members of the Fairfield Police Department, including Chief of Police
Joseph Sambrook, Captain Paul Dyer, Lieutenant Christopher Lyddy, and Sergeant Eugene
Palazzolo, were fully aware of the "Go John Go Away" campaign.

Evidence:          Testimony of Sergeant Eugene Palazzolo
                   Testimony of Captain Paul Dyer
                   Testimony of Chief of Police Joseph Sambrook
                   Testimony of Lieutenant Christopher Lyddy

8.11.    Notwithstanding the divisive effect that the actions of Ms. Carroll-Mirylees
and her supporters had on the Fairfield Republican Party during the 2001 election, Ms.
Carroll-Mirylees decided to run for First Selectman again in 2003 for the Republican Party.

Evidence:          Testimony of Clifton S. Freedman
                   Testimony of Mary Carroll-Mirylees
                   Testimony of DeeDee Brandt
                   Testimony of Sandy Mulligan
                   Testimony of Jamie Millington

8.12.    Mr. Freedman was an active member of the Fairfield Republican Party and a
member of the Fairfield Republican Town Committee from spring of 1993 to July of 2003.
Mr. Freedman was also a supporter of incumbent John Metsopoulous.

Evidence:          Testimony of Clifton S. Freedman

Testimony of Jamie Millington

     8.13.    On or about March 31, 2003, Mr. Freedman sent an e-mail, from his America Online account, to eighteen (18) members of the Fairfield Republican Party under the screen name <u>GoMaryGoAway@aol.com</u> with the message "The End is Near."

<u>Evidence</u>:        Testimony of Clifton S. Freedman
               E-mail  sent under the AOL screen name <u>GoMaryGoAway@aol.com</u>, dated
                   March 31, 2003
               Copy of printout of Clifton S. Freedman's AOL account activity

     8.14.    This e-mail was intended as, and was in fact, a political satire of the "Go John Go Away" campaign.

<u>Evidence</u>:        Testimony of Clifton S. Freedman
               E-mail  sent under the AOL screen name <u>GoMaryGoAway©aol.com</u>, dated
                   March 31, 2003
               Copy of printout of Clifton S. Freedman's AOL account activity

**DISAGREE:    The recipients of this message, Ms. Mulligan and Ms. Brandt, were threatened and harassed by the anonymous message, and were unclear what the anonymous sender's intentions were.**

**<u>Evidence</u>:        Testimony of Sandra Mulligan**
**               Testimony of DeeDee Brandt**

     8.15.    When Mr. Freedman sent the e-mail he had an actual and reasonable expectation that his identity would be kept private.

<u>Evidence</u>:        Testimony of Clifton S. Freedman
               AOL Privacy Policy

**DISAGREE:    When Mr. Freedman sent the e-mail, he did not have a reasonable expectation of privacy in the information he alleges violated his Fourth Amendment rights.**

**<u>Evidence</u>:        <u>U.S. v. Hambrick</u>, 55 F.Supp. 2d 504 (W.D. Va. 1999)**
**               Davis Affidavit, Paragraphs 4-6**

**Ruling on Defendants' Motion for Partial Summary Judgment dated August 9, 2005 (Dorsey, J.), Pages 5-9**

    8.16.   Ms. Carroll-Mirylees learned of the e-mail from either Ms. Brandt or Ms. Mulligan, who called her shortly after receiving it.

Evidence:        Testimony of Mary Carroll-Mirylees
                    Testimony of DeeDee Brandt
                    Testimony of Sandy Mulligan

    8.17.   Ms. Carroll-Mirylees then called Chief of Police Sambrook about the e-mail.

Evidence:        Testimony of Chief of Police Joseph Sambrook
                    Testimony of Mary Carroll-Mirylees

    8.18.   Ms. Carroll-Mirylees has been a Fairfield Police Commissioner since December 2001.

Evidence:        Testimony of Mary Carroll-Mirylees
                    Testimony of Chief of Police Joseph Sambrook

**DISAGREE: Ms. Carroll-Mirylees has been a member of the Fairfield Police Commission in various capacities since December, 2001.**

    8.19.   On or about April 1, 2003, Ms. Mulligan and Ms. Brandt filed a case/incident report and Internet/Computer Harassment Statement Forms with the Fairfield Police Department regarding the e-mail.

Evidence:        Fairfield Police Department Case/Incident Report dated April 1, 2003
                    Fairfield Police Department Internet/Computer Harassment Form of Sandra
                        Mulligan, dated April 1, 2003
                    Fairfield Police Department Internet/Computer Harassment Form of DeeDee
                        Brandt, dated April 1. 2003
                    Testimony of Detective William Young

8.20.    Ms. Mulligan admitted the similarities of the phrases "Go John Go Away" and "GoMaryGoAway" to Detective Young.

<u>Evidence</u>:        Testimony of Detective William Young

8.21.    The Defendants and their superiors in the Fairfield Police Department knew the e-mail was political satire, not a threat:

<u>Evidence</u>:        Testimony of Captain Paul Dyer
                Testimony of Chief of Police Joseph Sambrook
                Testimony of Lieutenant Christopher Lyddy
                Testimony of Sergeant Eugene Palazzolo
                Testimony of Detective William Young
                Testimony of Detective David Bensey

**DISAGREE:    The Defendants and their superiors in the Fairfield Police Department were required to investigate the nature of the message, and appropriately treated the message from the anonymous sender as a threat.**

8.22.    The Fairfield Police Department believed that the e-mail was sent by a Fairfield firefighter.

<u>Evidence</u>:        Testimony of Captain Paul Dyer
                Testimony of Chief of Police Joseph Sambrook
                Testimony of Lieutenant Christopher Lyddy
                Testimony of Sergeant Eugene Palazzolo
                Testimony of Detective William Young
                Testimony of Detective David Bensey

**DISAGREE:    The Defendants and their superiors in the Fairfield Police Department were required to investigate the nature of the message, and appropriately treated the message from the anonymous sender as a threat.**

8.23.    On April 1, 2003, Defendant William Young was assigned by Sergeant Palazzolo to the case and interviewed Ms. Mulligan and Ms. Brandt about Mr. Freedman's e-mail. Detective Young met with both women at their homes, where they signed internet harassment forms.

<u>Evidence:</u>      Testimony of Detective William Young
             Fairfield Police Department Internet/Computer Harassment Form of Sandra
                  Mulligan dated April 1, 2003
             Fairfield Police Department Internet/Computer Harassment Form of DeeDee
                  Brandt dated April 1, 2003
             Fairfield Department Case/Incident Report, dated April 1, 2003
             Testimony of Sandy Mulligan
             Testimony of DeeDee Brandt


        8.24.    Detective Young never viewed the e-mail as a threat to kill or to physically
injure anyone.

<u>Evidence:</u>      Testimony of Detective William Young

**DISAGREE:    The Defendants, Detective Young and Detective Bensey, acted properly
in treating the contents of this e-mail message as a possible threat, and investigated
accordingly.**


        8.25.    Lieutenant Lyddy did not feel that Mr. Freedman's sending of the e-mail
constituted "Harassment in the Second Degree, CGS 53a-183" as set forth in the warrant
application.

<u>Evidence:</u>      Testimony of Lieutenant Christopher Lyddy

**DISAGREE:    The Defendants, Detective Young and Detective Bensey, acted properly
in treating the contents of this e-mail message as a possible threat, and investigated
accordingly.**


        8.26.    On April 1, 2003, Detective Young completed a warrant application to send
to AOL.

<u>Evidence:</u>      Testimony of Detective William Young
             Multi-page facsimile from Fairfield Police Department to AOL dated April
                  1, 2003


        8.27.    The warrant application specifically requested "subscriber information in the
form of records, detailed billing information, screen names, applications for service, and date
service provided pertaining to screen name "GoMaryGoAway".

14

Evidence:     Testimony of Detective William Young
              Multi-page facsimile from Fairfield Police Department to AOL dated April
                  1, 2003

        8.28.   Detective Young asked his colleague, Detective David Bensey, to sign the
warrant application as a co-affiant and Detective Bensey signed it.

Evidence:     Testimony of Detective William Young
              Testimony of Detective David Bensey

        8.29.   Detective Young then faxed the warrant application to AOL without ever
submitting it to a state's attorney or to a judge for approval.

Evidence:     Testimony of Detective William Young
              Multi-page facsimile from Fairfield Police Department to AOL dated April
                  1, 2003

        8.30.   Detective Young's conduct in faxing the warrant application to AOL without
first submitting it to a judge represented a significant departure from his past practice.

Evidence:     Testimony of Detective William Young

        8.31.   Prior to April 1, 2003, Detective Young had always used judicially approved
search warrants to obtain information from an Internet Service Provider.

Evidence:     Testimony of Detective William Young

        8.32.   The faxing of the search warrant to AOL on April 1, 2003 was the first time
that Detective Young had ever used a search warrant to obtain information from any entity
without obtaining judicial approval of the warrant.

Evidence:        Testimony of Detective William Young

        8.33.    Prior to April 1, 2003, Detective Young had never heard of anyone in the Fairfield Police Department using a completed unsigned search warrant to obtain information from any entity.

Evidence:        Testimony of Detective William Young

        8.34.    Prior to April 1, 2003, the department policy for obtaining information from an Internet Service Provider required use of a judicially approved search warrant.

Evidence:        Fairfield Police Department Detective Division document setting forth the
                procedures for obtaining information from America Online,
                prepared by "Bill Young #137" and signed by Lieutenant
                Christopher Lyddy ("Fairfield Police Department Document")
                Testimony of Chief of Police Joseph Sambrook
                Testimony of Captain Paul Dyer
                Testimony of Detective William Young

        8.35.    Detective Young presented the warrant application to his supervisor, Sergeant Palazzolo prior to sending it to AOL.

Evidence:        Testimony of Detective William Young
                Testimony of Sergeant Eugene Palazzolo

        8.36.    On April 7, 2003, AOL responded by faxing the requested information to the Fairfield Police Department. The Defendants then publicly disclosed Mr. Freedman's subscriber information.

Evidence:        Testimony of Detective William Young
                Testimony of Sergeant Eugene Palazzolo
                Testimony of Lieutenant Christopher Lyddy
                Testimony of Captain Paul Dyer

Testimony of Chief of Police Joseph Sambrook
Multi-page facsimile from AOL to Fairfield Police Department dated April 7, 2003
Multi-page facsimile from Fairfield Police Department to AOL dated April 1, 2003

**DISAGREE:  Upon receipt of the requested information from America Online, Detective Young entered the pertinent information into the police report.**

     8.37.  The Defendants' conduct constituted an intentional invasion of Mr. Freedman's privacy.

Evidence:    This is a reasonable inference that the fact-finder can draw from all of the evidence.

**DISAGREE:  The Defendants never intended, and in fact did not, intentionally invade the personal privacy of the Plaintiff, Mr. Freedman.**

     8.38.  The Defendants' failure to obtain a judicial signature on the warrant was willful and intentional.

Evidence:    Testimony of Clifton S. Freedman
Testimony of Mary Carroll-Mirylees
Testimony of DeeDee Brandt
Testimony of Sandy Mulligan
Testimony of Jamie Millington
Testimony of Detective William Young
Testimony of Sergeant Eugene Palazzolo
Testimony of Lieutenant Christopher Lyddy
Testimony of Captain Paul Dyer
Testimony of Chief of Police Joseph Sambrook
Multi-page facsimile from AOL to Fairfield Police Department dated April 7, 2003
Multi-page facsimile from Fairfield Police Department to AOL dated April 1, 2003

**DISAGREE:  The Defendants' failure to obtain a judicial signature on the warrant was due to a lack of communication on the part of the Fairfield Police Department and America Online.**

     8.39.  The conduct of the Fairfield Police Department of sending the search warrant

17

application to AOL without a judicial signature was not undertaken pursuant to a good faith criminal investigation. Instead, the conduct was undertaken in bad faith for the purpose of doing a favor for Ms. Carroll-Mirylees and to embarrass someone in the Fairfield Fire Department.

Evidence: This is an inference that the jury is entitled to draw from all of the evidence presented in support of the prior proposed findings.

**DISAGREE:   The conduct of the Fairfield Police in investigating the threatening message was undertaken as part of a good faith criminal investigation.**

8.40.   As a direct and proximate result of the unlawful acquisition and disclosure of the information from AOL by the defendants pursuant to the patently defective search warrant application, Mr. Freedman has been subjected to ridicule, and his reputation and standing in the Fairfield Community and beyond have been damaged. This has caused him to suffer great emotional distress and mental anguish.

Evidence:       Testimony of Clifton S. Freedman
                Copy of Medical Record of Clifton S. Freedman
                Testimony of Arlene Bunt
                Testimony of Sol Briks
                Testimony of Brenda Kupchik
                Testimony of Dorothy Domeika
                Testimony of Betty Ann O'Shaunhessy
                Testimony of Jamie Millington

**DISAGREE:   If Mr. Freedman experienced any public ridicule or embarrassment as a result of the publicity generated from the investigation, the extent of any ridicule or embarrassment was the result of his outspoken and highly opinionated positions pertaining to local politics. Mr. Freedman freely chose the screen names posted on AOL, and therefore is responsible for the impact upon the public.**

8.41.   Prior to the Defendants' actions, Mr. Freedman had a long-standing reputation as an honest, hard-working, and dedicated educator and public servant; and as an active and well-respected member of the Republican Party and the Fairfield political arena as a whole.

Evidence:       Testimony of Clifton S. Freedman
                Copy of Medical Record of Clifton S. Freedman
                Testimony of Arlene Bunt
                Testimony of Sol Briks
                Testimony of Brenda Kupchik
                Testimony of Dorothy Domeika
                Testimony of Betty Ann O'Shaunhessy

Testimony of Jamie Millington

"SIA Resolves to Fight Garage" article from the Fairfield Citizen, dated June 10, 1994

"Making the Grade" article from the New York Post, dated March 6, 1998

"Freedman's Bronx School Rated No. 1 in Reading" article from the Fairfield Citizen, dated March 27, 1998

Greeting Card to Clifton Freedman dated November 13, 2001

"Freedman Praised for Contributions to Education" article from the Fairfield Citizen, dated November 16, 2001

Letter from Ellen Jacob to Clifton Freedman, dated November 20, 2001

## IX.    AGREEMENTS AND DISAGREEMENTS ON CLAIMS OF LAW

9.1.    Fourth Amendment of the United States Constitution

9.1.1. The Fourth Amendment guarantees the right of the people to be free from "unreasonable searches and seizures." The warrant and probable cause requirements of the Fourth Amendment must be satisfied when the police seek information in which a person has an actual expectation of privacy and the expectation is one that society deems reasonable.

Authority:    U.S. Const. amend. IV
*United States v. Hanbrick*, F.Supp. 2d 504 (W.D. Va. 1999)
*Organization JD LTDA v. United States Dept. of Justice*, 18 F.3d 91 (2d. Cir. 1994)
*Katz v. United States*, 389 U.S. 347 (1967)

**DISAGREE:    The Plaintiff's claim that his Fourth Amendment rights were violated is barred by the Ruling on Defendants' Motion for Partial Summary Judgment.**

**Authority:    Honorable Peter C. Dorsey, Ruling filed on August 9, 2005, pages 5 through 9.**

9.1.2.    The Fourth Amendment required the defendants to obtain a warrant in order to obtain Mr. Freedman's subscriber information from AOL.

Authority:    U.S. Const. amend. IV
*United States v. Hambrick*, F.Supp. 2d 504 (W.D. Va. 1999)
*Organization JD LTDA v. United States Dept. of Justice*, 18 F.3d 91 (2d. Cir. 1994)
*Stanford v. Texas*, 379 U.S. 476 (1965)
*Katz v. United States*, 389 U.S. 347 (1967)
18 U.S.C. § 2703(c)

**DISAGREE:** **The Plaintiff's claim that his Fourth Amendment rights were violated is barred by the doctrine of qualified immunity.**

**Authority:**    **Saucier v. Katz, 533 U.S. 194 (2001)**
**Harlow v. Fitzgerald, 457 U.S. 818 (1982)**

       9.2.    Article First, Section 7 of the Constitution of the State of Connecticut

       9.2.1.    Article First, section 7 of the Connecticut Constitution guarantees the right of the people to be free from unreasonable searches and seizures. The warrant and probable cause requirements of Article First, section 7 must be satisfied when the police seek information in which a person has an actual expectation of privacy and the expectation is one that society deems reasonable.

Authority:    Conn. Const. art. I, § 7
       *State v. Marsala,* 216 Conn. 150 (1990)
       *Burrows v. Superior Court of San Bernardino County,* 13 Cal. 3d. 238
          (1974)
       *Charnes v. DiGiacoino,* 200 Cob. 94 (1980)
       *People v. Blair,* 25 Cal. 3d 640 (1979)
       *United States v. Hambrick,* F.Supp. 2d 504 (W.D. Va. 1999)
       *Organization JD LTDA v. United States Dept. of Justice,* 18 F.3d 91 (2d. Cir.
          1994)
       *Stanford v. Texas,* 379 U.S. 476 *(1965)*
       *Katz v. United States,* 389 U.S. 347 (1967)

**DISAGREE:** **The Defendants did not violate the Plaintiff's rights under Article First, Section 7 of the Connecticut State Constitution. (Question pending certification to the Connecticut Supreme Court, Honorable Peter C. Dorsey, Ruling on Defendants' Motion for Partial Summary Judgment dated August 9, 2005, page 25.**

**Authority:**    **State v. Bernier, 246 Conn. 70 (1988)**

       9.2.2.    Article First, section 7 required the defendants to obtain a warrant in order to obtain Mr. Freedman's subscriber information from AOL.

Authority:    Conn. Const. art. I, § 7
       *State v. Marsala,* 216 Conn. 150 (1990)
       *Burrows v. Superior Court of San Bernardino County,* 13 Cal. 3d. 238
          (1974)
       *Charnes v. DiGiacomo,* 200 Cob. 94 (1980)
       *People v. Blair,* 25 Cal. 3d 640 (1979)

*United States v. Hambrick*, F.Supp. 2d 504 (W.D. Va. 1999)
*Organization JD LTDA v. United States Dept. of Justice*, 18 F.3d 91 (2d. Cir. 1994)
*Stanford v. Texas*, 379 U.S. 476 (1965)
*Katz v. United States*, 389 U.S. 347 (1967)

9.3.    First Amendment of the United States Constitution

9.3.1.    The First Amendment of the United States Constitution protects the right of persons to engage in anonymous and pseudonymous political speech.

Authority:    U.S. Const. amend. I
*Reno v. ACLU*, 521 U.S. 844 (1997)
*McIntyre v. Ohio Elections Com'n*, 514 U.S. 334 (1995)
*Doe v. Ashcroft*, 334 F.Supp.2d 471 (S.D.N.Y. 2004)
*ACLU of Georgia v. Miller*, 977 F. Supp. 1228 (ND. Ga. 1997)
*Doe v. 2TheMart.com*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001)
*La Societe Metro Cash & Carry France v. Time Warner Cable*, 2003 WL 22962857 (Conn. Super. December 2, 2003)

**DISAGREE:    The Defendants' conduct in soliciting and obtaining the Plaintiff's identity did not violate his First Amendment rights.**

**Authority:    Mozzochi v. Borden, 959 F.2d 1178 (2nd Cir. 1992)**
**U.S. v. Chatelain, 360 F.3d 114 (2nd Cir. 2004)**

9.3.2.    Freedman's right to engage in anonymous and pseudonymous political speech under the First Amendment, is applied to the states through the Fourteenth Amendment under the United States Constitution.

Authority:    U.S. Const. amend. I
U.S. Const. amend. XIV
*Reno v. ACLU*, 521 U.S. 844 (1997)
*McIntyre v. Ohio Elections Com'n*, 514 U.S. 334 (1995)
*Doe v. Ashcroft*, 334 F.Supp.2d 471 (S.D.N.Y. 2004)
*ACLU 0f Georgia v. Miller*, 977 F. Supp. 1228 (ND. Ga. 1997)
*Doe v. 2TheMart.com*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001)
*Dendrite Int'l, Inc. v. Doe*, 342 N.J. Super. 134 (2001)

9.3.3    The government violates the First Amendment when it forces an internet service provider to disclose subscriber information without first obtaining judicial approval.

Authority:    U.S. Const. amend. 1
U.S. Const. amend. XIV
*Reno v. ACLU,* 521 U.S. 844 (1997)
*McIntyre v. Ohio Elections Com'n,* 514 U.S. 334 (1995)
*Doe v. Ashcroft,* 334 F.Supp.2d 471 (S.D.N.Y. 2004)
*ACLU 0f Georgia v. Miller,* 977 F. Supp. 1228 (ND. Ga. 1997)
*Doe v. 2meMart.com,* 140 F. Supp. 2d 1088 (W.D. Wash. 2001)
*Dendrite Int'l, Inc. v. Doe,* 342 N.J. Super. 134 (2001)

**DISAGREE:    The Defendants' conduct in soliciting and obtaining the Plaintiff's identity did not violate his First Amendment rights.  Additionally, AOL provided the requested information voluntarily.**

**Authority:    <u>Mozzochi v. Borden</u>, 959 F.2d 1178 (2nd Cir. 1992)
<u>U.S. v. Chatelain</u>, 360 F.3d 114 (2nd Cir. 2004)**

9.4.    Article First, Section 4 of the Constitution of the State of Connecticut

9.4.1.    Article First, Section 4 of the Constitution of the State of Connecticut protects the right of persons to engage in anonymous and pseudonymous political speech.

Authority:    Conn. Const. art. 1, § 4
*Reno v. ACLU,* 521 U.S. 844 (1997)
*McIntyre v. Ohio Elections Com'n,* 514 U.S. 334 (1995)
*ACLU 0f Georgia v. Miller,* 977 F. Supp. 1228 (ND. Ga. 1997)
*Doe v. 2TheMart.com,* 140 F. Supp. 2d 1088 (W.D. Wash. 2001)
*Columbia Ins. Co. v. Seascandy.com,* 185 F.R.D. 573
*Dendrite, Int'l, Inc. v. Doe,* 342 N.J. Super. 134 (2001)

9.4.2.    The government violates Article First, Section 4 when it compels an internet service provider to disclose subscriber information without first obtaining judicial approval.

Authority:    Conn. Const. art. I, § 4
*Reno v. ACLU,* 521 U.S. 844 (1997)
*McIntyre v. Ohio Elections Com'n,* 514 U.S. 334 (1995)

*ACLU 0f Georgia v. Miller,* 977 F. Supp. 1228 (ND. Ga. 1997)
*Doe v. 2TheMart.com,* 140 F. Supp. 2d 1088 (W.D. Wash. 2001)
*Columbia Ins. Co. v. Seascandy.com,* 185 F.R.D. 573
*Dendrite Int'l, Inc. v. Doe,* 342 N.J. Super. 134 (2001)


**DISAGREE:    The Defendants did not violate the Plaintiff's rights under Article First, Section 4 of the Connecticut State Constitution.  Additionally, AOL provided the requested information voluntarily.**

**Authority:    Cantwell v. Connecticut, 310 U.S. 296 (1939)**
**Elliott v. Waterbury, 245 Conn. 411 (1998)**



9.5.    Invasion of Privacy

9.5.1.    One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person.

Authority:    Restatement (Second) of Torts, § 652A
Restatement (Second) of Torts, § 652B
*Goodrich v. Waterbury Republican-American, Inc.,* 188 Conn. 107, 125-128
(1982)




9.5.2.    One who has established a cause of action for invasion of his privacy is entitled to recover damages for: i) the harm to his interest in privacy resulting from the invasion; and ii) his mental distress proved to have been suffered if it is of a kind that normally results from such an invasion.

Authority:    Restatement (Second) of Torts § 652H



9.6.    42 U.S.C. § 1983 Civil Action for Deprivation of Rights

9.6.1.    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to

the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

<u>Authority</u>:        42 U.S.C. § 1983

9.7.    Attorneys' Fees under 42 U.S.C. § 1983

9.7.1.    In any action or proceeding to enforce an individual's civil rights under 42 U.S.C. § 1983, a court may award the prevailing party its reasonable attorneys' fees.

<u>Authority</u>:        42 U.S.C. § 1983(b)

**DISAGREE:    Section 1983 provides that "...the court, in its discretion, may allow ... a reasonable attorney's fee...."**

**<u>Authority</u>:        <u>Blanchard v. Bergeron</u>, 489 U.S. 87 (1989)**

9.8.    Compensable Damages under 42 U.S.C. § 1983

9.8.1.    42 U.S.C. § 1983 creates a damages remedy against state officials for the violation of a person's federal constitutional or statutory rights. This remedy includes, *inter alia*, damages for emotional and mental distress, injury to reputation, and embarrassment and humiliation.

<u>Authority</u>:        42 U.S.C. § 1983
                *Kalina v. Fletcher*, 522 U.S. 118 (1997)
                *Dejesus v. Village of Pelham Manor*, 282 F. Supp. 2d 162 (S.D.N.Y. 2003)
                *Miner v. City of Glen Falls*, 999 F.2d 655 (2d Cir. 1993)
                *Palmer v. City of Monticello*, 31 F.3d 1499(10th Cir. 1999)
                *Rosenstein v. The City of Dallas, Texas*, 876 F.2d 392 (5th Cir. 1989)
                *Baskin v. Parker*, 602 F.2d 1205 (1979)

9.9.    Punitive Damages under 42 U.S.C. § 1983

9.9.1.    Punitive damages may be awarded to a plaintiff who prevails in an

action under 42 U.S.C. § 1983.

Authority:       42 U.S.C. § 1983
                 *Carey v. Piphus,* 435 U.S. 247, 257 (1978)

      9.10.   Conn. Gen. Stat. § 7-465- Assumption of Liability for Damage Caused by Employees

        9.10.1.  A municipality is required to indemnify an employee for damages the employee causes while acting within the scope of his employment and in the performance of his duties.

Authority:       Conn. Gen. Stat. § 7-465

      9.11.   18 U.S.C. § 2707- Attorney's Fees and Cost for Civil Action Under the Stored Wire and Electronic Communications and Transactions Records Assess Act

        9.11.1.  In a successful action under 18 U.S.C. § 2707, the court may assess the costs of the action, together with reasonable attorney's fees.

Authority:       18 U.S.C. § 2707(b)
                 18 U.S.C. § 2707(c)

      9.12.   18 U.S.C. § 2707- Damages for Civil Action Under the Stored Wire and Electronic Communications and Transactions Records Assess Act

        9.12.1.  In a civil action under 18 U.S.C. § 2707, the court may assess the sum of the actual damages suffered by the plaintiff. Actual damages include, *inter alia*, emotional distress, mental anguish, and other intangible injuries.

Authority:       18 U.S.C. § 2707(b)
                 18 U.S.C. § 2707(c)
                 *Halperin v. Kissinger,* 606 F.2d 1192 (D.C. 1979)
                 *Gerrard v. Blackman,* 401 F.Supp. 1189 (ND. III. 1975)
                 Restatement (Second) Torts § 65211

9.13.    Punitive Damages under 18 U.S.C. § 2707

        9.13.1.  If a plaintiff prevails under 18 U.S.C. § 2707, and the violation is willful or intentional, the court may assess punitive damages.

Authority:        18 U.S.C. § 2707(b)
               18 U.S.C. § 2707(c)

## X.    AGREEMENTS AND DISAGREEMENTS ON EXHIBITS

1.    "SIA Resolves to Fight Garage" article from the Fairfield Citizen, dated June 10, 1994

**DISAGREE:    Irrelevant and hearsay**

2.    "Making the Grade" article from the New York *Post,* dated March 6, 1998

**DISAGREE:    Irrelevant**

3, "Freedman's Bronx School Rated No. 1 in Reading" article from the Fairfield Citizen, dated March 27, 1998

**DISAGREE:    Irrelevant**

4.    Greeting Card to Clifton Freedman dated November 13, 2001

**DISAGREE:    Irrelevant and hearsay**

5.    "Freedman Praised for Contributions to Education" article from the Fairfield

Citizen, dated November 16, 2001

**DISAGREE:   Irrelevant and hearsay**

      6.        Letter from Ellen Jacob to Clifton Freedman, dated November 20, 2001

**DISAGREE:   Irrelevant and hearsay**

      7.        Copies of WebPages from "Anybodybutjohn.com" website

      8.        Copies of WebPages from www.rumnaryrun.com website

      9.        Copy of brochure of Mary Carroll-Mirylees for First Selectman

      10.     March 31, 2003 "GoMaryGoAway" "The End is Near" e-mail from GoMaryGoAway@aol.com to DDBrandtct@aol.com printed out by "Chris Lyddy"

      11.     March 31, 2003 "GoMaryGoAway" "The End is Near" e-mail from sandym@optonline.net to clyddy@town.fairfield.ct.us

      12.     March 31, 2003 "GoMaryGoAway" "The End is Near" e-mail from

GoMaryGoAway@aol.com to sandym@optoriline.net

     13.    March 31, 2003 "GoMaryGoAway" "The End is Near" e-mail from Go Mary Go Away to DeeDee Brandt

     14.    March 31, 2003 "GoMaryGoAway" "The End is Near" e-mail to KSIAN@aol.com

     15.    April 2, 2003 "GoMaryGoAway" "The End is Near" e-mail from GoMaryGoAway@aol com to twalsh@optonline.net; DoroD506@aol.com; Dwej6l@aol.com; JWalsh1000@aol.com; KSIAN@aol.com; KSKCWALSH@aol.com; sandym@optonline.net

     16.    April 2, 2003 "GoMaryGoAway" "The End is Near" e-mail response from DoroD506@aol.com to GoMaryGoAway@aol.com; Twalsh@optonline.net; Dwej6l@aol.com; JWalshl000@aol.com; KSIAN@aol.com; KSKCWALSFI@aol.com; sandym@optonline.com

     17.    April 2, 2003 "GoMaryGoAway" "The End is Near" e-mail response from sandyrn@optonline.net to DoroD506@aol.com

     18.    April 2, 2003 "GoMaryGoAway" "The End is Near" e-mail response from DoroD5O6@aol.com to sandym@optonline.net

19.    Fairfield Police Department Internet/Computer Harassment Statement Forms of Sandra Mulligan, dated April 1, 2003

20.    Fairfield Police Department Internet/Computer Harassment Statement Forms of DeeDee Brandt, dated April 1, 2003

21.    Fairfield Police Department Case/Incident Report, dated April 1, 2003

22.    Multi-page facsimile from Fairfield Police Department to AOL, dated April 1, 2003, which includes the following:

        a.    fax coversheet

        b.    warrant application/affidavit

23.    Multi-page facsimile from AOL to Fairfield Police Department, dated April 7, 2003, which includes the following:

        a.    fax coversheet

        b.    Mr. Freedman's personal subscriber information, which includes his address, phone numbers, account status, membership information, software information, billing and account information, all of his screen names, and the activity of all of his screen names within

24.     Fairfield Police Department Supplementary Offense Report of Detective
William Young, dated April 11, 2003

25.     Fairfield Police Department Supplementary Offense Report of Lieutenant
Christopher Lyddy, dated April 16, 2003

26.     "Political E-Mails Get Cop Warning" article from the Connecticut Post,
dated April 16, 2003

**DISAGREE:     Hearsay**

27.     "E-Mail Causes Feud Among Four Republicans" article from the Fairfield
Citizen, dated April 18, 2003

**DISAGREE:     Hearsay**

28.     "Best and the Rest for the Past Week" article from the Connecticut Post,
dated April 19, 2003

**DISAGREE:     Hearsay**

29.     Clifton S. Freedman's letter to Fairfielders, dated April 23, 2003

30.     Five *(5)* "Letter to the Editor" articles from the Fairfield Citizen, dated April
23, 2003

**DISAGREE:     Hearsay**

31.    Three (3) "Letter to the Editor" articles from the Fairfield Citizen, dated April 25, 2003

**DISAGREE:    Hearsay**

32.    Clifton S. Freedman's one (1) page typed Statement, dated April 28, 2003

**AGREE:        Except for hearsay exceptions**

33.    Clifton S. Freedman's four (4) page typed Statement, dated April 28, 2003

**AGREE:        Except for hearsay exceptions**

34.    Fairfield Police Department Incident Report, dated April 28, 2003

35.    Fairfield Police Department Supplementary Offense Report of Detective William Young, dated April 29, 2003

36.    "Letter to the Editor" article from the Fairfield Citizen, dated April 30, 2003

**DISAGREE:    Hearsay**

37.    "Can't They All Just Get Along?" article from the Fairfield Minuteman, dated May 1, 2003