**DISAGREE:**    **Hearsay**


38.    "Playing Political Games in Fairfield" article from the Fairfield Minuteman, dated May 1, 2003

**DISAGREE:**    **Hearsay**


39.    Two (2) "Letter to the Editor" articles and cartoon from the Fairfield Minuteman, dated May 1, 2003

**DISAGREE:**    **Hearsay**


40.    Cartoon from the Fairfield Minuteman, dated May 1, 2003

**DISAGREE:**    **Hearsay**


41, Three (3) "Letter to the Editor" articles from the Fairfield Citizen, dated May 2, 2003

**DISAGREE:**    **Hearsay**


42.    Two (2) Letter to the Editor" articles from the Fairfield Citizen, dated May 7, 2003

**DISAGREE:**    **Hearsay**


43.    Four (4) "Letter to the Editor" articles from the Fairfield Minuteman, dated May 8, 2003

**DISAGREE:**    **Hearsay**

44.    "Letter to the Editor" article from the Fairfield Citizen, dated May 14, 2003

**DISAGREE:**    **Hearsay**

45.    "Freedman Among Candidates Picked" article from the Fairfield Citizen, dated May 14, 2003

**DISAGREE:**    **Hearsay**

46.    "Letter to the Editor" article from the Fairfield Citizen, dated May 21, 2003

**DISAGREE:**    **Hearsay**

47.    "Is Mary In or Out?" article from the Fairfield Citizen, dated May 22, 2003

**DISAGREE:**    **Hearsay**

48.    Two (2) "Letter to the Editor" articles from the Fairfield Minuteman, dated May 22, 2003

**DISAGREE:**    **Hearsay**

49.    "Letter to the Editor" article from the Fairfield Citizen, dated May 23, 2003

**DISAGREE:**    **Hearsay**

50.    "Candidate Suing Town, Cops in E-Mail Caper" article from the Connecticut Post, dated June 3, 2003

**DISAGREE:    Hearsay**

51.    "Letter to the Editor" article from the Fairfield Citizen, dated June 4, 2003

**DISAGREE:    Hearsay**

52.    "Republicans, Reconsider" article from the Fairfield Minuteman, dated June 5, 2003

**DISAGREE:    Hearsay**

53.    "Freedman to Sue Town, Police Over E-Mail Escapade" article from the Fairfield Citizen, dated June 5, 2003

**DISAGREE:    Hearsay**

54.    "Letter to the Editor" article from the Fairfield Minuteman, dated June 5, 2003

**DISAGREE:    Hearsay**

55.    "Best and the Rest from the Past Week" article from the Connecticut Post, dated June 7, 2003

**DISAGREE:    Hearsay**

56.    Medical Record of Clifton S. Freedman from St. Vincent's Hospital, dated June 7, 2003

**DISAGREE:    Hearsay**

57.    "Letter to the Editor" article from the Connecticut Post, dated June 10, 2003

**DISAGREE:    Hearsay**

58.    Two (2) "Letter to the Editor" articles from the Fairfield Citizen, dated June 11, 2003

**DISAGREE:    Hearsay**

59.    "Letter to the Editor" article from the Fairfield Minuteman, dated June 12, 2003

**DISAGREE:    Hearsay**

60.    Two (2) "Letter to the Editor" articles from the Fairfield Citizen, dated June 13, 2003

**DISAGREE:    Hearsay**

61.    "Freedman Claims His Rights Were Violated" article from the Fairfield Citizen, dated June 13, 2003

**DISAGREE:     Hearsay**

      62.     "Letter to the Editor" article from the Connecticut Post, dated June 17, 2003

**DISAGREE:     Hearsay**

      63.     "Freedman Candidacy RTC Topic" article from the Fairfield Citizen, dated June 18, 2003

**DISAGREE:     Hearsay**

      64.     "RTC to Discuss Freedman's Candidacy in Special Session Saturday" article from the Fairfield Citizen, dated June 18, 2003

**DISAGREE:     Hearsay**

      65.     "End is Near for Norwalk High Seniors" article from the Norwalk Hour, dated June 18, 2003

**DISAGREE:     Hearsay**

      66.     "GOP Bids to resolve Nightmare of E-Mails" article from the Connecticut Post, dated June 18, 2003

**DISAGREE:     Hearsay**

67.    "Freedman Files Federal Suit" article from the Fairfield Minuteman, dated June 19, 2003

**DISAGREE:    Hearsay**

68.    Five (5) "Letter to the Editor" articles from the Fairfield Minuteman, dated June 19, 2003

**DISAGREE:    Hearsay**

69.    Fairfield Police Department Supplementary Offense Report of Detective William Young, dated June 20, 2003

70.    Two (2) "Letter to the Editor" articles from the Fairfield Citizen, dated June 20, 2003

**DISAGREE:    Hearsay**

71.    Three (3) Letter to the Editor" articles from the Fairfield Citizen, dated June 20, 2003

**DISAGREE:    Hearsay**

72.    "E-Mailer Damaged Reputation of Fairfield GOP" article from the Connecticut Post, dated June 21, 2003

**DISAGREE:    Hearsay**

      73.     "Candidate E-Mail Rebuked" article from the Connecticut Post, dated June 24, 2003

**DISAGREE:**    **Hearsay**


      74.     Five (5) "Letter to the Editor" articles from the Fairfield Citizen, dated June 25, 2003

**DISAGREE:**    **Hearsay**


      75.     "Party Trouble" article from the Fairfield Citizen, dated June 25, 2003

**DISAGREE:**    **Hearsay**


      76.     "Voters to Decide Freedman's Fate" article from the Fairfield Minuteman, dated June 26, 2003

**DISAGREE:**    **Hearsay**


      77.     Two (2) "Letter to the Editor" articles from the Fairfield Minuteman, dated June 26, 2003

**DISAGREE:**    **Hearsay**


      78.     "Censure Not Enough for BOE Candidate" article from the Connecticut Post, dated June 26, 2003

**DISAGREE:**    **Hearsay**


      79.     "More Party Departures" article from the Fairfield Citizen, dated June 27, 2003

**DISAGREE:**     **Hearsay**

     80.     Four (4) "Letter to the Editor" articles from the Fairfield Citizen, dated June 27, 2003

**DISAGREE:**     **Hearsay**

     81.     "Carroll-Mirylees Resigns from RTC" article from the Fairfield Citizen, dated July 2, 2003

**DISAGREE:**     **Hearsay**

     82.     Four (4) "Letter to the Editor" articles from the Fairfield Citizen, dated July 2, 2003

**DISAGREE:**     **Hearsay**

     83.     "Fairfield Republican Rift Widens" article from the Connecticut Post, dated July 2, 2003

**DISAGREE:**     **Hearsay**

     84.     Cartoon from the Fairfield Minuteman, dated July 3, 2003

**DISAGREE:**     **Hearsay**

     85.     Three (3) "Letter to the Editor" articles from the Fairfield Minuteman, dated July 3, 2003

**DISAGREE:**     **Hearsay**

86.    "Republicans Continue to Drop off RTC" article from the Fairfield Minuteman, dated July 3, 2003

**DISAGREE:    Hearsay**

87.    "Shame on (some) Republicans!" article from the Fairfield Minuteman, dated July 3, 2003

**DISAGREE:    Hearsay**

88.    Three (3) "Letter to the Editor" articles from the Fairfield Citizen, dated July 4, 2003

**DISAGREE:    Hearsay**

89.    Two (2) "Letter to the Editor" articles from the Fairfield Minuteman, dated July 10, 2003

**DISAGREE:    Hearsay**

90.    Five (5) "Letter to the Editor" articles from the Fairfield Citizen, dated July 11, 2003

**DISAGREE:    Hearsay**

91.    "Mend Fences" article from the Fairfield Citizen, dated July 11, 2003

**DISAGREE:    Hearsay**

92.     Two (2) "Letter to the Editor" articles from the Connecticut Post, dated July 14, 2003

**DISAGREE:    Hearsay**

93.     "Letter to the Editor" article from the Connecticut Post, dated July 16, 2003

**DISAGREE:    Hearsay**

94.     "RTC Rules Change Considered" article from the Fairfield Citizen, dated July 16, 2003

**DISAGREE:    Hearsay**

95 "Political Parties Take Stock of Voters Next Week" article from the Fairfield Minuteman, dated July 17, 2003

**DISAGREE:    Hearsay**

96.     "Candidate Preferences Voiced as Season Begins" article from the Connecticut Post, dated July 18, 2003

**DISAGREE:    Hearsay**

97.     "Kupchick: Work Toward Positive Change" article from the Fairfield Citizen, dated July 18, 2003

**DISAGREE:    Hearsay**

98.     "Parties Gear Up for Nominations" article from the Fairfield Citizen, dated July 18, 2003

**DISAGREE:    Hearsay**

99.    "Fairfield Republicans Choose Hug" article from the Connecticut Post, dated July 23, 2003

**DISAGREE:    Hearsay**


100.    "Candidates Endorsed- Quietly" article from the Fairfield Minuteman, dated July 24, 2003

**DISAGREE:    Hearsay**


101.    "Republicans Pick Their Candidates" article from the Fairfield Citizen, dated July 25, 2003

**DISAGREE:    Hearsay**


102.    "Just the Start" article from the Fairfield Citizen, dated July 25, 2003

**DISAGREE:    Hearsay**


103.    "Controversial Ed Board Member Quits Race" article from the Connecticut Post, dated July 29, 2003

**DISAGREE:    Hearsay**


104.    "Freedman Bows Out" article from the Fairfield Citizen, dated July 30, 2003

**DISAGREE:    Hearsay**

42

105.    "Freedman Withdraws From Campaign, Not Lawsuit" article from the
Fairfield Minuteman, dated July 31, 2003

**DISAGREE:    Hearsay**

106.    "Would-be GOP Challenger Leaves Race" article from the Connecticut Post,
dated August 5, 2003

**DISAGREE:    Hearsay**

107.    "Onward and Upward" article from the Fairfield Citizen, dated August 6,
2003

**DISAGREE:    Hearsay**

108.    "Mirylees Makes Decision" article from the Fairfield Citizen, dated
August 6, 2003

**DISAGREE:    Hearsay**

109.    "E-Mailed Letters Create Confusion, Once Again" article from the Fairfield
Minuteman, dated August 7, 2003

**DISAGREE:    Hearsay**

110.    "Carroll-Mirylees Not Running This Year" article from the Fairfield
Minuteman, dated August 7, 2003

**DISAGREE:    Hearsay**

111.    Mary Carroll-Mirylees advertisement from the Fairfield Minuteman, dated October 16, 2003

**DISAGREE:    Hearsay**

112.    "No One Likes Negative Campaigns" article from the Fairfield Minuteman, dated October 16, 2003

**DISAGREE:    Hearsay**

113.    Cartoon from the Fairfield Minuteman, dated October 16, 2003

**DISAGREE:    Hearsay**

114.    "Ad Praising Ex-Candidate Puzzels Fairfield GOP" article from the Connecticut Post, dated October 31, 2003

**DISAGREE:    Hearsay**

115.    Affidavit of Detective William Young, dated December 26, 2003

**DISAGREE:    Hearsay**

116.    "Fairfield, 2003: New Buildings, Old Wounds" article from the Fairfield Minuteman, dated January 8, 2004

**DISAGREE:    Hearsay**

117.    "Judge Finds Against Police in Privacy Suit" article from the Connecticut Law Tribune, dated January 23, 2004

**DISAGREE:    Hearsay**

118.    "Going Overboard" article from the Connecticut Post, dated January 30, 2004

**DISAGREE:    Hearsay**

119.    "Freedman Wins, Town to Pay Up" article from the Fairfield Minuteman, dated February 12, 2004

**DISAGREE:    Hearsay**

120.    "Angry Calls Send Freedman to Police" article from the Fairfield Citizen, dated February 13, 2004

**DISAGREE:    Hearsay**

121.    "Town to Appeal Privacy Decision in Freedman Case" article from Fairfield Minuteman, dated February 26, 2004

**DISAGREE:    Hearsay**

122.    "AOL Blamed in 'End is Near' Case" article from the Connecticut Post, dated August 12, 2004

**DISAGREE:    Hearsay**

123.    "Letter to the Editor" article from the Fairfield Citizen, dated September 8, 2004

**DISAGREE:    Hearsay**

124.    "Police Sergeant Suing Town Over Judgment" article from the Fairfield
Citizen, dated February 11, 2005

**DISAGREE:    Hearsay**

125.    Fairfield Police Department Detective Division document setting forth the
procedures for obtaining information from America Online, prepared by "Bill Young #137"
and signed by Lieutenant Christopher Lyddy

**DISAGREE:    Hearsay**

126.    Town of Fairfield Charter

**DISAGREE:    Hearsay**

127.    Copy of printout of Clifton S. Freedman's AOL account activity

**DISAGREE:    Hearsay**

128.    AOL Privacy Policy.

**DISAGREE:    Hearsay**

129.    Affidavit of Christopher Lyddy, dated June 15, 2004

**DISAGREE:    Hearsay**

130.    Defendants' Rule 26(a) Initial Disclosure, dated October 28, 2003

**DISAGREE:    Hearsay**

XI.    **AGREEMENTS AND DISAGREEMENTS ON QUALIFICATIONS OF EXPERTS**

1.    Neither party has noticed expert witnesses in the above-captioned matter.

XII.   **DISAGREEMENT AS TO THE CLAIM OF ADMISSIBILITY OF EVIDENCE LIKELY TO BE DISPUTED OR TO REQUIRE A RULING BY THE COURT**

1.    The Defendants anticipate that the Plaintiff will propose testimonial evidence through Arlene Bunt as to the public impact the disclosure of Mr. Freedman as the sender of "GoMaryGoAway" e-mail had upon his reputation and mental and emotional tranquility. The Defendant will dispute the admissibility of this evidence as Ms. Bunt had not been disclosed as an expert in determining the emotional and mental tranquility of an individual, and that in addition such testimony is disputed on the grounds of hearsay.

2.    The Defendants anticipate that the Plaintiff will propose testimonial evidence through Sol Briks as to the public impact the disclosure of Mr. Freedman as the sender of "GoMaryGoAway" e-mail had upon his reputation and mental and emotional tranquility. The Defendant will dispute the admissibility of this evidence as Mr. Briks had not been disclosed as an expert in determining the emotional and mental tranquility of an individual, and that in addition such testimony is disputed on the grounds of hearsay.

3.    The Defendants anticipate that the Plaintiff will propose testimonial evidence through Brenda Kupchik as to the public impact the disclosure of Mr. Freedman as the sender of "GoMaryGoAway" e-mail had upon his reputation and mental and emotional tranquility. The Defendants will dispute the admissibility of this evidence as Ms. Kupchik had not been disclosed as an expert in determining the emotional and mental tranquility of an individual, and that in addition such testimony is disputed on the grounds of hearsay.

47

4.    The Defendants anticipate that the Plaintiff will propose testimonial
evidence through Dorothy Domeika as to the public impact the
disclosure of Mr. Freedman as the sender of "GoMaryGoAway" e-
mail had upon his reputation and mental and emotional tranquility.
The Defendants will dispute the admissibility of this
evidence as Ms. Domeika had not been disclosed as an expert in
determining the emotional and mental tranquility of an individual, and
that in addition such testimony is disputed on the grounds of hearsay.

5.    The Defendants anticipate that the Plaintiff will propose testimonial
evidence through Betty Ann O'Shaunhessy as to the public impact the
disclosure of Mr. Freedman as the sender of "GoMaryGoAway" e-
mail had upon his reputation and mental and emotional tranquility.
The Defendants will dispute the admissibility of this evidence as Ms.
O'Shaunhessy had not been disclosed as an expert in determining the
emotional and mental tranquility of an individual, and
that in addition such testimony is disputed on the grounds of hearsay.

6.    The Defendants anticipate that the Plaintiff will propose testimonial
evidence through Jamie Millington as to the public impact the
disclosure of Mr. Freedman as the sender of "GoMaryGoAway" e-
mail had upon his reputation and mental and emotional tranquility.
The Defendants will dispute the admissibility of this evidence as Mr.
Millington had not been disclosed as an expert in determining the
emotional and mental tranquility of an individual, and that in addition
such testimony is disputed on the grounds of hearsay.

## XIII.   BASIS FOR FEDERAL JURISDICTION

This case arises under the Constitution and laws of the United States,

including 42 U.S.C. Sections 1983 and 1985, and is the basis for federal

jurisdiction.

The Plaintiff has filed an eleven count Complaint, nine of which remain

against the Defendants. The First Count alleges a violation of The Electronic

Communication Privacy Act, 18 U. S. C. §2701, et seq.. Summary Judgment was

granted on behalf of the Plaintiff as to the First Count. Count Four alleges a

violation of the Fourth Amendment of the United States Constitution. Summary

Judgment was granted on behalf of the Defendant as to the Fourth Count. Count

Five alleges a violation of the First Amendment of the United States Constitution,

and remains undecided. Count Six alleges a violation of Article First, Section 4 of

the Constitution of the State of Connecticut, and remains undecided. Count Seven

alleges a violation of Article First, Section 7 of the Constitution of the State of

Connecticut, and has been certified to the Connecticut Supreme Court. Count

Eight alleges an invasion of privacy, and remains undecided. Count Nine alleges

violations of the First and Fourth Amendments of the United States Constitution

against the defendant Town of Fairfield. Count Ten seeks indemnification

pursuant to C. G. S. § 7-465 against the Town of Fairfield. Count Eleven alleges a

claim of Respondeat Superior as to the Town of Fairfield.

## XIV.    VOIR DIRE QUESTION FOR SUBMISSION TO JURY

    a.  Have you, or anyone in your immediate family, been mistreated, or treated unfairly by a member of any police department?

    b.  Do you think police officers are inherently dishonest?

    c.  Do you think police officers will go to any extreme in order to make an arrest?

    d.  Do you think police officers operate under the assumption that "the end justifies the means"?

    e.  Are you, or any member of your immediate family, affiliated with a police department?

    f.   Have you read or heard any information regarding this matter from the newspapers or from other people who have read about it in the newspapers?

## XV.   REQUEST TO CHARGE

This is an action brought by Mr. Clifton Freedman, an active member of the Fairfield Republican Party, against two of the employees of the Town of Fairfield, Detective William Young and Detective David Bensey and the Town of Fairfield. This is a civil rights action brought under the United States Constitution and Constitution of the State of Connecticut. This action is brought in eleven counts which are merely different theories of recovery.

The law to be applied in this case is the Federal Civil Rights law, which provides a remedy for individuals who have been deprived of their Constitutional rights, under color of state law. The section, which is Section 1983 of Title 42 of the United States Code, provides as follows:

> "Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law...."

The Plaintiff, Mr. Freedman in this case, claims that his Constitutional right to privacy, free speech, and unlawful search and seizure was improperly taken from him. The right to privacy, free speech and unlawful search and seizure is a right guaranteed by the Federal Constitution.

I shall now instruct you on the elements of Plaintiff's Section 1983 claim. The Plaintiff has the burden of proving each and every element of this Section 1983

claim, by a fair preponderance of the evidence. And I shall state them to you shortly. If you find that any one of the elements of the claim have not been proved by a fair preponderance of the evidence, you must return a verdict for the defendant on this Civil Rights claim.

Similarly, if you find that any one of the elements of the Defendants' special defense has not been proven by a fair preponderance of the evidence, you must disregard that defense.

Now, to establish a claim under Section 1983, the following must be established: First, that the conduct complained of was committed by a person acting under color of state law. Second, that the conduct deprived the Plaintiff of rights, privileges, or immunities secured by the Constitution of the United States. And third, that the Defendants were the proximate cause of the injuries and consequent damages sustained by the Plaintiff.

I shall now examine these three elements in detail. Whether the one or more of the Defendants committed the acts as alleged by the Plaintiff, is a question of fact for you to decide. Assuming for the moment that a Defendant did commit these acts, I instruct you that since each individual Defendant was an official of the Town of Fairfield at the time of the acts in question, he was acting under color of State law. In other words, the first statutory requirement is satisfied by the Plaintiff.

The second element of the Plaintiff's claim is that he was deprived of a Constitutional right by the Defendant. In order for the Plaintiff to establish the second element, he must show these things by a fair preponderance of the evidence: First, that the Defendants committed the acts on the Plaintiff; second, that these acts

51

caused the Plaintiff; third, that these acts caused the Plaintiff to suffer the loss of a Constitutional right; and fourth, in performing the acts alleged, the Defendants acted intentionally or recklessly.

The third element that must be established in civil rights action, is that of cause – causation. This third element that must be proven by the Plaintiff is that a Defendant's acts were a proximate cause or substantial factor of the damages sustained. You have already been instructed on proximate cause and causation, in connection with the negligence count, and the same rule applies in the civil rights count also.

I instruct you that in order to establish a claim under the pleadings of this case, the Plaintiff must show that a Defendant acted intentionally or recklessly. If you find that the acts of a Defendant were merely negligent, then even if you find that the Plaintiff was damaged as a result of those acts, you must return a verdict for the Defendants under the civil rights count.

An act is intentional if it is done with the knowledge that it will likely deprive the Plaintiff of a Constitutional right. An act is reckless if done in conscious or heedless disregard of its known probable consequences. In determining, ladies and gentlemen, whether the Defendant acted with the requisite recklessness or intent, you should remember that while a witness may see and hear and so be able to give direct evidence of what a person does or fails to do, there is no way of looking into a person's mind. Therefore, you have to depend on what was done, and what the people involved said was in their minds, and your belief or disbelief with respect to those facts.

Even if you find that one (or more) of the individual Defendants was guilty of intentional or reckless misconduct, such Defendant would not be legally liable unless such conduct was a legal cause or substantial factor in brining about the damage to the Plaintiff.

In other words, if you find that the Defendants acted in good faith, you should return a verdict in their favor on the civil rights count.

A two-part test is utilized to determine whether an intrusion into an individual's privacy violated the Fourth Amendment. A court must examine whether the individual has established a subjective expectation of privacy and, if so, whether society would recognize this expectation as objectively reasonable. Both criteria must be satisfied to implicate a privacy interest protected by the Fourth Amendment. Only a few cases have considered whether, for purposes of the Fourth Amendment, society would consider reasonable an internet subscriber's expectation in non-content information provided to an ISP to receive internet service.

In the cases in which the issue has been considered, courts have universally found that, for purposes of the Fourth Amendment, a subscriber does not maintain a reasonable expectation of privacy with respect to his subscriber information. In reaching this conclusion, court have emphasized: (1) the distinction between the content of electronic communications, which is protected, and non-content information, including a subscriber's screen name and corresponding identity, which is not; (2) the language of the Electronic Communications Privacy of 1986, which expressly permits ISPs to disclose subscriber information to non-governmental third parties and also to the government, under more restrictive conditions; and (3) the

agreement between the subscriber and the ISP to assess whether a subscriber's

subjective expectation of privacy in his non-content subscriber information was one

that society would be willing to accept as objectively reasonable.

Now, as you know, the Town of Fairfield is a named Defendant. This claim

is based upon a statute, Section 7-465, entitled:

> "Assumption of liability for damage caused by employees …. Any … city or
> borough … shall pay on behalf of any employee of such municipality ... all
> sums which such employee becomes obligated to pay by reason of liability
> imposed upon such employee by law for damages awarded for infringement
> of any person's civil rights or for physical damages to person or property …,
> if the employee, at the time of occurrence, … or damages complained of, was
> acting in the performance of his duties and within the scope of his
> employment, and if such occurrence … was not the result of any willful or
> wanton act of such employee in the discharge of such duty…."

You will see from a reading of this statute that the Town of Fairfield will not

be obliged to pay any damages unless and until the employee has been found by you

to be legally liable. The Town's obligation arises (1) if the employee is held liable,

(2) if he was acting in the performance of his duties, and within the scope of his

employment, and (3) if such occurrence was not the result of a willful or wanton act

of the employee. The word "willful" means intentional or voluntary. The word

"wanton" means to act without restrain, with heedless disregard of the rights of

others.

Accordingly, even though you found one or more of the individual

Defendants liable, the City would not be liable if the acts of such individual

Defendants were willful or wanton, as opposed to mere negligence or carelessness.

If you resolve the issue of liability in favor of the Plaintiff against one or more

of the Defendants, then you should go on and consider the questions of damages.

## SPECIAL DEFENSE OF CONDITIONAL OR QUALIFIED PRIVILEGE

The individual Defendants in their special defense claim a conditional or qualified immunity by virtue of being public officials performing their duties as employees of the Town of Fairfield. Under this doctrine a public employee is not liable if he acts reasonably and diligently in performing the duties of his employment. However, the public employee loses or abuses his immunity or privilege if he acts with malice, improper motive, or bad faith. Also, the courts have said the he also loses such immunity if he acts excessively.

Having made this claim of immunity or privilege, in their special defense, the individual Defendants have the burden of proof, by a fair preponderance of the evidence, to persuade you that they are entitled to such immunity.

Section 1983 of Title 42 of the United States Code provides:

"Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia, subjects or causes to be subject, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

To establish a claim under Section 1983, the Plaintiff must establish, by a preponderance of the evidence, each of the following three elements:

First, that the conduct complained of was committed by a person acting under color of state law;

Second, that this conduct deprived the Plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United sates; and

55

Third, that one or more of the Defendants' acts were the proximate cause of the injuries and consequent damages sustained by the Plaintiff.

I shall now examine each of the three elements in greater detail.  42 U.S.C. § 1983.

"Acting under color of law" means "under pretense of law" and simply means that the acts complained of would not have occurred but for the fact that the person committing them was an official, purporting to exercise his or her official powers.

The Plaintiff must next prove that those acts caused him to suffer the loss of one or more Federal rights.  The Plaintiff claims that he was caused to lose his procedural and substantive right to privacy, free speech, and freedom from unlawful search and seizure.

The third element which the Plaintiff must prove with respect to both his right to privacy, free speech and unlawful search and seizure claims, is that one or more of the Defendants' acts were a proximate cause of the injuries he sustained.  Proximate cause means that there must be a sufficient causal connection between the act or omission of a Defendant and any injury or damage sustained by one Plaintiff.  An act or omission is a proximate cause if it was a substantial factor in bringing about or actually causing injury, that is, if the injury or damage was a reasonably foreseeable consequence of any Defendants' act of omission.  If an injury was a direct result or a reasonably probable consequence of a defendants' act or omission, it was proximately caused by such act or omission.  In other words, producing the injury that reasonable persons would regard it as being a cause of the injury, then the act or omission is a proximate cause.

If you determine that one or more of the Defendants are liable to the Plaintiff for the wrongs alleged in this action, based upon any of the claims raised, you should then consider damages. The object of an award of damages is to place the injured party, as near as may be possible, in the situation he would have occupied, if the wrong had not been committed. Within the guidelines of these instructions, the amount to be awarded rests largely in your good discretion.

**FIRST AMENDMENT**

Although anonymous speech is entitled to First Amendment protection, threatening communications are not.

"When determining whether a statement qualifies as a threat for First Amendment purposes, a district court must ask whether 'the threat on its face and in the circumstances in which it is made is so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution....'" The United States Court of Appeals for the Second Circuit has consistently expressed a preference for having juries determine whether the words at issue constitute a true threat or mere political hyperbole for First Amendment purposes. "The test is an objective one – namely, whether an ordinary, reasonable recipient who is familiar with the context of the letter would interpret it as a threat of injury. In making this determination, proof of the effect of the alleged threat upon the addressee is highly relevant."

**QUALIFIED IMMUNITY**

Defendants contend that assuming arguendo that they violated Plaintiff's First Amendment rights, they would nonetheless be immune from liability under the

doctrine of qualified immunity.  Although Defendants concede that the First

Amendment protects anonymous and pseudonymous speech, they argue that a

reasonable person would have considered Plaintiff's e-mail a threat and, thus,

unprotected by the First Amendment.  In addition, defendants contend that there is no

constitutional right to be free from investigation and that, based upon Mulligan's and

Brandt's concerns, they were obligated to consider the e-mail a threat.  "Public

officials sued in their individual capacity are entitled to qualified immunity from suit

unless 'the contours of the right [are] sufficiently clear that a reasonable official

would understand that what he is doing violates that right."

In assessing whether a Defendant is entitled to qualified immunity for his

actions, we must determine:  (1) whether the right in question was defined with

"reasonable specificity"; (2) whether the decisional law of the Supreme Court and the

applicable circuit court support the existence of the right in question; and (3) whether

under preexisting law a reasonable defendant official would have understood that his

or her acts were unlawful.  Simply, there is no constitutional right to be free of

investigation.

Article first, Section 4 of the Constitution of Connecticut provides: "Every

citizen may freely speak, write and publish his sentiments on all subjects, being

responsible for the abuse of that liberty."  Connecticut case law suggests that a public

official would be entitled to qualified immunity for state constitutional violations "for

official actions taken reasonably and in good faith."

The exceptions to qualified immunity are:

first, where the circumstances make it apparent to the public officer that his or
her failure to act would be likely to subject an identifiable person to imminent

58

harm [;] second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws [;] and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence."

Under federal law, however, the court explained that "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action ... assess in light of the legal rules that were 'clearly established' at the time it was taken.... With respect to Section 1983 claims, "an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner."

## XVI.   WRITTEN STATEMENT IN LIEU OF OPENING STATEMENT

This case involves several members of the Town of Fairfield, police officers from the Town of Fairfield, and the Town of Fairfield as a government entity. The matter begins when the Plaintiff, Clifton Freedman, sent an anonymous electronic message to two particular individuals. These individuals proceeded to report the incident to the Fairfield Police Department, who in turn began an investigation. As part of the investigation, a detective from the Fairfield Police Department sent a search warrant to the internet provider, America Online, requesting the subscriber information based upon the screen name chosen by the user. The search warrant was not signed by any member of the judiciary. Upon receipt of the warrant, AOL provided the Fairfield Police with the subscriber information, which included several screen names chosen by the Plaintiff. The police officer then met with Mr. Freedman, who admitted to sending the anonymous e-mail messages. He assured the officer that he did not intend to harm any of the parties and the matter was closed. Area newspapers, who had access to the police report generated by the investigation,

published several of the screen names chosen and used by Mr. Freedman, which he claims caused him social embarrassment, and affected his standing in the community. Mr. Freedman, along with several other parties to this lawsuit, had been or continues to be involved in local politics in Fairfield County. As a result, Mr. Freedman now seeks money damages from the Fairfield Police Department, certain officers within that department, and the Town of Fairfield.

THE DEFENDANTS

By: _____
Walter A. Shalvoy, Jr. (ct25132)
Maher & Murtha, LLC
528 Clinton Avenue
Bridgeport, CT  06605
(203) 367-2700

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been sent via facsimile and DHL overnight, postage prepaid, on this 25th day of August, 2005 to the following:

Daniel J. Klau, Esq.
Pepe & Hazard LLP
Goodwin Square
225 Asylum Street
Hartford, CT 06103-4302

_____
Walter A. Shalvoy, Jr.