914 F.2d 1207; 1990 U.S. App. LEXIS 16117; 90-2 U.S. Tax Cas. (CCH) P50,501; 66 A.F.T.R.2d (RIA) 5582; 31 Fed. R. Evid. Serv. (Callaghan) 187

FRED E. HUDSPETH, et al., Petitioners-Appellants, v. COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent-Appellee

No. 88-7040

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

914 F.2d 1207; 1990 U.S. App. LEXIS 16117; 90-2 U.S. Tax Cas. (CCH) P50,501; 66 A.F.T.R.2d (RIA) 5582; 31 Fed. R. Evid. Serv. (Callaghan) 187

May 9, 1990, Argued and Submitted, Portland, Oregon
September 13, 1990, Filed

**PRIOR HISTORY:  [**1]**

Appeal from a Decision of the United States Tax Court; Tax Court Nos. 5311-77; 5500-77; 5280-78; 14025-79.

**DISPOSITION-1:** Reversed and Remanded.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant taxpayers sought review of a decision of the United States Tax Court, which upheld the position of the Commissioner of the Internal Revenue Service (commissioner) with regard to basis adjustment and timber valuation, upon which the commissioner had issued a notice of deficiency to appellants, and also granted the commissioner's motion to exclude valuation data from trial.

**OVERVIEW:** Appellant taxpayers were shareholders of a validly electing Subchapter S corporation, I.R.C. § 1361 et seq., which suffered a loss. Several years later, appellants' bonds in the corporation were redeemed. The corporation had made an I.R.C. § 631(a) election that the fair market value of lumber harvested in the taxable year be determined as of the first day of the taxable year. Appellants filed petitions in the tax court contesting notices of deficiency. The tax court upheld the deficiency finding. On appeal, the court affirmed in part and reversed in part.  I.R.C. § 1376 required appellants to reduce the basis of their stock and bonds in the amount of their pro rata share of the net operating loss. It was not appropriate to apply the tax benefit rule because that would render the net operating loss provisions of I.R.C. § 172(b)(1)(A) and (B) a nullity. The tax benefit rule applied where a later event was fundamentally inconsistent with the premise on which the deduction was based. Although valuation data was irrelevant for the purpose of showing the value of the timber, the evidence was relevant to show bias on the part of the valuation expert and should have been admitted.

**OUTCOME:** The decision of the United States Tax Court upholding the position of the Commissioner of the Internal Revenue Service (commissioner) with regard to basis adjustment and timber valuation was affirmed. The order granting the commissioner's motion to exclude valuation data from trial was reversed and remanded because the tax court should have admitted valuation data under the bias exception.

**CORE TERMS:** valuation, stock, timber, tax benefit rule, shareholder, fir, pine, fair market value, net operating loss, bias, tax year, settlement, tax benefit, pro rata share, harvested, adjust, carry forward, capital gain, taxable year, plain error, evidentiary, excluding, deficiency notice, tax treatment, redemption, weighted, compromise and settlement, abuse of discretion, taxable year ended, reasonably relied

**LexisNexis(TM) Headnotes**

*Tax Law > Federal Tax Administration & Procedure > Tax Court (IRC secs. 7441-7491)*

*Civil Procedure > Appeals > Reviewability > Notice of Appeal*

[HN1]The postmark date is deemed to be the day of filing of the notice of appeal.  I.R.C. § 7502(a)(1).

*Tax Law > Federal Taxpayer Groups > S Corporations > Computation of Income & Loss (IRC secs. 1366, 1371-1375)*

[HN2]Corporations which elect to be treated as small business corporations under the provisions of Subchapter S receive tax treatment that is similar to that of partnerships. Shareholders of a Subchapter S corporation are required to include their respective pro rata shares of the undistributed taxable income of the corporation as part of their gross income on their individual income tax returns.  I.R.C. § 1373. In addition, shareholders in a Subchapter S corporation can deduct their pro rata share of any net operating loss

914 F.2d 1207; 1990 U.S. App. LEXIS 16117; 90-2 U.S. Tax Cas. (CCH) P50,501; 66 A.F.T.R.2d (RIA) 5582; 31 Fed. R. Evid. Serv. (Callaghan) 187

of the corporation on their individual tax returns. I.R.C. § 1374.

*Tax Law > Federal Taxpayer Groups > S Corporations > Computation of Income & Loss (IRC secs. 1366, 1371-1375)*

*Tax Law > Federal Taxpayer Groups > S Corporations > Basis (IRC secs. 1361, 1367)*

[HN3]Consistent with the tax treatment contained in I.R.C. § 1373 and I.R.C. § 1374, I.R.C. § 1376 provides that a shareholder has to make certain adjustments to the shareholder's basis in his or her stock and bonds in order to reflect the pass through of corporate profits and losses. Under I.R.C. § 1376(a), the basis of the shareholder's stock is increased by the amount of any undistributed corporate income which the shareholder is required to recognize as income pursuant to I.R.C. § 1373(b). Conversely, I.R.C. § 1376(b)(1) provides that if a net operating loss is passed through to a shareholder, the net operating loss reduces the basis of the shareholder's stock (but not below zero). Additionally, if the loss exceeds the basis of the stock, any excess loss is applied to reduce the basis (but not below zero) of any corporate indebtedness held by the shareholder. I.R.C. § 1376(b)(2).

*Tax Law > Federal Taxpayer Groups > S Corporations > Computation of Income & Loss (IRC secs. 1366, 1371-1375)*

*Tax Law > Federal Taxpayer Groups > S Corporations > Shareholders (IRC secs. 1361, 1362, 1366, 1377)*

[HN4]I.R.C. § 1376(b) is intended to prevent a double deduction. In the case of a loss, the taxpayer is entitled to deduct the net operating loss on his or her tax return.

*Tax Law > Federal Income Tax Computation > Tax Accounting > Tax Benefit Rule (IRC sec. 111)*

[HN5]The tax benefit rule is a judicially developed doctrine designed to ameliorate some of the effects of the year-end accounting system that the tax system utilizes. The tax benefit rule has two components, a rule of inclusion and a rule of exclusion. The inclusionary component of the rule requires the taxpayer to recognize income when an event occurs that is fundamentally inconsistent with the premise on which a deduction previously had been based. The exclusionary aspect of the tax benefit rule requires a taxpayer to include income only to the extent that a deduction gave rise to a tax benefit.

*Tax Law > Federal Income Tax Computation > Tax Accounting > Tax Benefit Rule (IRC sec. 111)*

[HN6]While I.R.C. § 111 does not limit the scope of the tax benefit rule to bad debts, prior taxes or delinquent amounts, the tax benefit rule is limited to cases in which a later event turns out to be fundamentally inconsistent with the premise on which the deduction was initially based. Thus, where a subsequent event is not inconsistent with an earlier one, a specific, contradictory provision of the Internal Revenue Code would not be subject to the tax benefit rule.

*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*

*Tax Law > Federal Tax Administration & Procedure > Tax Court (IRC secs. 7441-7491)*

*Evidence > Procedural Considerations > Preliminary Questions*

[HN7]The tax court's evidentiary decisions regarding the admissions of evidence are reviewed for abuse of discretion.

*Evidence > Relevance > Compromise & Settlement Negotiations*

[HN8]Fed. R. Evid. 408 provides, in pertinent part: Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

*Evidence > Relevance > Compromise & Settlement Negotiations*

[HN9]Fed. R. Evid. 408 applies to situations where the party seeking to introduce evidence of a compromise was not involved in the original compromise.

*Evidence > Procedural Considerations > Objections & Offers of Proof*

*Evidence > Procedural Considerations > Rulings on Evidence*

*Civil Procedure > Appeals > Standards of Review > Plain Error*

[HN10]When the trial court excludes evidence, failure to make a timely invocation of the grounds for the

914 F.2d 1207; 1990 U.S. App. LEXIS 16117; 90-2 U.S. Tax Cas. (CCH) P50,501; 66 A.F.T.R.2d (RIA) 5582; 31 Fed. R. Evid. Serv. (Callaghan) 187

admission of the evidence renders the issue reviewable only for plain error. Fed. R. Evid. 103(a)(2), (d).

*Evidence > Witnesses > Expert Testimony*

[HN11]Fed. R. Evid. 703 permits the admission of otherwise inadmissible evidence upon which an expert properly relies for the purpose of explaining the basis of the expert's opinion. An expert may properly rely on information that is of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.

**COUNSEL:** Clarence H. Greenwood, Rappleyea, Beck, Helterline & Roskie, Portland, Oregon, for the Petitioners-Appellants.

Gary R. Allen, Attorney, Tax Division, United States Department of Justice, Washington, District of Columbia, for the Respondent-Appellee.

**JUDGES:** James R. Browning and Arthur L. Alarcon, Circuit Judges, and Dickran Tevrizian, District Judge. *

> * Honorable Dickran Tevrizian, United States District Judge for the Central District of California, sitting by designation.

**OPINIONBY:** TEVRIZIAN

John and Floreine Hudspeth

Fred and Margaret Hudspeth

In the 1967 tax year, Hudspeth Pine suffered a tax loss of $ 613,683.45. Taxpayers John and Floreine Hudspeth's pro rata share of [**3] this 1967 Hudspeth Pine loss was $ 460,262.59. Taxpayers Fred and Margaret Hudspeth's pro rata share of the Hudspeth Pine loss was $ 153,420.86. The Taxpayers claimed deductions for their respective shares of the Hudspeth Pine loss on their individual 1967 tax returns. Apparently, neither John and Floreine Hudspeth nor Fred and Margaret Hudspeth received a tax benefit for the full amount of their pro rata share of the loss. n1

- - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n1 The Taxpayers allege that Fred and Margaret Hudspeth did not receive any benefit from $ 12,671 of their $ 153,420.86 share of the 1967 Hudspeth Pine loss. The Taxpayers also contend that John and Floreine Hudspeth did not receive any tax

**OPINION:** [*1209] TEVRIZIAN, District Judge.

PRELIMINARY STATEMENT

This case presents questions concerning the proper interpretation of the tax benefit rule and Federal Rule [**2] of Evidence 408. We hold that the tax court properly construed the tax benefit rule. However, the tax court erroneously excluded certain evidence that should have been admitted under the bias exception to Federal Rule of Evidence 408.

FACTS

The appellants are shareholders of Hudspeth Pine, Inc., which, during the period relevant to the present case, was a validly electing Subchapter S corporation pursuant to Subchapter S of the Internal Revenue Code. I.R.C. § 1361 *et seq.*

At all relevant times, taxpayers/appellants John and Floreine Hudspeth owned 75% of the stock and bonds issued by Hudspeth Pine, Inc.; taxpayers/appellants Fred and Margaret Hudspeth owned the remaining 25% of the stock and bonds issued by Hudspeth Pine. (Hereinafter, appellants will be referred to collectively as "Taxpayers.")

In 1966, the Taxpayers' basis in their Hudspeth Pine stock and bonds were as follows:

| Basis in Stock | Basis in Bonds |
|---|---|
| $ 439,634.04 | $ 217,262.83 |
| 146,544.68 | 88,420.77 |

benefit for $ 314,610.00 of their $ 460,262.59 share of the 1967 Hudspeth Pine loss.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In 1973, the Hudspeth bonds were redeemed. The present dispute involves the issue of whether an adjustment should be made to the Taxpayers' basis in the stock and bonds on account of the 1967 loss. Any basis adjustments will affect the tax treatment of the bond redemption [**4] to the individual taxpayers.

There is also a dispute as to the Taxpayers' liability for the tax years ending May 31, 1973 and May 31, 1974. During Hudspeth Pine's 1973 and 1974 tax years, Hudspeth Pine was engaged in the manufacture of lumber and related products. Prior to and during the taxable years at issue, [*1210] Hudspeth Pine had made an I.R.C. § 631(a) election which required that

914 F.2d 1207; 1990 U.S. App. LEXIS 16117; 90-2 U.S. Tax Cas. (CCH) P50,501; 66 A.F.T.R.2d (RIA) 5582; 31 Fed. R. Evid. Serv. (Callaghan) 187

the fair market value of lumber harvested in the taxable year be determined as of the first day of the taxable year.

During the taxable year ended May 31, 1973, Hudspeth Pine harvested timber which qualified for treatment under I.R.C. § 631(a). Hudspeth Pine harvested 26,602.28 MBF n2 of pine and 12,139.20 MBF of fir which qualified for capital gain treatment under I.R.C. § 631(a).



- - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n2 "MBF" is a unit of measure used to describe timber value, and is equivalent to a thousand board feet of timber Scribner scale.

- - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

The Taxpayers and the Commissioner of the Internal Revenue Service (hereinafter "Commissioner") dispute [**5] the fair market value of the pine and fir. The Taxpayers claim that the fair market value of the pine and fir is substantially higher than the Commissioner's valuation. The Taxpayers desire a higher valuation in order to take advantage of the more favorable capital gain tax rates.

During the taxable year ended May 31, 1974, Hudspeth Pine harvested 29,312.79 MBF of pine and 12,296.18 MBF of fir which qualified for capital gain treatment under I.R.C. § 631(a). The Taxpayers and the Commissioner also dispute the fair market value of the fir and pine for this taxable year; the Taxpayers claimed a higher value for the pine and fir than the Commissioner.

The Commissioner issued a notice of deficiency to Fred and Margaret Hudspeth asserting a deficiency in their individual joint income tax for the 1973 tax year. The Taxpayers filed a timely petition in the tax court contesting this deficiency.

The Commissioner also issued notices of deficiency to Taxpayers John and Floreine Hudspeth which asserted deficiencies in their individual joint income tax for the 1973, 1974, and 1975 tax years. John and Floreine Hudspeth filed timely petitions in the tax court contesting each deficiency notice. [**6]

In connection with the Taxpayers' preparation for trial before the tax court, the Taxpayers retained an expert in the valuation of standing timber, Mr. Gail Thomas. Mr. Thomas submitted a report to the tax court which valued the timber in question.

In preparing the report, Mr. Thomas relied upon information that he possessed which concerned the valuation of standing timber for another taxpayer. Pine Products Corporation (hereinafter "Pine Products"). Mr. Thomas previously had been retained by Pine Products in connection with a dispute over the valuation of timber between Pine Products and the Commissioner. That case was eventually settled with no deficiency assessment against Pine Products. The final settlement contained substantially higher pine and fir values than those asserted by the Service in the Taxpayers' case.

Prior to trial, the Commissioner moved for the exclusion of the Pine Products valuation data that Mr. Thomas had used. Counsel for the Taxpayers opposed that motion. The tax court granted the Commissioner's motion to exclude the valuation data from the trial on May 14, 1984.

The Taxpayers' case was tried on May 15 to 16, 1984. The tax court issued its formal [**7] written decision on December 30, 1985. The tax court upheld the position of the Commissioner with regard to the basis adjustment issue. It also decided the timber valuation issue in the Commissioner's favor. The decision of the tax court was entered on September 30, 1987, after tax court Rule 155 calculations were completed.

The Taxpayers mailed a notice of appeal on December 28, 1987. The notice was filed timely on December 30, 1987. See I.R.C. §§ 7483, 7502. n3

- - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n3 [HN1]The postmark date is deemed to be the day of filing. I.R.C. § 7502(a)(1).

- - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

[*1211] DISCUSSION

A. *The Tax Benefit Rule* n4

- - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n4 All references to Internal Revenue Code sections in this case will be references to the Internal Revenue Code of 1954 which is the law relevant to this case.

- - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

One of the controversies in this case stems from a dispute over whether [**8]    the Taxpayers were

914 F.2d 1207; 1990 U.S. App. LEXIS 16117; 90-2 U.S. Tax Cas. (CCH) P50,501; 66 A.F.T.R.2d (RIA) 5582; 31 Fed. R. Evid. Serv. (Callaghan) 187

required to adjust their basis in their Hudspeth Pine stock and bonds pursuant to I.R.C. § 1376.

During the years relevant to this case, the Taxpayers were the sole shareholders of Hudspeth Pine. From 1962 until the fiscal year ended May 31, 1975, Hudspeth Pine was a validly electing small business corporation subject to the provisions of Subchapter S of the Internal Revenue Code.

[HN2]Corporations which elect to be treated as small business corporations under the provisions of Subchapter S receive tax treatment that is similar to that of partnerships. Shareholders of a Subchapter S corporation are required to include their respective pro rata shares of the undistributed taxable income of the corporation as part of their gross income on their individual income tax returns. I.R.C. § 1373. In addition, shareholders in a Subchapter S corporation can deduct their pro rata share of any net operating loss of the corporation on their individual tax returns. I.R.C. § 1374.

[HN3]Consistent with the tax treatment contained in I.R.C. § 1373 and I.R.C. § 1374, I.R.C. § 1376 provided that a shareholder had to make certain adjustments to the shareholder's basis in his [**9] or her stock and bonds in order to reflect the pass through of corporate profits and losses. Under I.R.C. § 1376(a), the basis of the shareholder's stock was increased by the amount of any undistributed corporate income which the shareholder was required to recognize as income pursuant to I.R.C. § 1373(b). Conversely, I.R.C. § 1376(b)(1) provided that if a net operating loss was passed through to a shareholder, the net operating loss would reduce the basis of the shareholder's stock (but not below zero). Additionally, if the loss exceeded the basis of the stock, any excess loss was applied to reduce the basis (but not below zero) of any corporate indebtedness held by the shareholder. I.R.C. § 1376(b)(2).

The purpose of § 1376(a) was to prevent a double taxation of income. If there was no basis adjustment, the taxpayer would be liable for tax on the pro rata share of income of the corporation and would also be liable for tax upon gain from a sale of the stock, to the extent that earnings and profits were not distributed to the taxpayer.

[HN4] I.R.C. § 1376(b) is intended to prevent a double deduction. In the case of a loss, the taxpayer is entitled to deduct the net operating [**10] loss on his or her tax return. If § 1376(b) were not present, the taxpayer could also have deducted a capital loss on the sale of any stock because such loss would not be incorporated into the basis of the stock; rather it would

have been incorporated into the market value of the stock. n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n5 For example, suppose a taxpayer established a Subchapter S corporation with an initial capital investment of $ 200,000. Assume that the corporation lost $ 100,000 in its first year. Taxpayer could deduct the $ 100,000 loss pursuant to I.R.C. § 1374. Given the loss of $ 100,000, the value of the corporation is $ 100,000. However, if the taxpayer was not required to adjust his basis in the stock to reflect the loss, his basis would remain at $ 200,000. If taxpayer then sold his interest in the company, he would receive the $ 100,000 value of the company. He would then claim a $ 100,000 capital loss since his basis in his interest in the company was $ 200,000.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In the present case, I.R.C. § 1376 required the Taxpayers [**11] to reduce the basis of their stock and bonds in the amount of their pro rata Share of the net operating loss. In the case of John and Floreine Hudspeth, they had a 1966 basis of $ 439,634.00 in their Hudspeth Pine stock and a 1966 basis of $ 217,263.00 in their Hudspeth Pine bond. Under I.R.C. § 1376, their basis in the stock would be reduced to zero and the remaining loss of $ 20,629.00 would be applied to reduce their basis in the bond.

In the case of Fred and Margaret Hudspeth, these appellants had a 1966 basis in their stock of $ 146,545.00 and a 1966 basis in their bond of $ 88,421.00. Under I.R.C. § 1376, their basis in the stock would be [*1212] reduced to zero and the remaining loss of $ 6,876.00 would be applied to reduce their basis in the bond. The tax court held that the Taxpayers were required to make the basis adjustments in their stock and bonds called for in I.R.C. § 1376.

The problem that arises in this case is that the Taxpayers did not receive the full benefit of their net operating loss deduction either in the 1967 tax year or in successive tax years. The Taxpayers contend that the tax benefit rule should operate to prevent the I.R.C. § 1376 basis [**12] adjustments to the extent that the Taxpayers did not receive a tax benefit from the deductions.

914 F.2d 1207; 1990 U.S. App. LEXIS 16117; 90-2 U.S. Tax Cas. (CCH) P50,501; 66 A.F.T.R.2d (RIA) 5582; 31 Fed. R. Evid. Serv. (Callaghan) 187

This contention is appealing on its face. The purpose of I.R.C. § 1376 is to adjust the basis of the stock and bonds in order to reflect the economic impact of a gain or loss on the value of the Subchapter S corporation's stock and bonds. For tax purposes, there would seem to be no reason to adjust the basis if the Taxpayer did not receive any benefit from the loss.

[HN5]The tax benefit rule is a judicially developed doctrine designed to ameliorate some of the effects of the year-end accounting system that the tax system utilizes. The tax benefit rule has two components, a rule of inclusion and a rule of exclusion. The inclusionary component of the rule requires the taxpayer to recognize income when an event occurs that is fundamentally inconsistent with the premise on which a deduction previously had been based. _Hillsboro Nat. Bank v. CIR_, 460 U.S. 370, 103 S. Ct. 1134, 75 L. Ed. 2d 130 (1983) (_Hillsboro_). The exclusionary aspect of the tax benefit rule requires a taxpayer to include income only to the extent that a deduction gave rise to a tax benefit. _Hillsboro_, 460 U.S. at 388, 103 S. Ct. at 1145. [**13]

Although the tax benefit rule would seem to logically exclude the gain on the redemption of the bonds to the extent that the Taxpayers did not receive a tax benefit, it is not appropriate to apply the tax benefit rule in this case. In the first place, the application of the tax benefit rule to the present case would render the net operating loss provisions of I.R.C. § 172(b)(1)(A) and (B) a nullity. The version of I.R.C. § 172 in effect during the period relevant to this case allowed an individual to carry back for three years and carry forward for five years net operating losses. If the Taxpayers are allowed to use the tax benefit rule in the present case, they effectively would be allowed to carry forward the net operating loss beyond the five year carry forward period. Theoretically, they would be able to carry the loss forward indefinitely, recovering the benefit of the loss upon the disposition of their stock and/or bonds.

The Taxpayers rely on _Dobson v. Comm._, 320 U.S. 489, 64 S. Ct. 239, 88 L. Ed. 248 (1943) (_Dobson_), and _Ridge Realization Corp. v. CIR_, 45 T.C. 508 (1966) (_Ridge Realization_), to support their position. However, [**14] neither _Dobson_ nor _Ridge Realization_ assist the Taxpayers' case. In both of these cases, the Commissioner's adjustment to the Taxpayer's basis was based on I.R.C. § 113. n6 Section 113 provided that "'Proper adjustment . . . shall in all cases be made' for the items named if 'properly chargeable to capital account.'" _Dobson_, 320 U.S. at 504, 64 S. Ct. at 247-48. There were no provisions specifying what constituted a "proper adjustment." In

the present case, however, I.R.C. § 1376 specifies what adjustments are to be made to the basis of Taxpayers' stock and bonds. Indeed, the court in _Dobson_ specifically noted that I.R.C. § 113 did "not specify the circumstances or manner in which adjustment of the basis are to be made . . ." _Dobson_, at 503-04, 64 S. Ct. at 247.



- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n6 I.R.C. § 113 is the predecessor of the present I.R.C. § 165.

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

Finally, the Taxpayers assert that I.R.C. § 111 and Treas. Reg. § 1.111-1(a) required the tax court to apply the exclusionary [**15] part of the tax benefit rule to the Taxpayers' case. We reject this argument. [HN6]While § 111 does not limit the scope of the tax benefit rule to bad debts, prior taxes or delinquent amounts, _Hillsboro_ 460 U.S. at 388, the tax benefit rule _is_ limited to cases in which a later event turns out to be fundamentally inconsistent with the premise on which the deduction [*1213] was initially based. _Id._ at 383. Thus, where the subsequent event was not inconsistent with an earlier one, the Court held that a specific, contradictory provision of the Code would not be subject to the tax benefit rule. _Id._ at 389-90, _citing Nash v. United States_, 398 U.S. 1, 26 L. Ed. 2d 1, 90 S. Ct. 1550 (1970). Here, when the Taxpayers realized income upon the redemption of their bonds, there was no fundamental inconsistency with the original deductions, which were based only on the corporation's net losses. Therefore, the tax benefit rule partially codified in § 111 does not apply.

Therefore, the tax court was not in error in holding that the tax benefit rule did not apply to the present case.

B. *The Exclusion of the Pine Products* [**16] *Valuation Data*

1. Standard of Review

The Taxpayers argue that this court should review the tax court's evidentiary decisions _de novo_. The Taxpayers contend that the trial court excluded the evidence of the Pine Products timber valuation on grounds "separate and apart from the Rules of Evidence." Consequently, the Taxpayers believe that a _de novo_ review of the tax court's evidentiary determination is warranted. However, the appellants' contention is not supported by the record. The tax court based its decision on the relevancy of the

914 F.2d 1207; 1990 U.S. App. LEXIS 16117; 90-2 U.S. Tax Cas. (CCH) P50,501; 66 A.F.T.R.2d (RIA) 5582; 31 Fed. R. Evid. Serv. (Callaghan) 187

evidence presented. Thus, the tax court excluded the evidence on the basis of Federal Rule of Evidence 402.

[HN7]The tax court's evidentiary decisions regarding the admissions of evidence are reviewed for abuse of discretion. _Brocklesby v. United States, 767 F.2d 1288, 1292 n.1 (9th Cir. 1985)_, cert. denied 474 U.S. 1101, 88 L. Ed. 2d 918, 106 S. Ct. 882 (1986), citing _Paddack v. Dave Christensen, Inc., 745 F.2d 1254, 1258 n.5 (9th Cir. 1984)._

2. Federal Rule of Evidence 408

The Taxpayers contend that the tax court's ruling excluding the evidence of the Pine Products' valuation data [**17] was erroneous and that the evidence should have been admitted to prove the value of the Hudspeth timber. However, [HN8]Federal Rule of Evidence 408 provides, in pertinent part:
Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. . . . This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed.R.Evid. 408. n7

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n7 Although the Tax Court did not base its ruling excluding the Pine Products valuation data on Federal Rule of Evidence 408, we may affirm on any basis that has legal merit and factual support in the record. _Lofton v. Heckler, 781 F.2d 1390, 1392 (9th Cir. 1986)._

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

[**18]
The Taxpayers contend that Rule 408 is inapplicable to the present case because they were not parties to the Pine Products settlement and the claims involved in the present case are not the same claims that were involved in the Pine Products case. The Taxpayers' contention that Rule 408 does not apply when third party compromises are involved is not tenable. [HN9]Rule

408 does apply to situations where the party seeking to introduce evidence of a compromise was not involved in the original compromise. _United States v. Contra Costa County Water District, 678 F.2d 90, 92 (9th Cir. 1982)_ (Contra Costa).

Two principles underlie Rule 408: (1) "the evidence [of compromise] is irrelevant, since the offer may be motivated by desire for peace rather than from any concession of weakness of position;" (2) "[a] more consistently impressive ground is promotion [*1214] of the public policy favoring the compromise and settlement of disputes." n8 Fed.R.Evid. 408 advisory committee's note. Admitting the Pine Products valuation data to prove the Taxpayers' valuation of the timber would undermine the policies underlying Rule 408. Settlements by the Commissioner would be [**19] inhibited if the Commissioner would have to review whether a settlement could be binding in subsequent cases. The tax court was not in error in excluding the Pine Products valuation data as evidence of the value of the Hudspeth timber.

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n8 The Taxpayers attempt to distinguish their situation from the Contra Costa case by claiming that in the Contra Costa case the compromise involved the same factual situation. However, that distinction does not assist the Taxpayers in their case because the Taxpayers' case also involves the same factual situation. In both cases, the issue was the valuation of timber taken from the same forest and timber that was of similar quality.

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

The Taxpayers also sought to admit the Pine Products valuation data for the purpose of showing bias on the part of the Commissioner. Rule 408 specifically provides for the admissibility of compromise and settlement negotiations for the purpose of showing bias or prejudice of a witness.

In both the Pine Products case and the Taxpayers' [**20] case, the same valuation expert handled the valuation issues. n9 However, the figures arrived at in the two cases were quite disparate even though the taxpayers in both cases were similarly situated. n10 The data was relevant to the issue of whether there was bias, especially given the wide disparity between the two figures n11 and should have been admitted by the trial court.

914 F.2d 1207; 1990 U.S. App. LEXIS 16117; 90-2 U.S. Tax Cas. (CCH) P50,501; 66 A.F.T.R.2d (RIA) 5582; 31 Fed. R. Evid. Serv. (Callaghan) 187

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 The valuation expert for the Commissioner was Mr. Ken Taylor. Mr. Taylor approved the Pine Products timber values contained in the Pine Products settlement. Mr. Taylor was also the Commissioner's valuation expert for the Taxpayers' trial.

n10 Both Pine Products and Hudspeth Pine purchased their timber from the same national forest. In addition, the Pine Products and Hudspeth Pine sawmills were located within two and one half miles of each other; they manufactured the same type of product; they sold through the same market; they used the same labor market; and they used the same transportation facilities. The Pine Products valuation was made as of January 1, 1973, five months prior to the beginning of the 1974 Hudspeth fiscal year and seven months after the beginning of the 1973 Hudspeth fiscal year. Finally, the parties stipulated to the fact that the Service's settlement with Pine Products only concerned the valuation of the timber.

[**21]

n11 At trial, the Service contended that the Taxpayers' pine had a weighted average fair market value of $ 54.43 per MBF for the 1973 tax year. This value was less than 39% of the Pine Products settlement value. The Service contended that the Taxpayers' pine for the 1974 tax year had a weighted average fair market value of $ 94.65, a value less than 68% of the Pine Products pine value. With regard to the fir, the Service contended that the fir was worth a weighted average fair market value of $ 24.36 per MBF, a value of approximately 30% of the Pine Products settlement value. For the 1974 tax year, the Service recommended a weight average fair market value of $ 78.31 per MBF for the fir, approximately 96% of the value placed of the Pine Products fir.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The trial court's reliance on *Greenberg's Express, Inc., et al. v. CIR*, 62 T.C. 324 (1974) was not well founded.

In *Greenberg's Express* petitioners challenged the allegedly discriminatory manner in which they had been chosen for an examination leading to a deficiency notice. They did not challenge the accuracy or propriety [**22] of the notice itself. The tax court held evidence regarding the Commissioner's motives was irrelevant and hence inadmissible because petitioner's tax liability would be determined de novo at trial. *Id.* at 328. Here, petitioners challenged the accuracy of the deficiency notice, not the motives of the I.R.S. in issuing it.

While the Pine Products valuation data was irrelevant for the purpose of showing the value of the timber, the evidence was relevant to show bias on the part of the Commissioner's valuation expert. Since the Commissioner's case hinged on the credibility and reliability of his valuation expert, the tax court's exclusion of the Pine Products valuation data was prejudicial. We hold that the tax court's refusal to consider the Pine Products valuation data [*1215] was an abuse of discretion. n12

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n12 This is especially true in light of the fact that the tax court tries its cases without a jury.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

3. Federal Rule of Evidence 703

The Taxpayers also argue that the trial court's [**23] refusal to admit the Pine Products data as foundation evidence in support of Mr. Thomas's expert testimony constitutes an independent grounds for reversal of the trial court.

[HN10]When the trial court excludes evidence, failure to make a timely invocation of the grounds for the admission of the evidence renders the issue reviewable only for plain error. Fed.R.Evid. 103(a)(2), (d); *cf. Brocklesby v. United States*, 767 F.2d 1288, 1293 n.5 (9th Cir. 1984).

In this case, the Taxpayers did not invoke Rule 703 as a grounds for admitting the Pine Products data until it filed its motion for reconsideration on January 2, 1987. This invocation was made over two years and six months after trial and cannot be considered timely. Thus, the tax court's evidentiary ruling can be reviewed only for plain error.

[HN11]Rule 703 permits the admission of otherwise inadmissible evidence upon which an expert properly

914 F.2d 1207; 1990 U.S. App. LEXIS 16117; 90-2 U.S. Tax Cas. (CCH) P50,501; 66 A.F.T.R.2d (RIA) 5582; 31 Fed. R. Evid. Serv. (Callaghan) 187

relies for the purpose of explaining the basis of the expert's opinion. *Paddack v. Dave Christensen, Inc., 745 F.2d 1254, 1261-62 (9th Cir. 1984).* An expert may properly rely on information that is of a type reasonably relied upon by experts in the particular field [**24] in forming opinions or inferences upon the subject. Fed.R.Evid. 703.

The tax court did not commit plain error in refusing to admit the Pine Products data. The Pine Products data was the result of a compromise agreement between the Commissioner and Pine Products. Given the fact that settlements are often consummated for reasons other than the merits of the case, the evidence might not be reasonably relied upon by experts.

CONCLUSION

The tax court correctly held that the tax benefit rule did not apply to the Taxpayers' case. However, the tax court should have admitted Pine Products valuation data under the bias exception to Federal Rule of Evidence 408.

REVERSED and REMANDED.

401 F.2d 639; 1968 U.S. App. LEXIS 5360

Marquetta Ann JACKSON, Administratrix of the Estate of Jerry Ray Jackson, Deceased, Plaintiff-Appellant, v. SHELL OIL COMPANY, Defendant-Appellee. James Norman WILMOTH, Plaintiff-Appellant, v. SHELL OIL COMPANY, Defendant-Appellee

Nos. 18254, 18255

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

401 F.2d 639; 1968 U.S. App. LEXIS 5360

October 4, 1968

**DISPOSITION-1: [\*\*1]**

Affirmed.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiffs, personal representatives and survivors of passengers killed in an automobile accident, appealed from a judgment of the United States District Court for the Western District of Tennessee, which, upon a jury verdict, found against plaintiffs in their action against defendant oil company, alleging that the negligence of a driver of one of the oil company's trucks resulted in the accident that killed the passengers.

**OVERVIEW:** The passengers were killed when an oil company truck hit the rear of the car in which they were riding, which car had stopped because the driver could not see due to heavy fog. The truck was slowing down due to the fog when it hit the car. The court affirmed the judgment against plaintiffs. The main thrust of plaintiffs' allegation of negligence was that the fog was there to be seen, that the company's driver saw or should have seen it, and that his conduct in entering the fog without slowing down was a proximate cause of the accident. However, there was much testimony from which the jury could have concluded that the oil company's driver neither knew nor could have known of the existence of fog before it blinded his view. Moreover, there was no error in the charge to the jury. The charge fairly presented plaintiffs' principal contentions and the law applicable thereto. Also, there was no error in the trial court's denial of plaintiffs' requests to charge on a variety of statutes and ordinances.

**OUTCOME:** The court affirmed the judgment.

**CORE TERMS:** driver, fog, windshield, distance, highway, collision, passenger, speed, wrecker, smog, hit, assured, midnight, decedents, driving, street, truck, miles, lane, reversible error, failure to use, encountered, proceeded, instantly, manage, chart, drive, brake, scene, rear

**LexisNexis(TM) Headnotes**

*Torts > Transportation Torts > Motor Vehicles*

*Torts > Negligence > Negligence Generally*

[HN1]In Tennessee it is no longer true that it is negligence as a matter of law to drive an automobile at such a speed as to be unable to stop within the distance which is measured by the driver's range of vision. The assured clear distance rule does not apply as a matter of law where the motorist encounters a dangerous situation which in the exercise of reasonable care he had no reason to expect.

**JUDGES:** Edwards, Peck and Combs, Circuit Judges.

**OPINIONBY:** EDWARDS

**OPINION: [\*639]** EDWARDS, Circuit Judge.

Plaintiffs appeal from an adverse jury verdict after trial before the United [\*640] States District Court for the Western District of Tennessee. Plaintiffs are the personal representatives and survivors of two of the four persons who were killed in a strange and tragic accident on December 4, 1965, on the outskirts of Memphis, Tennessee. The accident occurred at 12:55 a.m. on Interstate Highway 240, which bounds the perimeter of Memphis. The accident was triggered by drifting ground fog. On the same night between 10:15 p.m. and midnight there were 35 accidents on the same stretch of highway and within ten minutes after this accident there were six more.

Plaintiffs' decedents were two of four people seated in the rear seat of a passenger automobile. All four were killed instantly when defendant Shell Oil's truck carrying 9,000 gallons of gasoline ran into their car from the rear. Plaintiff's brief describes the essential facts of the accident thus:

"The highway was covered with fog and smog in the vicinity of the accident, and the automobile in which [\*\*2] decedents were passengers came to a stop in the fog when its driver could no longer see ahead, and was almost instantly struck from the rear by defendant's

Tractor Trailer Unit, traveling between 40 and 50 miles per hour in the same east bound lane."

The undisputed facts show that plaintiffs' car had just passed the Shell Oil truck and returned to the same lane in which it was traveling when the fog was encountered. They also show the opposing reactions of the two fog-blinded drivers. The driver of the passenger automobile stopped in the center lane of the interstate highway while the oil truck driver started to slow down by "feathering" his truck's air brakes.

It should be noted also that the undisputed testimony of plaintiffs' driver and defendant's driver set the Shell Oil truck speed just before it encountered the fog at approximately 45 miles per hour, and that the legal speed limit at that point was 65 miles per hour.

The main thrust of plaintiffs' allegation of negligence, however, is that the fog was there to be seen, that defendant's driver saw or should have seen it, and that his conduct in entering the fog without slowing down was a proximate cause of the [**3] accident.

The District Judge charged the jury on plaintiffs' basic theory of negligence in part as follows:

> "It is the contention of the plaintiffs, James Norman Wilmoth and Marquetta Ann Jackson, that Gletus Wilmoth and Jerry Ray Jackson were passengers in the Ford automobile being driven by John W. Hendricks at approximately 12:55 A.M. on December 4, 1965, and that their respective deaths were instantly caused when the tractor-trailer of the defendant, Shell Oil Company, being driven by its servant, William E. Powell, struck the automobile from the rear on Interstate 240, between the Airways and Lamar interchanges.

> "It is the contention of these plaintiffs that William E. Powell, driver of the Shell Oil vehicle, was guilty of proximate negligence in his failure to use reasonable and ordinary care in the manner in which he drove his vehicle in the circumstances existing at the time of the collision.

> "These plaintiffs contend that their vehicle passed the gasoline truck on Interstate 240 in the center lane and proceeded eastwardly ahead of the gasoline truck; that William E. Powell was negligent in the manner in which he drove his vehicle, considering atmospheric conditions, [**4] visibility, speed and other factors then existing.

* * *

"Negligence generally means the failure to use reasonable and ordinary care under the circumstances. It may be an act of omission or an act of commission. It may be the failure to do something which should have [*641] been done under the circumstances, or the doing of something which should not have been done under the circumstances. What might be an act of negligence under one set of circumstances might not be an act of negligence under other circumstances. So when you come to consider which of the passengers and drivers were negligent, and whether any, all or none of them were, you will bear in mind the definition I have given you: Negligence generally means the failure to use reasonable and ordinary care.

* * *

"You should consider all circumstances which from the proof you find to have existed at the time of the collision, and as those facts were known, or should have been known, in the exercise of reasonable and ordinary care to the parties involved. You should consider the unusual circumstances of fog and smog on Interstate 240 on December 4, 1965, including its density, its noticeability in the vicinity of [**5] the collision, the visibility of the drivers of the vehicles, the conduct of the drivers and passengers in view of all of the circumstances which they knew or should have known existed at and prior to the time of the collision. You should consider the speed of the vehicles, the possibility of avoiding injury to others using the highway, and the prudence required in the exercise of reasonable and ordinary care with regard to stopping or continuing to move in the circumstances.

* * *

"With reference to how one should drive, manage, control or operate a vehicle under the common law, that is, the law exclusive of any State statute, one must drive or manage the automobile or vehicle he is driving with reference to speed, control and position he is occupying on the highway or street in the exercise of reasonable and ordinary care. The law requires that he must keep a proper lookout

401 F.2d 639; 1968 U.S. App. LEXIS 5360

and requires that he must keep the vehicle under proper control and position in the street, and that he exercise reasonable and ordinary care in order that he may not run the vehicle he is driving into someone else lawfully using the highway or street, and so manage his vehicle that he will not cause damage [**6] to the person or property of another."

He also charged specifically on a state statute prohibiting following too closely, T.C.A. § 59-824, and instructed the jury that the negligence of the driver of the passenger car (if any) could not be imputed to plaintiff's decedents.

The only real dispute of fact in this case appears to be whether Shell's driver knew or should have known of the fog before he entered it. A newspaper reporter for the Memphis Commercial Appeal testified as follows:

> "Q.  In the course of your investigation, did you talk to Mr. Powell?
>
> "A.  Yes, sir.
>
> "Q.  On how many occasions did you talk to Mr. Powell?
>
> "A.  One time.
>
> "Q.  Did you ask him questions about how the accident happened?
>
> "A.  Yes, sir.
>
> "Q.  I will ask you if he made -- pursuant to your questions, if he made this response:
>
> "'When I came over the Airway overpass eastbound it was clear.'
>
> "Did he make that statement to you?
>
> "A.  Yes, sir.
>
> "Q.  Did he also make the following statement:
>
> "'Down below ahead I could not see any lights, just a sea of fog.'
>
> "A.  Yes, sir."

This was, however, the only testimony in this entire record which tended to establish that [**7] defendant's driver had actual knowledge of the fog. He himself flatly denied the "sea of fog" statement quoted above and denied that he had any warning at all until he was actually in it.

[*642] Defendant's driver's testimony on this score has support in this record from at least three witnesses who were not themselves involved in the accidents.

State Police Trooper Rinehart had been called to the scene of this accident by the 35 or more crashes which had occurred between 10:15 p.m. and midnight. He estimated that 12 to 15 wreckers and six ambulances had been on the scene and police squad cars with flashers had been stationed so as to warn traffic approaching the fog area. He testified that everything cleared at about midnight -- the warning cars were withdrawn and the wreckers had just finished pulling cars off. He was in his police car in the median strip. He testified:

> "Q.  Just tell us, officer -- I won't lead you -- tell us what happened there right before this Shell Oil Company accident.
>
> "A.  Well, one thing, there were three wrecker drivers in my car. I think probably the best way to explain this -- there were three wrecker drivers in my car and when this smog [**8] came in, as it was moving in, one of them stated 'Well, here it is again.' And it wasn't -- didn't seem like over ten or fifteen seconds or maybe not that long, until we heard this bang and clatter of metal and tires, like had a load on them, or scuffing or skidding, at which time they bailed out of my car, and I went to turn around, and went back up to the direction from which we heard this impact."

One of the wrecker drivers in addition to supporting Rinehart's comments about the suddenness of the onset of fog just before this accident, also testified about conditions prior to midnight:

> "Q.  Tell the jury whether or not before driving into this valley you could tell there was fog in there.
>
> "A.  Well, you couldn't tell it until you was right into it that you hit it. Of course, I knew I was going to be into it so I was expecting it.
>
> "Q.  Could you see it actually with your eyes until it hit the windshield?
>
> "A.  No, couldn't hardly tell you were in it before it hit you there."

A commercial photographer who was called to the scene after the Shell Oil tanker collision also described the sudden entrance into fog:

> "Q.  Go ahead, Mr. Cadwell, and tell the jury and [**9] the Court what you saw,

what was your first notice in regard to any fog, or smog, or smoke, or otherwise.

"A. As I proceeded down the hill, which is a slight downgrade, really I was only driving thirty-five or forty miles an hour at the time because they had told me to proceed with caution and I didn't know exactly how far the accident scene was, I didn't see anything until all of a sudden I was already into the fog or smog. And so I stopped and pulled over, and proceeded possibly a few feet until I could find a parking spot on the side of the road."

The most decisive evidence, however, was probably that of Hendricks, the driver of the passenger car in which plaintiffs' decedents were riding. He testified:

"Q. All right, tell the Court and jury when you reached that point and encountered that light fog, what did you do?

"A. Well, when I hit the light fog, I let off of my accelerator pedal, and I went a good ways -- well, ten or twelve car lengths in this, and it cleared up. It didn't completely clear up, got real light again, real light. Then I went down maybe four or five car lengths in light fog. Then I hit this, just like a blanket -- somebody threw a dark [**10] blanket over the windshield there, and immediately got on the brakes.

* * *

"Q. Could you see out beyond the windshield?

"A. That is about as far as I could see, the windshield.

"Q. Just the windshield?

"A. The windshield. Say, for instance, you are going down the street [*643] and wind blow a newspaper up over the windshield, the wind pick up something, blow it up over the windshield, you know, just couldn't see anything."

We have recited this testimony at some length because it appears to us that these are the crucial facts against which most of the legal issues must be resolved. Indeed, what we have already pointed out serves to convince us that appellants' argument that the jury verdict was against the preponderance of the evidence must fail. There was evidence from which the jury could have concluded that defendant's driver neither knew nor could have known of the existence of fog before it blinded his view.

Similarly, we feel that what has been said requires our denying reversal for new trial on the ground that the District Judge failed to outline plaintiffs' theory to the jury and merely gave a "bare bone" charge. We feel that what we have quoted [**11] of the record and the charge serves to indicate that the District Judge fairly presented plaintiffs' principal contentions and the law applicable thereto.

Appellants also complain that the District Judge did not grant all of their requests to charge on a variety of statutes and ordinances. Under the facts of this case we find no error in respect to the District Judge's denial of any of these charges. We note specifically that if Tennessee had maintained its assured clear distance rule in its original form, as set forth in West Coast Construction Co. v. White, 130 Tenn. 520, 172 S.W. 301 (1914), that a charge on this topic might well have been required. But the rule was substantially modified as long ago as 1933 in Main Street Transfer & Storage Co. v. Smith, 166 Tenn. 482, 63 S.W.2d 665 (1933). Much more recently the Supreme Court of Tennessee said:

"It has been considered by the profession generally that Main St. Transfer and Storage Company v. Smith modified the assured clear distance rule to the extent that [HN1]it is no longer true that it is negligence as a matter of law to drive an automobile at such a speed as to be unable to stop within the distance [**12] which is measured by the driver's range of vision. Any other interpretation of Main St. Transfer and Storage Co. v. Smith seems illogical and unconvincing when thought of in connection with the right of a motorist to assume that others on the highway will be obeying the traffic laws. This is only another way of saying that the assured clear distance rule does not apply as a matter of law where the motorist encounters a dangerous situation which in the exercise of reasonable care he had no reason to expect." Halfacre v. Hart, 192 Tenn. 342, 346, 241 S.W.2d 421, 423 (1951).

See also Virginia Avenue Coal Co. v. Bailey, 185 Tenn. 242, 205 S.W.2d 11 (1947).

We cannot say that the omission of the assured clear distance rule as it now stands in Tennessee law was reversible error in this case.

Similarly, we find no reversible error in the District Judge's refusal to admit a driver training manual

published by defendant which contained a stopping distance chart for various speeds in relation to equipment such as was involved here. Although we think the general standards of this chart were admissible for comparison to the actual facts of this case, **[\*\*13]** we cannot consider its exclusion to have been prejudicial. Undisputed testimony shows that the integrity of the entire air brake system on the tractor-trailer unit was substantially affected by rupture by the collision of an air line leading to the left front brake. Such a major alteration of the assumptions upon which the chart was based would make its testimonial value very slight under the facts of this case.

Plaintiffs were not entitled to have admitted in evidence a compromise settlement which defendant had made with other parties involved in this same accident. Lewis v. Dixie-Portland Flour Mills, Inc., 356 F.2d 54 (6th Cir. 1966). **[\*644]** Nor do we find any error in the District Judge's order of consolidation of cases such as these involving claims of death, injury and property damage arising out of one accident. Fed.R.Civ.P. 42(a). This is particularly true in the absence of objection to such consolidation or of any motion for severance.

In our view plaintiffs were not entitled to a directed verdict, and review of the Judge's charge taken as a whole discloses no reversible error.

All in all, we conclude that plaintiffs had a fair jury trial and that **[\*\*14]** the facts developed might well convince a succession of juries to the same result.

Affirmed.

UNITED STATES OF AMERICA, Plaintiff-Appellee, v. CONTRA COSTA COUNTY WATER DISTRICT, Defendant-Appellant

No. 81-4095

UNITED STATES COURT OF APPEALS, NINTH CIRCUIT

678 F.2d 90; 1982 U.S. App. LEXIS 19020

April 16, 1982, Argued
May 24, 1982, Decided

**PRIOR HISTORY: [**1]**

Appeal from the United States District Court for the Northern District of California.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant water district appealed from a summary judgment of the United States District Court for the Northern District of California, which was entered in favor of plaintiff federal government in a suit to recover costs for a retaining wall built to prevent the collapse of an irrigation canal. The district court held that the retaining wall constituted normal and necessary maintenance for which the water district was liable.

**OVERVIEW:** Plaintiff federal government filed an action against defendant water district to recover the costs of building a retaining wall that was necessary to prevent the collapse of the bank of an irrigation canal which was used to supply water to the water district. By reason of a contract with the federal government for the water, the water district was compelled to pay for canal maintenance and operation. The district court granted summary judgment in favor of the federal government, concluding that the contract was unambiguous on the subject of the water district's liability for repairs and maintenance and that the work was reasonably necessary for the canal's continued use. The court affirmed, holding that summary judgment was proper because there was no ambiguity in the contract and the expenditure was a maintenance cost as a matter of law. The court held that the district did not err in refusing to take judicial notice of a settlement with the landowner whose actions imperiled the strength of the canal, thus necessitating the retaining wall. The court held that Fed. R. Evid. 408 precluded use of the settlement even though the landowner was not a party.

**OUTCOME:** The court affirmed the summary judgment, which was entered in favor of plaintiff federal government in a suit to recover the cost of a retaining wall in a canal used to supply water to defendant water district. The court found that there was no ambiguity in the contract that held the water district liable for maintenance costs and that the expenditure was a maintenance cost as a matter of law.

**CORE TERMS:** settlement, canal, expenditure, negotiations, summary judgment, retaining wall, matter of law, chargeable, continued use, public policy, inadmissibility, unambiguous, irrigation, favoring

**LexisNexis(TM) Headnotes**

*Civil Procedure > Summary Judgment > Summary Judgment Standard*

[HN1]Summary judgment can be granted only where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must determine in viewing the evidence in a light most favorable to appellant whether there is a genuine issue of material fact, and, if not, whether the movant is entitled to summary judgment as a matter of law.

*Civil Procedure > Summary Judgment > Summary Judgment Standard*

*Contracts Law > Contract Interpretation > Ambiguities & Contra Proferentem*

[HN2]In the interpretation of a contract, it is a question of law whether the contract language is ambiguous. Summary judgment is appropriate only if the contract is unambiguous.

*Governments > Public Improvements > Sanitation & Water*

[HN3]Expenditures made to maintain an irrigation system as an efficient going concern and to operate it effectively to the end for which it was designed, are, at least generally, maintenance and operating expenses. Expenditures necessary to replace faulty original construction or to increase the system's capacity are chargeable to "construction" costs. However, where the irrigation system is completed and expenditures are

678 F.2d 90; 1982 U.S. App. LEXIS 19020

required to remedy conditions brought about by the use of the system to maintain it, such expenditures are chargeable to "operation and maintenance."

*Evidence > Relevance > Compromise & Settlement Negotiations*

[HN4]Fed. R. Evid. 408 states that settlement negotiations are not admissible to prove liability for or invalidity of the claim or its amount.

**COUNSEL:** Jeffrey D. Polisner, Walnut Creek, Cal., for defendant-appellant.

Charles M. O'Connor, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

**JUDGES:** Before GOODWIN and POOLE, Circuit Judges, and DAVID W. WILLIAMS, n* District Judge.

> * Honorable David W. Williams, United States District Judge, Central District of California, sitting by designation.

**OPINIONBY:** WILLIAMS

**OPINION: [*91]**

The United States owns the Contra Costa Canal System (Canal) and by reason of a contract with the Contra Costa Water District (District) supplied the latter with its water needs. Article 5(d)(1) of the contract compels the District to pay the United States for canal operation and maintenance costs. Hanford, an adjoining land owner to the canal, performed work on his land that imperiled the strength of the canal, and under emergency conditions the Bureau of Reclamation built a 600' retaining wall to prevent partial collapse of the bank. The total cost was $ 116,558.08. The government made a demand upon the District to pay a portion of this cost upon the theory that the retaining wall [**2] constituted normal and necessary maintenance to permit continued use of the canal. The District refused payment, contending that the wall was a capital improvement and not ordinary maintenance. This suit followed.

In 1972, the United States sued Hanford for the cost of the wall in a separate action which was eventually settled for $ 75,000. n1 Hanford paid the United States $ 30,000 and received an offset in the amount of $ 45,000 for diminution of the value of his property.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

n1. United States v. Hanford, Civil No. C 72-246 SC.

- - - - - - - - - - - - End Footnotes- - - - - - -
- - - - - -

In the suit against the District the United States credited the defendant with the $ 30,000 it received from Hanford and sought to recover the balance of $ 71,236.79 plus interest. Each side filed motions for summary judgment and the trial judge granted judgment in favor of the United States, concluding that the contract was unambiguous on the subject of the District's liability for repairs and maintenance and that the work done was reasonably necessary for the canal's continued use. [**3]

On this appeal, appellant raises as issues:

> (1) Whether the nature of the work was such as called for a fact determination upon trial of the disputed issue of contract interpretation, and

> (2) Whether the Court should have taken judicial notice of the settlement between the government and Hanford and allowed appellant a credit of the full $ 75,000 instead of only $ 30,000.

I. Summary Judgment

It is well established that [HN1]summary judgment can be granted only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.Rules of Civ.Proc. Rule 56(c); Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 488, 7 L. Ed. 2d 458 (1962); SEC v. Murphy, 626 F.2d 633, 640 (9th Cir. 1980); Vickery v. Fisher Governor Co., 417 F.2d 466, 468 (9th Cir. 1969).

We must determine in viewing the evidence in a light most favorable to appellant whether there is a genuine issue of material fact, and, if not, whether the movant is entitled to summary judgment as a matter of law. Dosier v. Miami Valley Broadcasting Corp., 656 F.2d 1295, 1300 (9th Cir. 1981); [**4] Vickery v. Fisher Governor Co., 417 F.2d at 468.

[HN2]In the interpretation of a contract, it is a question of law whether the contract language is ambiguous. United States v. Sacramento Municipal Utility District, 652 F.2d 1341, 1343-44 (9th Cir. 1981); Golden Gate Bridge & Highway District v. United States, 125 F.2d 872, 875 (9th Cir.) cert. denied, 316 U.S. 700, 62 S. Ct. 1298, 86 L. Ed. 1769 (1942). Summary judgment is appropriate only if the contract is unambiguous. Castaneda v. Dura-Vent Corp., 648 F.2d 612, 619 (9th Cir. 1981).

In Nampa & Meridian Irrigation District v. Bond, 268 U.S. 50, 53-54, 45 S. Ct. 383, 384, 69 L. Ed. 843 (1925), the Supreme Court stated:

> **[\*92]**  [HN3]Expenditures made to maintain (the irrigation system) as an efficient going concern and to operate it effectively to the end for which it was designed, are, at least generally, maintenance and operating expenses. The expenditure in question was not for extensions to new lands or for changes in or additions to the system, ... but was for the purpose of overcoming injurious consequences arising from the normal and ordinary **[\*\*5]** operation of the completed plant which, so far as appears, was itself well constructed.

The expense in constructing the retaining wall here was of the type found in Nampa, supra. It added nothing to the system, but made the canal whole again, and permitted it to operate as originally designed.

Similarly, in United States v. Fort Belknap Irrigation District, 197 F. Supp. 812 (D.Mont.1961), it was held that expenditures necessary to replace faulty original construction or to increase the system's capacity are chargeable to "construction" costs. However, where the "irrigation system is completed and expenditures are required "to remedy conditions brought about by the use of the system * * * to maintain it, ...' ... (such expenditures) are chargeable to "operation and maintenance.' " Id. at 819.

The District Court found that the expense of the retaining wall was a maintenance cost. This result follows the holding in Nampa, supra. Since the issue of the District's liability was one of law, and there were no material factual issues with respect to the District's liability, summary judgment in favor of United States was proper. **[\*\*6]**

II. Amount of Liability

Next, appellant contends that it should have been given credit for the full $ 75,000 which was the negotiated figure in the Hanford settlement. Against this, the appellee argues that [HN4]Rule 408 of the Federal Rules of Evidence precludes use of settlement negotiations for this purpose. The rule states that settlement negotiations are "not admissible to prove liability for or invalidity of the claim or its amount."

The Advisory Committee's Note following Rule 408 provides two principles underlying the rule. The first is that the evidence is irrelevant as being motivated by a desire for peace rather than from a concession of the merits of the claim. n2 Second, is in promotion of the public policy favoring the compromise and settlement of disputes. n3 By preventing settlement negotiations from being admitted as evidence, full and open disclosure is encouraged, thereby furthering the policy toward settlement. Here, we give additional importance to the fact that appellant was not a party to the Hanford litigation or the settlement conferences. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n2. See Sternberger v. United States, 185 Ct. Cl. 528, 401 F.2d 1012, 1018 (Ct.Cl.1968).

**[\*\*7]**

n3. See Perzinski v. Chevron Chemical Co., 503 F.2d 654, 658 (7th Cir. 1974).

n4. Originally, appellant was a named party in the Hanford litigation but was dismissed out on its motion.

- - - - - - - - - - - - End Footnotes- - - - - - -
- - - - - -

Weinstein & Berger, Weinstein's Evidence § 408(1) (1981), and Wright & Graham, Federal Practice and Procedure : Evidence § 5302 (1980), both agree that the public policy favoring out-of-court settlement necessitates the inadmissibility of negotiations in order to foster frank discussion.

No recent decisions of this Court are to be found dealing with this point. In Factor v. Commissioner, 281 F.2d 100, 125 (9th Cir. 1960), cert. denied, 364 U.S. 933, 81 S. Ct. 380, 5 L. Ed. 2d 365 (1961), this Court concurred with the general rule of inadmissibility. We hold that Rule 408 prevents the use of the Hanford settlement in this case.

The judgment of the District Court is AFFIRMED.

STACY MARIE VINCENT, ET AL., Plaintiffs, Appellants, v. LOUIS MARX & CO., INC., ET AL., Defendants, Appellees

No. 88-1554

UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

874 F.2d 36; 1989 U.S. App. LEXIS 6177; 28 Fed. R. Evid. Serv. (Callaghan) 209

May 3, 1989

**SUBSEQUENT HISTORY:** As Amended, May 9, 1989.

**PRIOR HISTORY:** [**1] Appeal from the United States District Court for the District of Massachusetts, Hon. John J. McNaught, U.S. District Judge.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff injured party challenged the decision of the United States District Court for the District of Massachusetts, which entered a judgment in favor of defendant manufacturer in plaintiff's product liability action.

**OVERVIEW:** Plaintiff injured party was struck by a vehicle while riding a tricycle. Plaintiff brought a state action against the driver of the truck and brought a federal product liability action against defendant manufacturer. In the state action, plaintiff alleged that the driver's failure to observe the plaintiff was the cause of the accident, but in the federal action, plaintiff alleged that the tricycle was too close to the ground to be observed. When the trial court entered a judgment in favor of defendant, plaintiff sought review. On appeal, the court vacated and remanded the case. The trial court erred by finding that it had no discretion in the decision to admit the prior inconsistent pleading under Fed. R. Evid. 801(d)(2)(C). The court noted that the evidence was subject to Fed. R. Evid. 403 and remanded for the trial court to apply the balancing test of Rule 403. The court found that the trial court did not err by excluding evidence of a settlement in the state court action under Fed. R. Evid. 408. The court found that the trial court did not err by failing to admit evidence of other accidents because they all involved another actor and would not have assisted the jury.

**OUTCOME:** The court vacated the decision of the trial court, which entered judgment in favor of defendant manufacturer, because the trial court failed to apply a balancing test to determine if a prior inconsistent pleading was admissible. The case was remanded to the trial court for the application of the balancing test.

**CORE TERMS:** driver, inconsistent pleadings, balancing, admit, probative value, evidentiary, admissible, tricycle, unfair, discretion to exclude, reversible error, settlement, struck, harmless error, prior case, admissibility, inconsistency, interpleader, lawsuit, bus, settlement amount, undue delay, products liability case, abuse of discretion, prejudicial effect, exclusionary rule, strict liability, subsequent suit, defense counsel, pending action

**LexisNexis(TM) Headnotes**

*Evidence > Relevance > Confusion, Prejudice & Waste of Time*

[HN1]Fed. R. Evid. 403 provides that although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*Torts > Multiple Defendants > Joint & Several Liability*

*Evidence > Procedural Considerations > Rulings on Evidence*

[HN2]It is not inconsistent for suit to be brought against the owner and the manufacturer of the vehicle, since both can have a role in the plaintiff's injury. Without such inconsistency, and since pleadings in prior law suits are not evidence of the facts in any particular subsequent suit, the district court has discretion to exclude such material as irrelevant. Absent evidence of abuse of that discretion, the court will not upset its ruling.

*Evidence > Hearsay Rule & Exceptions > Prior Statement by Witness*

[HN3]Although a pleading in one case is not a conclusive judicial admission in a later one, it is treated as an ordinary admission which can be contradicted by other evidence.

*Civil Procedure > Discovery Methods > Requests for Admission*

874 F.2d 36; 1989 U.S. App. LEXIS 6177; 28 Fed. R. Evid. Serv. (Callaghan) 209

[HN4]Fed. R. Civ. P. 36(b) states explicitly that any admission made by a party under this rule is for the purpose of the pending action only and is not an admission for any other purpose nor may it be used against the party in any other proceeding.

### Evidence > Relevance > Confusion, Prejudice & Waste of Time

### Evidence > Hearsay Rule & Exceptions > Statement Against Interest

[HN5]The initial decision of whether to admit or exclude inconsistent allegations in a prior pleading should be left to the discretion of the trial judge under Fed. R. Evid. 403.

### Evidence > Procedural Considerations > Rulings on Evidence

### Civil Procedure > Appeals > Standards of Review > Harmless & Invited Errors

[HN6]When the district court errs in admitting evidence without balancing its probative value against its potential prejudicial effect, the next question is whether it was harmless error. The inquiry is whether the admission of the evidence affected a party's substantial rights. 28 U.S.C.S. § 2111, Fed. R. Evid. 103(a). The standard for determining whether the admission of such evidence is harmless error is whether the court of appeals can say with fair assurance that the judgment was not substantially swayed by the error. The centrality of the evidence, its prejudicial effect, whether it is cumulative, the use of the evidence by counsel, and the closeness of the case are all factors which bear on this determination. This determination must be made in the context of the case as gleaned from the record as a whole.

### Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

### Evidence > Relevance > Confusion, Prejudice & Waste of Time

[HN7]The balancing required under Fed. R. Evid. 403 is committed to the district judge's judgment and will be reversed only for abuse of discretion.

### Evidence > Relevance > Compromise & Settlement Negotiations

[HN8]Fed. R. Evid. 408 provides that evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise

negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence if offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

### Torts > Products Liability > Negligence

### Torts > Products Liability > Breach of Warranty

[HN9]In the Commonwealth of Massachusetts, the burden is on the plaintiff in a products liability case to prove his or her allegations of injury as a result of the defendant's negligence or breach of warranty. It is immaterial whether the defendant is charged with improper design, inadequate warning, or both.

### Torts > Products Liability

[HN10]In a products liability case other accidents involving only propensities of the vehicle itself such as the tendency to roll over, to pull to the right or left at certain speeds, or to go into an uncontrollable skid when turning a corner, would all be admissible. But prior accidents involving another actor are simply too multifaceted to be useful to the fact-finder.

**COUNSEL:** Edward M. Swartz with whom Alan L. Cantor and Swartz & Swartz were on brief for Appellants.

Patrick F. Brady with whom Nelson G. Apjohn, Andrew Agrawal and Nutter, McClennen & Fish were on brief for Appellee Quaker Oats Company.

**JUDGES:** Bownes, Aldrich, and Breyer, Circuit Judges.

**OPINIONBY:** BOWNES

**OPINION:** [*37] BOWNES, Circuit Judge.

This is an appeal from a jury verdict finding defendant Louis Marx & Co., Inc. not liable for injuries suffered by plaintiff-appellant Stacy Vincent. At the time she was injured, Stacy Vincent was five years old. She was riding a tricycle manufactured by defendant when she was struck by an automobile. Stacy and her mother brought this product liability action against defendant. Jurisdiction is based on diversity of citizenship. The necessary facts are recited in our discussion of the issues.

### I. THE ADMISSION OF ALLEGATIONS IN A PRIOR PLEADING

The instant action against Louis Marx & Co., Inc. was brought on April 10, 1980. The accident occurred on

874 F.2d 36; 1989 U.S. App. LEXIS 6177; 28 Fed. R. Evid. Serv. (Callaghan) 209

April 17, 1977. On October 31, 1977, an action was commenced in the Massachusetts [**2] Superior Court against the driver of the automobile that struck the tricycle and the plaintiff child. The state action was brought by an attorney other than those now representing plaintiffs. The state suit was subsequently [*38] settled on the payment of the total amount ($ 50,000) of the insurance policy of the driver.

The state court complaint contained, *inter alia*, the following allegation: "3. The Defendant, Steven P. Iverson in the course of operation of his motor vehicle did have, or should have had, a clear view of the Plaintiff for a substantial distance." This is at variance with the theory of liability advanced against the present defendant: that the tricycle was constructed so close to the ground that it could not be seen by an approaching motorist.

Defendant made clear early on its intention to introduce the state court complaint in evidence. The court held two hearings on this question during trial. The first was held at a recess during the testimony of Stacy's mother. After reading into the record the testimony of Stacy's mother given in the criminal trial against the driver of the car that struck Stacy, the court ruled that the state civil court pleadings could not be [**3] used in cross-examination of Stacy's mother, but the pertinent portions of the state complaint could be read to the jury by defense counsel. The court indicated that it felt legally bound to admit the pleadings as an evidentiary admission under Fed. R. Evid. 801(d) (2)(C). The second hearing was held after the state complaint was offered in evidence. The following statements were made by the court:

> THE COURT: I don't agree with the rule. Don't misunderstand me. If I were writing the Rules of Evidence, I would never allow it in.
>
> MR. SWARTZ: You have the discretion to exclude it.
>
> THE COURT: I feel I do not.
>
> MR. SWARTZ: You say, as a matter of law?
>
> THE COURT: As a matter of law, I have no right to exclude it.
>
> THE COURT: Listen, I want to tell you that I am absolutely serious when I say that, trying to bind this child by an admission made by an attorney in another case, or a contention made by an attorney -
>
> MR. BRADY: I understand --

> THE COURT; I know, you just want to admit it. I cannot understand the justice, nevertheless I am subject to it.
>
> MR. SWARTZ: You have discretion to exclude it.
>
> THE COURT: I find I don't have any discretion at all.

The allegation in the [**4] state complaint was admitted as an evidentiary admission.

We read the court's statements to mean that it felt bound by Fed. R. Evid. 801(d)(2)(C) to admit the pleading and that it had no discretion to exclude it. We think the district court did have such discretion under Fed. R. Evid. 403. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n1 [HN1]Fed. R. Evid. 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

There is no case in the First Circuit holding that under these or similar facts a prior inconsistent pleading must be admitted in evidence. In *Estate of Spinosa*, 621 F.2d 1154 (1st Cir. 1980), which was referred to by the district court during the hearings on admissibility, we held that under New Hampshire law prior inconsistent pleadings were admissible in a subsequent suit against a different defendant. But we found that the pleadings at issue were not inconsistent. We held:

> In the instant case, however, there is no such inconsistency. [HN2]It is not inconsistent for suit to be brought [**5] against the owner and the manufacturer of the vehicle, since both can have a role in the plaintiff's injury. *Mihoy v. Proulx, supra*, 113 N.H. 698, 700, 313 A.2d 723, 724 (1973). Without such inconsistency, and since pleadings in prior law suits are not evidence of the facts in any particular subsequent suit, *Slocinski v. Radwan*, 83 N.H. 501, 507, 144 A. 787, 790 (1929), the

Case 3:03-cv-01048-PCD    Document 88-2    Filed 09/21/2005    Page 24 of 27

874 F.2d 36; 1989 U.S. App. LEXIS 6177; 28 Fed. R. Evid. Serv. (Callaghan) 209

district court had discretion to exclude such material as irrelevant. Absent evidence of abuse of [*39] that discretion, we will not upset its ruling. n2

*Id.* at 1157. The footnote reads:

Although the parties have briefed this issue as a question of New Hampshire law, it seems likely that the question is actually controlled by Fed.R.Evid. 403. This rule, however, adds little to the discussion in the text. Because the state court pleadings are not inconsistent with the allegations in the present suit, their relevance is minimal. Moreover, admission of them would potentially prejudice the jury. The trial judge thus had considerable discretion to exclude the evidence, and because the analysis under *Bellavance v. Nashua Aviation & Supply Co.*, 99 N.H. 10, 104 A.2d 882 (1954) substantially parallels the weighing of relevance and prejudice under the federal rule, we find no reversible error.

**[**6]**

*Id.* n.2. Evidently, the district court read our holding as mandating the admission of prior inconsistent pleadings. Although such an inference might possibly be drawn from the sentence beginning with the words, "Without such inconsistency," it is attenuated at best. Any such inference is negated by the statement in the footnote that "it seems likely that the question is actually controlled by Fed. R. Evid. 403," and the last sentence of the footnote referring to the balancing test of Fed. R. Evid. 403.

In *United States v. Raphelson*, 802 F.2d 588 (1st Cir. 1986), we stated:

MPIUA argues that its pleading in a prior case is not binding on it in this case, and should not be considered here as an admission. [HN3]Although a pleading in one case is not a conclusive judicial admission in a later one, it is treated as an ordinary admission which can be contradicted by other evidence.

*Id.* at 592. In *Raphelson*, however, the prior pleadings were an interpleader involving the same parties. In the interpleader MPIUA admitted liability on its insurance policy in the amount of $ 30,800. In the subsequent case involving the same parties, MPIUA claimed that its admission of liability [**7] was nullified because the $ 30,800 was never accepted by the insured, which was named in the interpleader and was a defendant in

the second suit. The second suit was brought by the United States as claimant to the insurance proceeds. The facts of *Raphelson* distinguish it from the instant case. There is no discussion in *Raphelson* of Fed. R. Evid. 403, nor any reference to *Spinosa*. *Raphelson* is not apposite.

In *Wiseman v. Reposa*, 463 F.2d 226 (1st Cir. 1972), we held that it was error "not to permit defendant to explore, through the plaintiff, why his original complaint alleged an accident on one date and a substitute complaint on another." *Id.* at 227.

In *Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 99 F.2d 9 (1st Cir. 1938), we noted:

The general rule is that one may not to the prejudice of the other party deny any position taken in a prior judicial proceeding between the same parties or their privies involving the same subject matter, if successfully maintained.

*Id.* at 13. This rule does not apply to the situation before us. This completes our survey of First Circuit cases. We now turn to the other circuits.

There is a lack of unanimity [**8] among the circuits that have discussed the question of the admissibility of prior inconsistent pleadings. In a case somewhat similar to the case at bar, the Eighth Circuit held that the admission of amended (not prior) inconsistent pleadings constituted prejudicial error. *Garman v. Griffin*, 666 F.2d 1156 (8th Cir. 1981). In *Garman*, the amended pleadings alleged strict liability against the seller of a school bus because its construction precluded a complete view by the driver of the area within the path of the bus. The original pleadings alleged negligence against the driver of the bus. Summary judgment was granted against the seller of the bus because plaintiff had sued the wrong company; the case proceeded solely against the driver. The strict liability allegations were allowed in evidence. *Id.* at 1157. The court started its analysis by observing:

[*40]    Here we are dealing with an admission in a pleading that (1) involves the conduct of a dismissed party not in the lawsuit at the time the evidence was admitted; (2) that does not involve the conduct of the plaintiffs or the plaintiff's decedent; and (3) that does not involve the conduct of the defendant.

*Id.* at 1158. [**9] The court stated: "In situations closely akin to the case under submission, such pleading admissions have been generally excluded."

Case 3:03-cv-01048-PCD    Document 88-2    Filed 09/21/2005    Page 25 of 27

874 F.2d 36; 1989 U.S. App. LEXIS 6177; 28 Fed. R. Evid. Serv. (Callaghan) 209

*Id.* at 1159 (footnote omitted). One of the cases cited as authority for this statement was the First Circuit case of *Estate of Spinosa, 621 F.2d 1154.* Another case cited in *Garman* as support for its ruling was *Mitchell v. Fruehauf Corp., 568 F.2d 1139 (4th Cir. 1978).* In *Mitchell,* the court ruled:

> Prior pleadings are admissible if such pleadings indicate that the party against whom they are admitted has adopted a position inconsistent with that in the earlier litigation. The prior suit was based on negligence, which is not inconsistent with recovery in this case, as unforeseeable misuse rather than negligence is the defense to a claim based on product liability.

*Id.* at 1147 (citation omitted).

In a case subsequent to *Garman* the Eighth Circuit pointed out that under *Garman* a statement by a party in a pleading about his own conduct which is at variance with his position in the matter being litigated should be admitted. *County of Hennepin v. AFG Industries, Inc., 726 F.2d 149, 153 (8th Cir. 1984).*

The Seventh **[\*\*10]** Circuit adheres to the rule, "that the pleadings in one proceeding are admissible and cognizable as an admission in another." *Walaschek & Associates, Inc. v. Crow, 733 F.2d 51, 54 (7th Cir. 1984).*

In *Williams v. Union Carbide Corp., 790 F.2d 552* (6th Cir.), *cert. denied, 479 U.S. 992, 107 S. Ct. 591, 93 L. Ed. 2d 592 (1986),* the court held: "Pleadings in a prior case may be used as evidentiary admissions." *Id.* at 556. It relied on Fed. R. Evid. 613 (Prior Statements of Witnesses) and Fed. R. Evid. 801(d)(2). The court rejected the argument of plaintiff that the pleadings at issue were inadmissible under Fed. R. Evid. 403. It stated:

> Furthermore, we can see no *unfair* prejudice in the admission of the prior allegations. The hiring of an attorney and the filing of a lawsuit are generally done with considerable thought and care. Absent unauthorized conduct on the part of the attorney, there is nothing unfair about having to explain one's past lawsuits.

*Id.* at 556 (emphasis in original).

The Fifth Circuit recognizes that, "there is a well-established rule that factual allegations in the trial court pleadings of a party in one case may be admissible in a different case as evidentiary admissions

of that party **[\*\*11]** . . . ." *Hardy v. Johns-Manville Sales Corp., 851 F.2d 742, 745 (5th Cir. 1988).* It points out, however, that "there are some important exceptions to this rule." *Id.,* n.5. In *Whatley v. Armstrong World Industries Inc., 861 F.2d 837, 839 (5th Cir. 1988),* it found that the doctrine of liberality in pleadings and allowing flexible joinder precluded the admission of inconsistent pleadings from the complaint made against defendants who had settled prior to trial.

The District of Columbia Circuit also excludes inconsistent pleadings made in third party proceedings. *Schneider v. Lockheed Aircraft Corp., 212 U.S. App. D.C. 87, 658 F.2d 835, 843 (D.C. Cir. 1981).*

In this connection, it is to be noted that [HN4]Fed. R. Civ. P. 36(b) states explicitly: "Any admission made by a party under this rule is for the purpose of the pending action only and is not an admission for any other purpose nor may it be used against the party in any other proceeding." The advisory committee notes to the 1970 amendment are pertinent:

> The new provisions give an admission a conclusively binding effect for purposes only of the pending action, unless the admission is withdrawn or amended. In form and substance a Rule **[\*\*12]** 36 admission is comparable to an admission in pleadings or a stipulation drafted by counsel for use at a trial, rather than to an evidentiary admission of a party.

**[\*41]** Considering the disparate approaches to this issue, we are not disposed to lay down a flat rule admitting or excluding inconsistent allegations in a prior pleading. We think that [HN5]the initial decision should be left to the discretion of the trial judge under Fed. R. Evid. 403. We have been unable to find any case holding that Fed. R. Evid. 403 cannot be invoked on this evidentiary issue. In light of the uncertain state of the law on the admissibility of prior inconsistent pleadings, this would appear to be the type of question that calls for the balancing approach under Fed. R. Evid. 403: whether the probative value of the prior pleading "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Since the district court erred in admitting the prior pleading without balancing its probative value against its potential prejudicial effect, the next question is whether this **[\*\*13]** was harmless error. [HN6]Our inquiry is whether the admission of the evidence affected plaintiffs' substantial rights. 28 U.S.C. §

874 F.2d 36; 1989 U.S. App. LEXIS 6177; 28 Fed. R. Evid. Serv. (Callaghan) 209

2111; Fed. R. Evid. 103(a). The applicable standard of review has been explained as follows:

> Our standard for determining whether the admission of such evidence is harmless error is whether we can say "with fair assurance . . . that the judgment was not substantially swayed by the error. . . ." United States v. Pisari, 636 F.2d 855, 859 (1st Cir. 1981) (quoting Kotteakos v. United States, 328 U.S. 750, 765, 66 S. Ct. 1239, 1248, 90 L. Ed. 1557 (1946)). The centrality of the evidence, its prejudicial effect, whether it is cumulative, the use of the evidence by counsel, and the closeness of the case are all factors which bear on this determination. 1 J. Weinstein & M. Berger, Weinstein's Evidence para. 103 [06] at 103-61 to 103-63 (1982).

Lataille v. Ponte, 754 F.2d 33, 37 (1st Cir. 1985). "This determination must be made in the context of the case as gleaned from the record as a whole." Devasto v. Faherty, 658 F.2d 859, 863 (1st Cir. 1981); McKinnon v. Skil Corp., 638 F.2d 270, 276 (1st Cir. 1981); Garbincius [**14] v. Boston Edison Co., 621 F.2d 1171, 1175 (1st Cir. 1980).

Based on our review of the record we cannot say that plaintiffs' substantial rights were not adversely affected. Nor can we find "with fair assurance that the judgment was not substantially swayed" by the prior pleading. The defendant's main line of defense was that the accident was caused by the negligence of the driver of the car which struck the plaintiff child. The prior pleading, therefore, could have played an important role in the jury's determination of liability. It was highlighted by defense counsel in his closing argument. Plaintiffs' evidence was sufficient for a finding of liability. Finally, we note that defendant has not argued that the admission of the pleading was harmless error.

Although the district court had discretion under Rule 403 to exclude the prior pleading, it could not properly exercise that discretion without balancing the probative value of the evidence against the potential danger of unfair prejudice. See Linskey v. Hecker, 753 F.2d 199, 202 (1st Cir. 1985); Staniewicz v. Beecham, Inc., 687 F.2d 526, 530 (1st Cir. 1982). No balancing was done. The district court's statements [**15] indicate that it would have preferred an exclusionary rule, not that it had made a judgment after weighing probative value against prejudice. Under the circumstances, we can only remand for such balancing by the district court. [HN7]"The balancing is committed to the district judge's judgment and will be reversed only for abuse

of discretion." United States v. Mateos-Sanchez, 864 F.2d 232, 236 (1st Cir. 1988). Under the facts and in light of the unsettled state of the law, a decision either way, after proper balancing would not be an abuse of discretion.

We, therefore, remand to the district court for reconsideration under Fed. R. Evid. 403 of its decision to admit the prior pleading. If it decides to admit the evidence, the verdict will stand. If the evidence is excluded, there must be a new trial.

Since we do not know whether there will be a new trial or not, we address the other issues.

[*42] II. THE EXCLUSION OF THE AMOUNT OF THE SETTLEMENT IN THE PRIOR CASE

After the court decided it had to admit the prior pleading, plaintiff pressed for admission of the amount of settlement ($ 50,000) in the state court suit. The court excluded it. The parties agree that Fed. R. Evid. 408 controls. [**16] It provides:

> [HN8]Rule 408. Compromise and Offers to Compromise
>
> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence if offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Plaintiff argues that exclusion of the settlement amount was unfairly prejudicial in light of the admission of the prior pleading.

The only opening for admission of the settlement is in the last sentence of the Rule. This sentence, however, neither states nor suggests that unfair prejudice would be a ground [**17] for avoiding the prohibitions of the Rule. Nor can plaintiffs avail themselves of Rule 403. Even if the settlement amount were relevant and had probative value, which is highly doubtful, Rule

874 F.2d 36; 1989 U.S. App. LEXIS 6177; 28 Fed. R. Evid. Serv. (Callaghan) 209

403 is an exclusionary rule, not one providing for the admission of evidence.

We agree with the district court that whatever opening there might be in Rule 408 for the introduction of a settlement amount, it is closed by our decision in *McInnis v. A.M.F., Inc.*, 765 F.2d 240, 247 (1st Cir. 1985). We also agree with the court's reasoning in *Kennon v. Slipstreamer, Inc.*, 794 F.2d 1067, 1069-71 (5th Cir. 1986), holding it reversible error to admit the amount of a settlement under facts similar to those of this case.

The district court did not err in excluding the amount of the settlement in the prior suit.

## III. THE JURY INSTRUCTIONS

We find no reversible error in the jury instructions. Although the instructions could have been more detailed, they reflected the pertinent Massachusetts law in language the jury could understand.

Nor do we think that the court erred in failing to give a requested instruction recognizing a presumption under Massachusetts law that if an adequate [**18] warning had been given, it would have been read and heeded. Plaintiffs rely on *Wolfe v. Ford Motor Co.*, 6 Mass. App. Ct. 346, 376 N.E.2d 143 (1978). The final word, however, comes from the Supreme Judicial Court in *Hayes v. Ariens*, 391 Mass. 407, 462 N.E.2d 273 (1984):

> We turn to the burden of proof issues raised by the plaintiffs only long enough to say that [HN9]in this Commonwealth the burden is on the plaintiff in a products liability case to prove his or her allegations of injury as a result of the defendant's negligence or breach of warranty. It is immaterial whether the defendant is charged with improper design, inadequate warning, or both. . . . Furthermore, contrary to the plaintiffs' contentions, we do not read *Wolfe v. Ford Motor Co.*, 6 Mass. App. Ct. 346, 352, 376 N.E.2d 143 (1978), S.C., 386 Mass. 95, 434 N.E.2d 1008 (1982), or Restatement (Second) of Torts 402A comment j (1965), as favoring imposition on a defendant of the burden to prove the absence of a causal relationship between personal injuries and an inadequate warning of risk in the use of a product.

462 N.E.2d at 278. We need not engage in an extended discussion as to how much vitality *Wolfe* [**19] still has. It suffices to state [*43] that it was not reversible error for the court to refuse to give the requested "presumption" instruction.

## IV. THE EXCLUSION OF EVIDENCE OF COLLISIONS BETWEEN OTHER AUTOMOBILES AND OTHER TRICYCLES OF THE SAME TYPE MANUFACTURED BY DEFENDANT

The district court did not exclude this evidence without discussing the question *in extenso* with counsel. It pointed out that there was no showing of substantial similarity of circumstances and that allowing such evidence would mean retrying other cases or parts of them resulting in confusion to the jury as well as taking a great deal of time. We agree.

Prior automobile accidents involving the same model tricycle would have little probative value. How and why such accidents happen involve a number of variables including the road conditions, speed of the automobile, ability and physical condition of the driver, as well as a myriad of other factors bearing on the view that a driver would have of the tricycle. [HN10]In a products liability case other accidents involving only propensities of the vehicle itself such as the tendency to roll over, to pull to the right or left at certain speeds, or to go into an uncontrollable [**20] skid when turning a corner, would all be admissible. But prior accidents involving another actor are simply too multifaceted to be useful to the fact-finder.

Vacated and remanded for further proceedings pursuant hereto.

No costs to either party.