UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLIFTON S. FREEDMAN | ) |
|       Plaintiff | ) |
| v. | ) CIVIL ACTION NO.:<br>) 3:03 CV1048 (PCD) |
| THE TOWN OF FAIRFIELD, DETECTIVE<br>WILLIAM YOUNG AND DETECTIVE DAVID<br>BENSEY (Individually and in their official<br>capacities as police officers for the Town of<br>Fairfield) | ) |
|       Defendants. | )<br>) SEPTEMBER 20, 2006 |

**MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR ATTORNEYS' FEES**

The Plaintiff, Clifton S. Freedman, the prevailing party in this civil rights litigation, respectfully moves the Court to award him $250,045.08 in attorneys' fees. As set forth below, the Plaintiff is entitled to an award of attorneys' fees pursuant to 18 U.S.C. § 2707(b) and (c). Further, the amount of fees requested is reasonable under the established lodestar analysis.

**I.    The Plaintiff is *Entitled* To An Award of Attorneys' Fees.**

The Plaintiff prevailed against Defendants Young and Bensey on his claim that they violated 18 U.S.C. § 2703 of the Electronic Communications Privacy Act ("ECPA").[1] Section 2707 of Title 18 provides for the award to the prevailing party of reasonable attorney's fees and other litigation costs. The statute provides in relevant part:

---

[1] The Court also properly entered judgment against the Defendant Town of Fairfield for indemnification under Conn. Gen. Stat. § 7-465.

> (b) **Relief.**- In a civil action under this section, appropriate relief includes-
>
> . . .
>
> (3) a reasonable attorney's fee and other litigation costs reasonably incurred.
>
> . . .
>
> (c) **Damages.**- . . . *In the case of a successful action to enforce liability* under this section, the court may assess the costs of the action, together with reasonable attorney fees determined by the court.

17 U.S.C. § 2707(b) and (c) (emphasis added).

The Second Circuit has not yet addressed the issue of entitlement to attorneys' fees under section 2707. However, this Court should be guided by the Second Circuit's interpretation of virtually identical language in the attorneys' fee provision of the Fair Debt Collection Practices Act ("FDCP"). Like section 2707, the FDCP also provides for the award of attorneys' fees "in the case of any successful action to enforce the foregoing liability . . . ." 15 U.S.C. § 1692k(a). Notably, the Second Circuit has interpreted the FDCP to mandate an award of attorneys' fees in a successful action, *regardless of the amount of statutory damages awarded. Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) (stating that a plaintiff is entitled to attorney's fees and costs under the statute notwithstanding any "minimal degree of success"); *Pipiles v. Credit Bureau of Lockport*, 886 F.2d 22, 27-28 (2d Cir. 1989) (statute requires the award of costs and a reasonable attorney's fee although the plaintiff was not awarded any actual or additional damages under the statute); *Emanuel v. American Credit Exchange*, 870 F.2d 805, 809 (2d Cir. 1989) (statute mandates award of attorneys' fees regardless of the plaintiff's failure to prove actual or additional damages under the statute). Other circuits share that position. *See, e.g., Graziano v. Harrison*, 950 F.2d 107, 113 (3rd Cir. 1991) ("attorney's fees [under this provision] should not be construed as a special or discretionary remedy; rather the Act mandates an award of attorney's fees"); *Zagorski v.*

2

*Midwest Billing Services, Inc.*, 128 F.3d 1164, 1166 (7th Cir. 1997) (overruling a district court's ruling that a victorious plaintiff under the statute may not receive fees if his recovery is merely technical or *de minimis*).  *See also De Jesus v. Banco Popular De Puerto Rico*, 918 F.2d 232, 234 (1st Cir. 1990) (construing the federal Truth in Lending Act and holding that the statute mandates award of fees and costs in a "successful action to enforce the foregoing liability," regardless of the amount of damages awarded).

The mandatory nature of an award of attorneys' fees under section 2707 is also consistent with the established body of law concerning an award of attorney's fees in civil rights actions.  Although the plain language of 42 U.S.C. § 1988[2] states that a court, "*in its discretion, may* allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs," it is well-established that a court does not have discretion to deny an award of attorney's fees to a prevailing plaintiff in the absence of special circumstances that would render the award unjust.  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402-03 (1968); *Kerr v. Quinn*, 692 F.2d 875, 877 (2d. Cir. 1982) (holding that "the latitude afforded trial courts in exercising that discretion is narrowed by the presumption that successful civil rights litigants should recover an attorney's fee unless special circumstances would render such an award unjust").

In sum, the Court should conclude that, because the Plaintiff successfully enforced liability under the ECPA, section 2707 entitles him to an award of reasonable attorneys' fees, regardless of the amount of any actual or statutory damages awarded.

---

[2] Section 1988 authorizes the award of attorneys' fees in civil rights actions brought pursuant to 42 U.S.C. 1983.

3

## II. The Amount of Attorneys' Fee Requested Is Reasonable Under The Lodestar Analysis.

"The starting point for the determination of a reasonable fee is the calculation of the lodestar amount."[3] *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004) (citing *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)). The lodestar amount is properly calculated "by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Arbor Hill Concerned Citizens Neighborhood Association, et al. v. County of Albany, et al.*, 369 F.3d 91, 95 (2d Cir. 2004) (citing *Blum v. Stenson*, 465 U.S. 86, 888 (1984)). "There is a strong presumption that the lodestar figure represents a reasonable fee." *Green*, 361 F.3d at 99 (quoting *Quaratino*, 166 F.3d at 425).

### A. The Requested Hourly Rate is Reasonable.

In calculating the lodestar amount, the Court should use the prevailing market rates in the relevant community, which is the forum district. *Arbor Hill*, 369 F.3d at 96. In this case, the forum district is Connecticut, New Haven County in particular. As set forth in the attached affidavit of Daniel J. Klau ("Klau Aff."), the rates charged by the Plaintiff's attorneys represent the standard billing rates of those attorneys which, in turn, are consistent with prevailing market rates in the relevant community. *See* Klau Aff., ¶ 4.

---

[3] The United States Supreme Court has held that the lodestar analysis for determining the reasonableness of a request for attorneys' fees applies generally to all federal statutes that provide for an award of fees to prevailing parties. *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983). *See also Gervais v. O'Connell, Harris & Assoc., Inc.*, 297 F.Supp.2d 435 440 (D.Conn. 2003) (stating proposition and citing *Hensley*).

4

### B. The Time Expended On The Litigation Is Reasonable.

Pepe & Hazard expended approximately 1000 hours over nearly 2 ½ years litigating this case through trial and post-trial motions.[4] This expenditure of time was reasonable and necessary to prosecute this case through trial.

The Plaintiff anticipates that the Defendants will challenge the reasonableness of the time expended by the Plaintiff's counsel. While the undersigned will respond to those anticipated arguments in detail in a reply brief, several issues can be addressed at this juncture.

1. The Plaintiff sought to minimize the attorneys' fees incurred prosecuting and defending this case by moving early in the action for partial summary judgment on his claim under the ECPA. The Court granted that motion on February 5, 2004. Faced with a finding of liability under a statute that entitled the Plaintiff to an award of attorneys' fees, the Defendants could and should have responded by making a reasonable settlement offer, which could have terminated the litigation. *At no point in this case, however, have the Defendants ever made any settlement offer.* Consequently, the Plaintiff had no choice but to prepare the case for trial. The Defendants cannot now complain about attorneys' fees that the Plaintiff accrued because he was forced to go to trial in a case where their liability had been determined some 18 months earlier.

2. Any argument that the Court should reduce the lodestar amount because of an allegedly disproportionate relationship between that amount and the amount of the judgment fails as a matter of law. The Second Circuit has "repeatedly rejected the notion that a fee may

---

[4] This number excludes time spent litigating issues that related solely to the claim asserted against AOL, such as AOL's motion to dismiss the case based upon the forum selection clause in its subscriber agreement with the Plaintiff.

5

be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation." *Kassim*, 415 F.3d 246, 252 (2d Cir. 2005).

3. The Court should also reject any argument for a downward adjustment of the lodestar amount because of any alleged lack of success in achieving the objectives of this lawsuit. Notwithstanding the amount of the judgment, this action was a success and served an important public purpose. *See Farrar v. Hobby*, 506 U.S. 103, 121-22 (1992) (O'Connor, J., concurring) (in evaluating motion for attorneys' fees, court should consider public purpose served by litigation); *see also Morales v. City of San Rafael*, 96 F.3d 359, 365 (9th Cir. 1996) ("Success is not measured only by the amount of recovery but also in terms of the significance of the legal issue on which the plaintiff prevailed and the public purpose the litigation served.")

The important public purpose that this lawsuit served could not be clearer. Had the Plaintiff not prosecuted this action, the Fairfield Police Department would still be routinely violating the rights of citizens by ignoring the requirements of the ECPA and using mere search warrant applications – as opposed to valid, judicially approved search warrants – to obtain information from internet service providers.

The testimony of Detective William Young is critical in this regard. Detective Young testified at trial that, at the direction of Sgt. Eugene Palazzolo, he sent a mere search warrant application to AOL to obtain the Plaintiff's subscriber information. He also testified that he subsequently used the same manifestly unlawful procedure in another investigation following the "GoMaryGoAway" email incident, but before this lawsuit was filed. Finally, he testified that the specific reason the department stopped using that unlawful procedure was because of this lawsuit.

In short, the only reason that the Fairfield Police Department is (apparently) complying with the ECPA today is because of this lawsuit, which had the salutary effect of educating the department about the warrant requirements of the ECPA. The action plainly served an important public purpose, a factor that the Court must give considerable weight as part of the lodestar analysis.

### III. The Plaintiff Is Entitled To Recover The Cost of Computer-Assisted Legal Research.

In addition to the attorneys' fees arising from the expenditure of attorney time throughout the case, the Plaintiff is also entitled to recover, as part of his attorneys' fee request, the cost of computer-assisted legal research -- $6,135.58. Klau Aff. at ¶ 5. The Second Circuit recently held in *Arbor Hill, supra*, that such expenses were recoverable under fee-shifting statutes:

> We agree that the use of online research services reduces the number of hours required for an attorney's manual search, thereby lowering the lodestar, and that in the context of a free-shifting provision, the charges for such online research may properly be included in a fee award.

*Arbor Hill*, 369 F.3d at 98.

### IV. CONCLUSION

For the foregoing reasons, the Court should grant the Plaintiff's motion for attorneys' fees.

7

THE PLAINTIFF,
CLIFTON S. FREEDMAN

By: _____
Daniel J. Klau (ct17957)
H. James Pickerstein (ct05094)
Calvin K. Woo (ct24951)
Pepe & Hazard LLP
Goodwin Square
225 Asylum Street
Hartford, CT  06103-4302
Phone:  (860) 522-5175
Fax:  (860) 522-2796
dklau@pepehazard.com
hpickerstein@pepehazard.com
cwoo@pepehazard.com

Robert Y. Altchiler (ct24247)
The Law Offices of Robert Y. Altchiler
191 Post Road West
Westport, CT 06880

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been originally sent via first class mail, postage prepaid, on November 18, 2005 and was subsequently sent this 20th day of September 2006 to the following:

Thomas Murtha, Esq.
Maher & Murtha, LLC
528 Clinton Avenue
P.O. Box 901
Bridgeport, CT  06601

_____
Calvin K. Woo

**Error! Unknown document property name.**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLIFTON S. FREEDMAN )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>THE TOWN OF FAIRFIELD, DETECTIVE )<br>WILLIAM YOUNG AND DETECTIVE DAVID )<br>BENSEY (Individually and in their official )<br>capacities as police officers for the Town of )<br>Fairfield) )<br>)<br>Defendants. )<br>)<br>) | CIVIL ACTION NO.:<br>3:03 CV1048 (PCD) |

### AFFIDAVIT OF DANIEL J. KLAU

Daniel J. Klau declares as follows:

1. I am a partner in the firm of Pepe & Hazard LLP ("Pepe & Hazard"). I make this affidavit in support the Plaintiff's Motion for Attorneys' Fees. I was the lead trial attorney in the above-captioned case. The information herein is based upon my personal knowledge, and my review of Pepe & Hazard business records.

2. I have been a member of the bar of the State of Connecticut since 1991 and a member of the bar of this Court since 1997. I have been a partner at Pepe & Hazard since April 2002. Since January 2003 I have also been a member of the adjunct faculty of the University of Connecticut School of Law, where I teach privacy law. A copy of my curriculum vitae is attached hereto as Exhibit A.

3.  Calvin K. Woo is an associate at Pepe & Hazard and has been a member of the bar of the State of Connecticut since 1998. He has been a member of the bar of this Court since 2003.

4.  Attached hereto as Exhibit A are the contemporaneous time/billing records of Pepe & Hazard in this case. The last page of Exhibit A also contains the hourly rates charged by me and Mr. Woo throughout this case. Those are the standard billing rates applicable to clients generally. Based upon my personal knowledge, the hourly rates charged in this case are consistent with the prevailing rates in New Haven and Hartford counties.

5.  In addition to the time entries reflected in Exhibit A, Pepe & Hazard also incurred charges for computer-assisted legal research (LEXIS and/or Westlaw). Those charges are set forth in Exhibit C hereto. The charges do not include computer research expenses related to the claims against AOL.

I hereby declare under penalty of perjury that the foregoing is true and accurate. Executed on this 18 day of November, 2005.

Daniel J. Klau

DJK/32442/2/748966v1
11/18/05-HRT/